1  LATHAM & WATKINS LLP
      Stephen Stublarec (Bar No. 69451)
2      Paul T. Llewellyn (Bar No. 216887)
   505 Montgomery Street, Suite 2000
3  San Francisco, California 94111
   Telephone:  (415) 391-0600
4  Facsimile:  (415) 395-8095
   Email:  Paul.Llewellyn@lw.com
5
   Attorneys for Plaintiff
6  PLANTRONICS, INC.

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12  PLANTRONICS, INC., a Delaware       CASE NO.  C07 06038 PVT
    corporation,
13
              Plaintiff,                COMPLAINT FOR DECLARATORY
14                                      RELIEF AND DAMAGES
          v.
15                                      (DEMAND FOR JURY TRIAL)
    AMERICAN HOME ASSURANCE
16  COMPANY, a New York corporation; THE
    INSURANCE COMPANY OF THE STATE
17  OF PENNSYLVANIA, a Pennsylvania
    corporation; ATLANTIC MUTUAL
18  INSURANCE COMPANY, a New York
    corporation,
19
              Defendants.
20

21

22          Plaintiff Plantronics, Inc. ("Plantronics") for its complaint against the defendants

23  alleges as follows:

24                            **THE PARTIES**

25          1.    Plantronics is a Delaware corporation with its principal place of business

26  located in Santa Cruz, California.

27          2.    Defendant American Home Assurance Company ("American Home"), is a

28  New York corporation with its principal place of business located in New York, New York.

                                        1

1    3.    Defendant The Insurance Company of the State of Pennsylvania

2    ("ICSOP"), is a Pennsylvania corporation with its principal place of business located in New

3    York, New York.

4    4.    Defendant Atlantic Mutual Insurance Company ("Atlantic Mutual"), is a

5    New York corporation with its principal place of business located in New York, New York.

6    5.    ICSOP, American Home, and Atlantic Mutual, which are or have been

7    qualified to do business in the State of California or have done business in the State of

8    California, issued certain policies of insurance naming Plantronics as the insured. Specifically,

9    ICSOP issued policy numbers GL 359-79-82 and GL 382-89-16 to Plantronics; American Home

10    issued policy numbers GL 382-94-49 and GL 721-75-41 to Plantronics; and Atlantic Mutual

11    issued policy number 761006745 to Plantronics (the "Policies"). The Policies are attached as

12    Exhibits A, B, C, D and E.

13    **JURISDICTION AND VENUE**

14    6.    This is an action between citizens of different states in which the amount

15    in controversy exceeds $75,000, exclusive of interest and costs. Accordingly, this Court has

16    jurisdiction based on diversity of citizenship pursuant to 28 U.S.C. section 1332.

17    7.    Venue is proper in this District pursuant to 28 U.S.C. section 1391

18    because a substantial part of the events or omissions giving rise to the claims occurred in this

19    District.

20    **INTRADISTRICT ASSIGNMENT**

21    8.    This matter is properly before the San Jose Division as a substantial part

22    of the events or omissions giving rise to the claims occurred in Santa Cruz County, where

23    Plantronics is located. Civil L.R. 3-2(c) and (e).

24    **THE UNDERLYING ACTIONS**

25    9.    This action arises out of the denial of insurance coverage by ICSOP,

26    American Home and Atlantic Mutual for seven putative class actions that have been filed against

27    Plantronics ("underlying actions"). The seven underlying actions are:

28    a.    *Schiller et al. v. Plantronics, Inc.*, filed in Los Angeles County

2

1  Superior Court on October 10, 2006 ("*Schiller* Action"). A true and correct copy of the

2  complaint is attached as Exhibit F.

3           b.      *Edwards, et al. v. Plantronics, Inc.,* filed in the U.S. District Court

4  for the Middle District of Florida on October 17, 2006 ("*Edwards* Action"). A true and correct

5  copy of the complaint is attached as Exhibit G.

6           c.      *Raines, et al. v. Plantronics, Inc.,* filed in the U.S. District Court

7  for the Central District of California on October 20, 2006 ("*Raines* Action"). A true and correct

8  copy of the complaint is attached as Exhibit H.

9           d.      *Wars, et al. v. Plantronics, Inc.,* filed in the U.S. District Court for

10  the Eastern District of Texas, Marshall Division, on November 14, 2006 ("*Wars* Action"). A

11  true and correct copy of the complaint is attached as Exhibit I.

12           e.      *Cook, et al. v. Plantronics, Inc.,* filed in the U.S. District Court for

13  the Eastern District of Virginia on January 10, 2007 ("*Cook* Action"). A true and correct copy of

14  the complaint is attached as Exhibit J.

15           f.      *Pierce, et al. v. Plantronics, Inc.,* filed in the U.S. District Court

16  for the Eastern District of Arkansas on February 8, 2007 ("*Pierce* Action"). A true and correct

17  copy of the complaint is attached as Exhibit K.

18           g.      *In re: Bluetooth Headset Products Liability Litigation,* a

19  consolidated class action complaint filed by *Raines, et al.,* in the U.S. District Court for the

20  Central District of California on July 9, 2007 ("Consolidated Action"). A true and correct copy

21  of the complaint is attached as Exhibit L.

22           10.      On August 3, 2007, a first amended complaint was filed in the

23  Consolidated Action. A true and correct copy of the first amended complaint is attached as

24  Exhibit M.

25           11.      The underlying actions concern the use of "Bluetooth Headsets" marketed,

26  manufactured and distributed by Plantronics. These headsets permit wearers to utilize a mobile

27  telephone without holding the telephone next to the face and without the necessity of wires

28  connecting the telephone to the headset.

3

1          12.     The allegations made in the underlying actions give rise to the potential

2  for coverage under the Policies.

3            **DEFENDANTS' DENIALS OF COVERAGE UNDER THE POLICIES**

4          13.     On or about October 17, 2006, Plantronics tendered the *Schiller* Action to

5  ICSOP and American Home for defense and indemnity.

6          14.     On or about October 31, 2006, Plantronics tendered the *Edwards* and

7  *Raines* Actions to ICSOP and American Home for defense and indemnity.

8          15.     On or about December 12, 2006, Plantronics tendered the *Wars* Action to

9  ICSOP and American Home for defense and indemnity.

10          16.     By letter dated January 3, 2007, ICSOP and American Home, through

11  their agent AIG Domestic Claims, Inc. ("AIG"), declined Plantronics' tender of the *Schiller*,

12  *Edwards*, *Raines* and *Wars* Actions.

13          17.     On or about February 22, 2007, and February 23, 2007, Plantronics

14  tendered the *Cook* and *Pierce* Actions to ICSOP and American Home for defense and indemnity.

15  By letter dated April 5, 2007, ICSOP and American Home, through their agent AIG, declined

16  Plantronics' tender.

17          18.     On or about April 18, 2007, Plantronics tendered the *Schiller, Edwards,*

18  *Raines, Wars, Cook* and *Pierce* actions to Atlantic Mutual for defense and indemnity.  On or

19  about August 7, 2007, Plantronics tendered the first amended complaint in the Consolidated

20  Action to Atlantic Mutual for defense and indemnity.  By letter dated October 5, 2007, Atlantic

21  Mutual declined Plantronics' tender.

22          19.     On or about August 7, 2007, Plantronics tendered the first amended

23  complaint in the Consolidated Action to ICSOP and American Home for defense and indemnity.

24  By letter dated August 30, 2007, ICSOP and American Home, through their agent AIG, declined

25  Plantronics' tender.

26          20.     Pursuant to the Policies, ICSOP, American Home and Atlantic Mutual are

27  obligated to defend, and, if necessary, to indemnify Plantronics in the underlying actions.

28

4

1    21.    Plantronics has paid all premiums due under the Policies and performed

2  all other conditions required to be performed by Plantronics under the Policies.

3    **FIRST CAUSE OF ACTION:**
     **DECLARATORY RELIEF**
4    **(Against All Defendants)**

5    22.    Plantronics incorporates by reference paragraphs 1 through 21 above.

6    23.    An actual controversy has arisen and now exists between Plantronics, on

7  the one hand, and ICSOP, American Home, and Atlantic Mutual on the other, concerning

8  whether the Policies provide coverage for the underlying actions.

9    24.    In light of the denial of coverage by ICSOP, American Home and Atlantic

10  Mutual, a declaration as to the parties' rights and duties under the Policies is necessary and

11  proper at this time.

12    25.    Plantronics seeks a judicial declaration that:  (a) the Policies issued to

13  Plantronics by ICSOP, American Home and Atlantic Mutual provide coverage for the underlying

14  actions; (b) pursuant to the Policies, ICSOP, American Home and Atlantic Mutual have the duty

15  to defend Plantronics against the claims asserted in the underlying actions and to indemnify

16  Plantronics against any damages and other costs that may be awarded against Plantronics in the

17  underlying actions; and (c) pursuant to the Policies, ICSOP, American Home and Atlantic

18  Mutual have the duty to defend and indemnify Plantronics against any actions that may be

19  brought against Plantronics in the future alleging the same or similar allegations as in the

20  underlying actions.

21    **SECOND CAUSE OF ACTION:**
     **BREACH OF CONTRACT**
22    **(Against All Defendants)**

23    26.    Plantronics incorporates by reference paragraphs 1 through 25 above.

24    27.    ICSOP, American Home and Atlantic Mutual breached their obligations

25  under the Policies issued by them to Plantronics by, among other things, failing and refusing to

26  defend Plantronics against the claims asserted in the underlying actions, and refusing to

27  indemnify Plantronics for any sums that Plantronics may become liable to pay in the underlying

28  actions, if any.

5

28.    As a direct and proximate result of defendants' material breach of their obligations, Plantronics has suffered actual and consequential damages in an amount to be proven at trial.

WHEREFORE, Plantronics prays for judgment against defendants as follows:

1.    That the Court order and declare that:

a.    The Policies issued to Plantronics by ICSOP, American Home and Atlantic Mutual provide coverage for the underlying actions;

b.    Pursuant to the Policies, ICSOP, American Home and Atlantic Mutual have the duty to defend Plantronics against the claims asserted in the underlying actions and to indemnify Plantronics for the attorneys' fees and costs incurred by Plantronics in defending the underlying actions;

c.    Pursuant to the Policies, ICSOP, American Home and Atlantic Mutual have the duty to indemnify Plantronics for any sums that Plantronics may become liable to pay in the underlying actions, if any;

d.    Pursuant to the Policies, ICSOP, American Home and Atlantic Mutual have the duty to defend and indemnify Plantronics against any actions that may be filed against Plantronics in the future raising the same or similar allegations as in the underlying actions.

e.    ICSOP, American Home and Atlantic Mutual breached their obligations under the Policies by, among other things, refusing to defend Plantronics against the claims asserted in the underlying actions, and refusing to indemnify Plantronics for any sums that Plantronics may become liable to pay in the underlying actions, if any.

2.    For recovery from defendants of compensatory damages, including the attorneys' fees and costs Plantronics has incurred in defending the underlying actions, together with prejudgment interest thereon.

3.    For recovery from defendants of any sums that Plantronics may become liable to pay in the underlying actions, if any, together with prejudgment interest thereon.

6

1        4.    For such other damages directly and proximately caused by ICSOP's,

2    American Home's and Atlantic Mutual's breach, in an amount to be proven at trial.

3        5.    For costs of this suit.

4        6.    For such other and further relief as the Court deems just and proper.

5    Dated:  November 29, 2007             Respectfully submitted,

6        LATHAM & WATKINS LLP
        Stephen Stublarec
7        Paul T. Llewellyn

8        By: _Paul Llewellyn_____

9        Paul T. Llewellyn
        Attorneys for Plaintiff
10       Plantronics, Inc.

11

12   ### DEMAND FOR JURY TRIAL

13       Pursuant to Fed. R. Civ. P. 38(b), Plantronics demands trial by jury on each of its

14   claims for relief which are triable before a jury.

15   Dated:  November 29, 2007             Respectfully submitted,

16       LATHAM & WATKINS LLP
        Stephen Stublarec
17       Paul T. Llewellyn

18       By: _Paul Llewellyn_____

19       Paul T. Llewellyn
        Attorneys for Plaintiff
20       Plantronics, Inc.

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

COMPLAINT FOR DECLARATORY RELIEF AND DAMAGES

**EXHIBIT A**



## COMMON POLICY DECLARATIONS

POLICY NO. GL 359-79-82

RENEWAL OF: NEW

**AMERICAN INTERNATIONAL COMPANIES**
**EXECUTIVE OFFICES**
**70 PINE STREET**
**NEW YORK, N.Y. 10270**
**(212) 770-7000**

PRODUCER: WOODRUFF
SAWYER &
COMPANY INS

1. NATIONAL UNION FIRE INSURANCE
   COMPANY OF PITTSBURGH, PA

   **3**

   COVERAGE IS PROVIDED IN THE COMPANY
   DESIGNATED BY NUMBER

2. AMERICAN HOME ASSURANCE COMPANY

   A STOCK INSURANCE COMPANY
   (HEREIN CALLED THE COMPANY)

3. THE INSURANCE COMPANY OF THE
   STATE OF PENNSYLVANIA

NAMED INSURED: PLANTRONICS, INC

MAILING ADDRESS:  345 ENCINAL STREET
SANTA CRUZ, CALIFORNIA 95060-2132

POLICY PERIOD:  From  06/30/2003  To  06/30/2004   At
12:01 A.M. Standard Time at your mailing address shown above

BUSINESS DESCRIPTION:  MANUFACTURER OF AMPLIFIED TELEPHONE PRODUCTS AND TELECOMMUNICATIONS
FOR THE HEARING IMPAIRED.

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE WITH
YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS FOR WHICH A
PREMIUM IS INDICATED.  THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT

| | PREMIUM |
|---|---|
| Global Commercial Auto Coverage Part | $ |
| Global Commercial General Liability Coverage Part | $115,000 |
| TOTAL | $115,000 |

Premium shown is payable: $ 115,000          at inception.

Forms applicable to all Coverage Parts:     SEE ATTACHED SCHEDULE.
(Show numbers)

COUNTERSIGNED _____     BY _____
(Date)                                    (Authorized Signature)

IN WITNESS WHEREOF, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.

**Secretary**
National Union Fire Insurance Company
of Pittsburgh, PA

**President**
National Union Fire Insurance Company
of Pittsburgh, PA

**Secretary**
American Home Assurance Company

**President**
American Home Assurance Company

**Secretary**
The Insurance Company of the
State of Pennsylvania

**President**
The Insurance Company of the
State of Pennsylvania

## ENDORSEMENT  #2

This endorsement, effective 12: 01 A.M.    06/30/2003    forms a part of

policy No.   GL    359-79-82    issued to   PLANTRONICS, INC

BY    THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

IT IS AGREED THAT THE FOLLOWING FORM IS ADDED TO THE POLICY:

FORM CG2404 WAIVER OF SUBROGATION AS PER ATTACHED.

06/09/2004
1803

Authorized Representative

POLICY NUMBER: GL    359-79-82

COMMERCIAL  GENERAL  LIABILITY
CG 24 04 10 93

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER  OF  TRANSFER  OF  RIGHTS  OF  RECOVERY AGAINST  OTHERS  TO  US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

### SCHEDULE

Name  of  Person  or  Organization:

BLANKET WHERE REQUIRED BY WRITTEN CONTRACT

(If no entry appears above, information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

The TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US Condition (Section IV - COMMERCIAL GENERAL LIABILITY CONDITIONS) is amended by the addition of the following:

We waive any right of recovery we may have against the person or organization shown in the Schedule above because of payments we make for injury or damage arising out of your ongoing operations or "your work" done under a contract with that person or organization and included in the "products-completed operations hazard". This waiver applies only to the person or organization shown in the Schedule above.

CG 24 04 10 93          Copyright, Insurance Services Office, Inc., 1992

## ENDORSEMENT #001

This endorsement, effective 12: 01 A.M.    06/30/2003    forms a part of

policy No. GL    359-79-82    issued to    PLANTRONICS, INC.

BY    THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

IN CONSIDERATION OF NO PREMIUM CHARGED, IT IS AGREED THE FORM
62251 - AIRCRAFT PRODUCTS EXCLUSION AND GROUNDING ENDORSEMENT
IS DELETED IN ITS ENTIRETY FROM THE POLICY.

IT IS FURTHER AGREED THAT FORM 51767 - EMPLOYEE BENEFITS LIABILITY
INSURANCE IS DELETED AND IS REPLACED BY ATTACHED FORM 78990.

ALL OTHER TERMS AND CONDITIONS REMAIN THE SAME.

12/08/2003
1803

_____
Authorized Representative

ENDORSEMENT NO.

This endorsement, effective 12:01 A.M.,

Forms a part of Policy No.: GL 359-79-82

Issued to:  PLANTRONICS INC

By:  THE INSURANCE COMPANY OF THE

STATE OF PENNSYLVANIA

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

**EMPLOYEE BENEFITS LIABILITY INSURANCE PROVIDES CLAIMS MADE COVERAGE**
**ADDITIONAL DECLARATIONS**

This endorsement modifies insurance provided under the following:

**FOREIGN COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART**

COVERAGE
Employee Benefits Liability Insurance

LIMIT OF LIABILITY
$1,000,000    Each Wrongful Act or series of related Wrongful acts.
$1,000,000    Each Annual Aggregate

DEDUCTIBLE
$1,000          Each Wrongful Act or series of related Wrongful Acts

No. of Employees:  **IF ANY**

Estimated Annual Premium:    **INCLUDED**

INSURING AGREEMENTS

EMPLOYEE BENEFITS LIABILITY

We will pay the "Insured" for those sums which the "Insured" shall become legally obligated to pay as damages because of any claim made against the "Insured" due to any "Wrongful Act" of the "Insured", or any other person for whose acts the "Insured" is legally liable, in the "Administration" of the "Insured's" Employee Benefits Programs", as defined in the Definitions section of this policy. This insurance applies only if a claim for damages covered by this endorsement is first made against the "Insured" during the policy period. We have the right and duty to defend any suit against the "Insured" seeking damages on account of such negligent act, error or omission, even if any of the allegations of the suit are groundless, false or fraudulent, and we may make such investigation and settlement of any claim or suit as we deem expedient.

**ENDORSEMENT NO.**

This endorsement, effective 12:01 A.M.,

Forms a part of Policy No.: GL 359-79-82

Issued to:  PLANTRONICS INC

By:  THE INSURANCE COMPANY OF THE

STATE OF PENNSYLVANIA

## EMPLOYEE BENEFITS LIABILITY INSURANCE PROVIDES CLAIMS MADE COVERAGE
### ADDITIONAL DECLARATIONS
(CONTINUED)

### DEFINITIONS

DEFINITION OF "Insured"

With respect to the insurance afforded by this endorsement the unqualified word "Insured" includes the Named Insured, provided that (a) if the Named Insured is designated as an individual, the insurance applies only to the conduct of a business of which he is the sole proprietor and (b) the unqualified word "Insured" also includes the following:

A. If the Named Insured is or includes a partnership or joint venture, any partner or member thereof by only with respect to his liability as such;

B. Any executive officer, director or stockholder of the Named "Insured" while acting within the scope of his duties as such;

C. Any employee, provided such employee is authorized to act in the "Administration" of the Named "Insured's" Employee Benefits Program."

DEFINITION OF "Employee Benefits Programs"

The terms "Employee Benefits Programs"; means (a) group life insurance, group accident or health insurance, profit sharing plans, pension plans, employee stock subscription plans, workmen's compensation, unemployment insurance, social benefits, disability benefits, and (b) any other similar employee benefits instituted after the effective date of this endorsement provided we are notified within thirty (30) days after the institution of such benefits.

DEFINITION OF "Administration"

The unqualified word "administration" wherever used shall mean:

A. Giving counsel to employees with respect to the Employee Benefits Programs;

B. Interpreting the Employee Benefits Programs;

C. Handling of records in connection with the Employee Benefits Programs;

D. Effective enrollment, termination or cancellation of employees under the "Employee Benefits Programs", provided all are acts which are authorized by the Named "Insured".

**ENDORSEMENT NO.**

This endorsement, effective 12:01 A.M.,

Forms a part of Policy No.: GL 359-79-82

Issued to: PLANTRONICS INC

By: THE INSURANCE COMPANY OF THE

STATE OF PENNSYLVANIA

<u>**EMPLOYEE BENEFITS LIABILITY INSURANCE PROVIDES CLAIMS MADE COVERAGE**</u>
<u>**ADDITIONAL DECLARATIONS**</u>
(CONTINUED)

DEFINITION OF "Wrongful Act"

"Wrongful Act" means any actual or alleged negligent act, error or omission in the "Administration" of the Employee Benefits Plan.

**EXCLUSIONS**

This endorsement does not apply to:

1. Any dishonest, fraudulent, criminal or malicious act, libel, slander, discrimination or humiliation;

2. Bodily injury to or sickness, disease or death, of any person, or to injury to or destruction of any tangible property, including the loss of use thereof;

3. Any claim for failure of performance of contract by an insurer;

4. Any claim based upon the "Insured's" failure to comply with any law concerning workmen's compensation, unemployment insurance, social security or disability benefits;

5. Any claim based upon:

    A. failure of any investment(s) including but not limited to stock to perform as represented by any "Insured";

    B. advice given by an "Insured" to an employee to participate in any investment plan including but not limited to stock subscription plans.

6. All sums which the "Insured" shall become legally obligated to pay as loss because of any Breach of Fiduciary Duty (as defined below), or because of any Breach of Fiduciary Duty by any person for which the "Insured" is legally responsible and arising out of the "Insured's" activity as a fiduciary of any Plan covered by this endorsement. The term, "Breach of Fiduciary Duty" shall mean the violation of any of the responsibilities, obligations of duties imposed upon fiduciaries by the EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 or amendments thereto with respect to any Plan covered by this endorsement;

7. Any claim made against the "Insured" based on or attributable to any failure or omission on the part of the "Insured" to effect and maintain insurance or bonding for Plan Property or Assets.

78990 (12/01)                                                                                                    Page 3 of 6

**ENDORSEMENT NO.**

This endorsement, effective 12:01 A.M.,

Forms a part of Policy No.: GL 359-79-82

Issued to:  PLANTRONICS INC

By:  THE INSURANCE COMPANY OF THE

STATE OF PENNSYLVANIA

<u>**EMPLOYEE BENEFITS LIABILITY INSURANCE PROVIDES CLAIMS MADE COVERAGE**</u>
<u>**ADDITIONAL DECLARATIONS**</u>
(CONTINUED)

**CONDITIONS**

LIMITS OF LIABILITY

Regardless of the number of (a) "Insureds" under this policy (b) persons who sustain damage or (c) claims made or suits brought for such damages; the limit of liability stated in the ADDITIONAL DECLARATIONS of this endorsement as applicable to each "Wrongful Act" or series of related "Wrongful Acts" is the limit of our liability for all claims made on account of any "Wrongful Acts" or series of related acts by this policy for the period of liability stated in the ADDITIONAL DECLARATIONS as "Each Annual Aggregate" is, subject to the above provision, the total limit of our liability for all claims covered during the period this endorsement is in force.

PREMIUM

The premium stated in the ADDITIONAL DECLARATIONS is an estimated premium only. Upon termination of each annual period of this endorsement the "Insured", on request, will furnish us a statement of the total number of employees at the end of the period. The earned premium shall be computed on the average of the number of employees at the end of the coverage period and that stated in the ADDITIONAL DECLARATIONS. If the earned premium thus computed exceeds the estimated premium paid, the "Insured" shall pay the excess to us; if less, we shall return to the "Insured" the unearned portion paid by such "Insured".

DEDUCTIBLE

The deductible amount indicated in the ADDITIONAL DECLARATIONS shall be subtracted from the total amount of all sums which we are obligated to pay or incur on account of each occurrence as stated in the ADDITIONAL DECLARATIONS. The terms of this endorsement including those with respect to notice of claim or suit and our right to investigate and negotiate any such claim or suit, apply irrespective of the application of the deductible amount.

OPTIONAL EXTENDED REPORTING ENDORSEMENT

The coverage under the Employee Benefits Liability Endorsement may end because one of us chooses to cancel it or not renew it. If this is not the result of non-payment of the premium you have the right to buy a reporting endorsement. It extends the time to report covered claims. The claim must first be made against

78990 (12/01)                                                                                          Page 4 of 6

ENDORSEMENT NO.

*This endorsement, effective 12:01 A.M.,*

Forms a part of Policy No.: GL 359-79-82

Issued to: PLANTRONICS INC

By: THE INSURANCE COMPANY OF THE

STATE OF PENNSYLVANIA

an "Insured" and reported to us within 3 years after the Employee Benefits Liability Endorsement ends and while the reporting endorsement is in affect.

### EMPLOYEE BENEFITS LIABILITY INSURANCE PROVIDES CLAIMS MADE COVERAGE
### ADDITIONAL DECLARATIONS
### (CONTINUED)

To obtain this reporting endorsement you must request it in writing and pay the additional premium within 30 days after this agreement ends. If we don't receive written notice and payment within this period, you may not exercise this right at a later date.

We'll sell you this endorsement for the additional premium. This additional premium will not exceed 200% of the annual premium for the Employee Benefits Liability Endorsement. Once you pay the premium we can't cancel the endorsement. We will determine the additional premium taking into account the following:

A. The exposures insured;

B. Previous types and amounts of insurance;

C. Limits of Liability available under the Employee Benefit Liability Insurance for future payment of damages; and

D. Other related factors.

The optional Extended Reporting Endorsement does not reinstate or increase the Limits of Liability applicable to any claim to which The Employee Benefits Liability Endorsement applies.

CONFORMITY WITH STATUTE

Terms of this endorsement which are in conflict with the statute of the state wherein this endorsement is *issued are hereby amended to conform to such statutes.*

OTHER TERMS OF POLICY

All other conditions, terms and exclusions contained in this policy remain unchanged.

**ENDORSEMENT NO.**

This endorsement, effective 12:01 A.M.,

Forms a part of Policy No.: GL 359-79-82

Issued to:  PLANTRONICS INC

By:  THE INSURANCE COMPANY OF THE

STATE OF PENNSYLVANIA

All other terms, conditions, and exclusions shall remain the same.

_____

AUTHORIZED REPRESENTATIVE

78990 (12/01)                                                              Page 6 of 6

# Michigan Policyholder Notice

Any portion of this policy that applies in the State of Michigan is
exempt from the filing requirements of section 2236 of the insurance
code of 1956, 1956 PA 218, MCL 500.2236.

81771 (Ed. 3/03)

# IMPORTANT NOTICE TO OUR CUSTOMERS

## CALIFORNIA INSURANCE GUARANTEE ASSOCIATION

In accordance with Section 1063.145, the following statement applies:

Companies writing property and casualty business in California are required to participate in the California Insurance Guarantee Association. If a company becomes insolvent the California Insurance Guarantee Association settles unpaid claims and assesses each insurance company for its fair share.

California law requires all companies to surcharge policies to recover these assessments. The California Insurance Guarantee Association surcharge for your policy is:

$   1,800

This surcharge is also included in the total amount displayed for "Surcharge" on the Declarations Page of this policy.

# IMPORTANT NOTICE TO OUR CUSTOMERS

## CALIFORNIA INSURANCE GUARANTEE ASSOCIATION

In accordance with Section 1063.145, the following statement applies:

Companies writing property and casualty business in California are required to participate in the California Insurance Guarantee Association. If a company becomes insolvent the California Insurance Guarantee Association settles unpaid claims and assesses each insurance company for its fair share.

California law requires all companies to surcharge policies to recover these assessments. The California Insurance Guarantee Association surcharge for your policy is:

$          2,255

This surcharge is also included in the total amount displayed for "Surcharge" on the Declarations Page of this policy.

FORMS SCHEDULE

EFFECTIVE DATE: 06/30/2003

NAMED INSURED:  PLANTRONICS, INC

POLICY NO:  GL 359-79-82

| IL0017 | (1198) | COMMON POLICY CONDITIONS |
| IL0003 | (0702) | CALCULATION OF PREMIUM |
| 77886 | (0602) | GLOBAL COMMERCIAL GENERAL |
| CG0062 | (1202) | WAR LIABILITY EXCLUSION |
| CG0224 | (1093) | EARLIER NOTICE OF CANCEL |
| CG2011 | (0196) | ADDITIONAL INSURED-MANAGERS |
| CG2147 | (0798) | EMPLOYMENT-RELATED PRACTICES |
| IL0021 | (0702) | NUCLEAR ENERGY LIABILITY EXCLUSION |
| IL0270 | (0702) | CALIFORNIA CHANGES CHANGES |
| 51767 | (0402) | EMPLOYEE BENEFITS LIAB INS |
| 58332 | (0793) | TOTAL LEAD EXCLUSION |
| 62251 | (0901) | AIRCRAFT PRODUCTS EXCLUSION |
| 62898 | (0901) | RADIOACTIVE MATTER EXCLUSION |
| 65165 | (0901) | ASBESTOS EXCLUSION |
| 71709 | (0699) | COMPOSITE RATING PLAN PREMIUM |
| 79201 | (0309) | SELF-INSURED RETETION ENDT |
| 81127 | (1202) | TERRORISM EXCLUSION |

POLICY NUMBER: GL   359-79-82

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

## A. Cancellation

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

## B. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

## C. Examination Of Your Books And Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

## D. Inspections And Surveys

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs 1. and 2. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph 2. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

## E. Premiums

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

## F. Transfer Of Your Rights And Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

POLICY NUMBER: GL    359-79-82                                    IL 00 03 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

    BOILER AND MACHINERY COVERAGE PART
    CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
    COMMERCIAL AUTOMOBILE COVERAGE PART
    COMMERCIAL GENERAL LIABILITY COVERAGE PART
    COMMERCIAL INLAND MARINE COVERAGE PART
    COMMERCIAL PROPERTY COVERAGE PART
    CRIME AND FIDELITY COVERAGE PART
    EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
    FARM COVERAGE PART
    LIQUOR LIABILITY COVERAGE PART
    OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
    POLLUTION LIABILITY COVERAGE PART
    PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
    PROFESSIONAL LIABILITY COVERAGE PART
    RAILROAD PROTECTIVE LIABILITY COVERAGE PART


The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.



## GLOBAL COMMERCIAL GENERAL LIABILITY DECLARATIONS

POLICY NO. GL 359-79-82

RENEWAL OF: NEW

**MEMBERS OF THE**
**AMERICAN INTERNATIONAL GROUP, INC.**
**EXECUTIVE OFFICES**
**70 PINE STREET**
**NEW YORK, N.Y. 10270**
**(212) 770-7000**

**PRODUCER:** WOODRUFF SAWYER
**& COMPANY INSURANCE**

1. **NATIONAL UNION FIRE INSURANCE**
   **COMPANY OF PITTSBURGH**

☐    COVERAGE IS PROVIDED IN THE COMPANY
DESIGNATED BY NUMBER

2. **AMERICAN HOME ASSURANCE COMPANY**

A STOCK INSURANCE COMPANY
(HEREIN CALLED THE COMPANY)

3. **THE INSURANCE COMPANY OF THE**
   **STATE PENNSYLVANIA**

**NAMED INSURED** PLANTRONICS, INC

**MAILING ADDRESS** 346 ENCINAL STREET
                     SANTA CRUZ, CALIFORNIA 95060-2132
**POLICY PERIOD:** From 06/30/2003 to 06/30/2004 at

            12:01 A.M. Standard Time at your mailing address shown above

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THIS POLICY, WE AGREE
WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THIS POLICY.

---

**LIMITS OF INSURANCE**

| | |
|---|---|
| MASTER CONTROL PROGRAM AGGREGATE LIMIT | $ 4,000,000 |
| GENERAL AGGREGATE LIMIT (Other Than Prod-Comp Operations) | $ 2,000,000 |
| PRODUCTS-COMPLETED OPERATIONS AGGREGATE LIMIT | $ 2,000,000 |
| PERSONAL & ADVERTISING INJURY LIMIT | $ 1,000,000 |
| EACH OCCURRENCE LIMIT | $ 1,000,000 |
| MEDICAL EXPENSE LIMIT | $ 10,000 |
| DAMAGE TO PREMISES RENTED TO YOU LIMIT | $ 250,000 |

---

**Forms of Business:** ☐ Individual    ☐ Partnership    ☐ Joint Venture    ☒ Organization
                                                                    (Other than Partnership
                                                                     or Joint Venture)

**Business Description:** MANUFACTURER OF AMPLIFIED TELEPHONE PRODUCTS AND
                                                 TELECOMMUNICATIONS FOR THE HEARING IMPAIRED.
**Location of All Premises you Own, Rent or Occupy:** SEE ATTACHED SCHEDULE

| CLASSIFICATION | CODE NO. | PREMIUM BASIS | RATE | ADVANCE PREMIUM |
|---|---|---|---|---|
| | | | | |
| SEE ATTACHED ENDORSEMENT | | | | |

U.S. Premium shown is payable: $ 90,000             at inception.

Non-U.S. Premium shown is payable: $ 25,000           at inception.

77884 (8/01)                                   **TOTAL: $ 115,000**       1 of 2

**ENDORSEMENTS ATTACHED TO THIS POLICY:** _____ Refer to Forms Schedule _____

COUNTERSIGNED _____ BY _____
               (Date)                    (Authorized Signature)

**IN WITNESS WHEREOF, we have caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by our authorized representative.**

*Elizabeth M. Tuck*

_____
**Secretary**
National Union Fire Insurance Company
of Pittsburgh PA.

*John King*

_____
**President**
National Union Fire Insurance Company
of Pittsburgh PA.

*Elizabeth M. Tuck*

_____
**Secretary**
American Home Assurance Company

*Susan Rivera*

_____
**President**
American Home Assurance Company

*Elizabeth M. Tuck*

_____
**Secretary**
The Insurance Company Of The
State of Pennsylvania

_____
**President**
The Insurance Company Of The
State of Pennsylvania

GLOBAL COMMERCIAL GENERAL LIABILITY COVERAGE PART

OCCURRENCE FORM

PLEASE READ THE ENTIRE FORM CAREFULLY

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words you and your refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured under this policy. The words we, us and our refer to the Company providing this insurance.

The word insured means any person or organization qualifying as such under Section II - Who Is an Insured.

Other words and phrases that appear in bold type have special meaning. Refer to Section V - Definitions.

## SECTION I - COVERAGES

### COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for bodily injury or property damage to which this insurance does not apply. We may, at our discretion, investigate any occurrence and settle any claim or suit that may result, but:

        (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

        (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the

payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        (3) Our duty to defend applies only in those countries in the coverage territory where legal circumstances permit us to defend. In those countries in the coverage territory where legal circumstances do not permit us to defend, we will reimburse you for your defense costs, subject to our prior authorization.

    No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

    b. This insurance applies to bodily injury and property damage only if:

        (1) The bodily injury or property damage is caused by an occurrence that takes place in the coverage territory;

        (2) The bodily injury or property damage occurs during the policy period; and

        (3) Prior to the policy period, no insured listed under Paragraph I. of Section II - Who Is An Insured and no employee authorized by you to give or receive notice of an occurrence or claim, knew that the bodily injury or property damage had occurred, in whole or in part. If such a listed insured or authorized employee knew, prior to the policy period, that the bodily injury or property damage occurred, then any continuation, change or resumption of such bodily injury or property damage during or after the policy period will be deemed to

have been known prior to the policy period.

c. **Bodily injury or property damage** which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph I. of Section II – Who Is An Insured or any employee authorized by you to give or receive notice of an occurrence or claim, includes any continuation, change or resumption of that bodily injury or property damage after the end of the policy period.

d. **Bodily injury or property damage** will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph I. of Section II – Who Is An Insured or any employee authorized by you to give or receive notice of an occurrence or claim:

(1) Reports all, or any part, of the bodily injury or property damage to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the bodily injury or property damage; or

(3) Becomes aware by any other means that bodily injury or property damage has occurred or has begun to occur.

e. **Damages because of bodily injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the bodily injury.

2. **Exclusions**

This insurance does not apply to:

a. Expected or Intended Injury

**Bodily injury or property damage** expected or intended from the standpoint of the insured. This exclusion does not apply to bodily injury resulting from the use of

reasonable force to protect persons or property.

b. Contractual Liability

**Bodily injury or property damage** for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an insured contract, provided the bodily injury or property damage occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an insured contract, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of bodily injury or property damage, provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same insured contract; and

(b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

c. Liquor Liability

**Bodily injury or property damage** for which any insured may be held liable by reason of:

(1) Causing or contributing to the intoxication of any person;

(2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

(3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if **you** are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

d.  Workers' Compensation and Similar Laws

Any obligation of the **insured** under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e.  Employer's Liability

**Bodily injury** to:

(1) An employee of the **insured** arising out of and in the course of:

(a) Employment by the **insured**; or

(b) Performing duties related to the conduct of the **insured's** business; or

(2) The spouse, child, parent, brother or sister of that employee as a consequence of Paragraph (1) above.

This exclusion applies:

(1) Whether the **insured** may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the **insured** under an **insured contract**.

f.  Pollution

(1) **Bodily injury** or **property damage** arising out of the actual, alleged or threatened discharge, dispersal,

seepage, migration, release or escape of pollutants:

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any **insured**. However, this subparagraph does not apply to:

(i) **Bodily injury** if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) **Bodily injury** or **property damage** for which **you** may be held liable, if **you** are a contractor and the owner or lessee of such premises, site or location has been added to **your** policy as an additional **insured** with respect to **your** ongoing operations performed for that additional **insured** at that premises, site or location and such premises, site or location is not or never was owned or occupied by, or rented or loaned to, any **insured**, other than that additional **insured**; or

(iii) **Bodily injury** or **property damage** arising out of heat, smoke or fumes from a hostile fire;

(b) At or from any premises, site or location which is or was at any time used by or for any **insured** or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any **insured**; or

(ii) Any person or organization for whom

you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the pollutants are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) Bodily injury or property damage arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the bodily injury or property damage arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(ii) Bodily injury or property damage sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or

on your behalf by a contractor or subcontractor; or

(iii) Bodily injury or property damage arising out of heat, smoke or fumes from a hostile fire.

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants.

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, pollutants.

However, this paragraph does not apply to liability for damages because of property damage that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or suit by or on behalf of a governmental authority.

g. Aircraft, Auto or Watercraft

Bodily injury or property damage arising out of the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and loading or unloading.

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the occurrence which caused the bodily injury or property damage involved the ownership, maintenance, use or entrustment to others of any aircraft, auto or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) A watercraft while ashore on premises you own or rent;

(2) A watercraft you do not own that is:

    (a) Less than 50 feet long; and

    (b) Not being used to carry persons or property for a charge;

(3) Parking an auto on, or on the ways next to, premises you own or rent, provided the auto is not owned by or rented or loaned to you or the insured;

(4) Liability assumed under any insured contract for the ownership, maintenance or use of aircraft or watercraft; or

(5) Bodily injury or property damage arising out of the operation of any of the equipment listed in Paragraph f.(2) or f.(3) of the definition of mobile equipment.

h. Mobile Equipment

Bodily injury or property damage arising out of:

(1) The transportation of mobile equipment by an auto owned or operated by or rented or loaned to any insured; or

(2) The use of mobile equipment in, or while in practice for, or while being prepared for, any prearranged racing, speed, demolition, or stunting activity.

i. War

Bodily injury or property damage arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, invasion, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

j. Damage To Property

Property damage to:

(1) Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the property damage arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in the care, custody or control of the insured;

(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the property damage arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or

replaced because your work was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to property damage (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of seven or fewer consecutive days. A separate limit of insurance applies to Damage to Premises Rented to You as described in Section III - Limits of Insurance.

Paragraph (2) of this exclusion does not apply if the premises are your work and were never occupied, rented or held for rental by you.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (6) of this exclusion does not apply to property damage included in the products-completed operations hazard.

k. **Damage To Your Product**

Property damage to your product arising out of it or any part of it.

l. **Damage To Your Work**

Property damage to your work arising out of it or any part of it and included in the products-completed operations hazard.

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. Damage to **Impaired Property Or Property Not Physically Injured** Property damage to impaired property or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in your product or your work; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to your product or your work after it has been put to its intended use.

n. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) Your product;
(2) Your work; or
(3) Impaired property;

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

o. Employment-Related Practices

Bodily injury to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of **bodily**

injury to that person at whom any of the employment related practices describe in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

    (1) Whether the insured may be liable as an employer or in any other capacity; and

    (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

p. **Personal and Advertising Injury**

Bodily injury arising out of personal and advertising injury.

q. **Asbestos**

Property damage or bodily injury, arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of damages arising out of such property damage or bodily injury as a result of manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

r. **Terrorism**

Bodily injury or property damage arising directly or indirectly as a result of or in connection with terrorism including, but not limited to, any contemporaneous or ensuing bodily injury or property damage caused by fire, looting or theft.

Exclusions c. through n., with the exception of exclusion i., War, and r., Terrorism, do not apply to damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner. A separate limit of insurance applies to this coverage as described in Section III - Limits Of Insurance.

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1. Insuring Agreement

    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of personal and advertising injury to which this insurance applies. We will have the right and duty to defend the insured against any suit seeking those damages. However, we will have no duty to defend the insured against any suit seeking damages for personal and advertising injury to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or suit that may result. But:

        (1) The amount we will pay for damages is limited as described in Section III - Limits Of Insurance; and

        (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

        (3) Our duty to defend applies only in those countries in the coverage territory where legal circumstances permit us to defend. In those countries in the coverage territory where legal circumstances do not permit us to defend, we will reimburse you for your defense costs, subject to our prior authorization.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages A and B.

    b. This insurance applies to personal and advertising injury caused by an offense arising out of your business, but only if the offense was committed in the coverage territory during the policy

period. Any claim or suit must be made or brought in the coverage territory.

2. Exclusions

This insurance does not apply to:

a. Knowing Violation Of Rights Of Another

Personal and advertising injury caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury.

b. Material Published With Knowledge Of Falsity

Personal and advertising injury arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

c. Material Published Prior To Policy Period

Personal and advertising injury arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

d. Criminal Acts

Personal and advertising injury arising out of a criminal act committed by or at the direction of the insured.

e. Contractual Liability

Personal and advertising injury for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

f. Breach Of Contract

Personal and advertising injury arising out of a breach of contract, except an implied contract to use another's advertising idea in your advertisement.

g. Quality Or Performance Of Goods – Failure To Conform To Statements

Personal and advertising injury arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your advertisement.

h. Wrong Description Of Prices

Personal and advertising injury arising out of the wrong description of the price of goods, products or services stated in your advertisement.

i. Infringement Of Copyright, Patent, Trademark or Trade Secret

Personal and advertising injury arising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights.

However, this exclusion does not apply to infringement, in your advertisement, of copyright, trade dress or slogan.

j. Insureds In Media And Internet Type Businesses

Personal and advertising injury committed by an insured whose business is:

(1)   Advertising, broadcasting, publishing or telecasting;

(2)   Designing or determining content of websites for others; or

(3)   An Internet search, access, content or service provider.

However, this exclusion does not apply to Paragraphs 15.a., b. and c. of personal and advertising injury under the Definitions Section.

For the purposes of this exclusion, the placing of frames, borders or links, or advertising, for you or others anywhere on the Internet, is not by itself, considered the business of advertising, broadcasting, publishing or telecasting.

k. Electronic Chatrooms Or Bulletin Boards

Personal and advertising injury arising out of an electronic chatroom or bulletin board the insured hosts, owns, or over which the insured exercises control.

l. Unauthorized Use Of Another's Name Or Product

Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers.

m. Pollution

Personal and advertising injury arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants at any time.

n. Pollution-Related

Any loss, cost or expense arising out of any:

(1) Request, demand or order that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, pollutants, or

(2) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, pollutants.

o. Asbestos

(1) Personal and advertising injury arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust; or

p. War

(1) Personal and advertising injury arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, invasion, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

q. Employment-Related Practices

Personal and advertising injury to:

(1) A person arising out of any:

(a) Refusal to employ that person;

(b) Termination of that person's employment; or

(c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of personal and advertising injury to that person at whom any of the employment related practices describe in paragraphs (a), (b) or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

r.  Terrorism

Personal and advertising injury arising directly or indirectly as a result of or in connection with terrorism including, but not limited to, any contemporaneous or ensuing personal and advertising injury caused by fire, looting or theft.

**COVERAGE C MEDICAL PAYMENTS**

1.  Insuring Agreement

a.  We will pay medical expenses as described below for bodily injury caused by an accident:

(1) On premises you own or rent;

(2) On ways next to premises you own or rent; or

(3) Because of your operations;

provided that:

(1) The accident takes place in the coverage territory and during the policy period;

(2) The expenses are incurred and reported to us within one year of the date of the accident; and

(3) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

b.  We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

(1) First aid administered at the time of an accident;

(2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

(3) Necessary ambulance, hospital, professional nursing and funeral services.

2.  Exclusions

We will not pay expenses for bodily injury:

a.  Any Insured

To any insured, except volunteer workers.

b.  Hired Person

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c.  Injury On Normally Occupied Premises

To a person injured on that part of premises you own or rent that the person normally occupies.

d.  Workers Compensation And Similar Laws

To a person, whether or not an employee of any insured, if benefits for the bodily injury are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e.  Athletics Activities

To a person injured while taking part in athletics.

f.  Products-Completed Operations Hazard

Included within the products-completed operations hazard.

g.  Coverage A Exclusions

Excluded under Coverage A.

h.  War

Arising directly or indirectly as a result of or in connection with war, whether declared or not, or any act or condition incident to war. War includes civil war, insurrection, invasion, act of foreign enemy, civil commotion, factional civil commotion, military or usurped power, rebellion or revolution.

i.  **Terrorism**

Arising directly or indirectly as a result of or in connection with terrorism including, but not limited to, any contemporaneous or ensuing bodily injury caused by fire, looting or theft.

## SUPPLEMENTARY PAYMENTS - COVERAGES A AND B

1.  We will pay, with respect to any claim we investigate or settle or any suit against an insured we defend:

    a.  All expenses we incur.

    b.  Up to $250 for cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which the Bodily Injury Liability Coverage applies. We do not have to furnish these bonds.

    c.  The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

    d.  All reasonable expenses incurred by the insured at our request to assist us in the investigation or defense of the claim or suit, including actual loss of earnings up to $250 a day because of time off from work.

    e.  All costs taxed against the insured in the suit.

    f.  Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment

interest based on that period of time after the offer.

    g.  All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the limits of insurance.

2.  If we defend an insured against a suit and an indemnitee of the insured is also named as a party to the suit, we will defend that indemnitee if all of the following conditions are met:

    a.  The suit against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an insured contract;

    b.  This insurance applies to such liability assumed by the insured;

    c.  The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same insured contract;

    d.  The allegations in the suit and the information we know about the occurrence are such that no conflict appears to exist between the interests of the insured and the interests of the indemnitee;

    e.  The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such suit and agree that we can assign the same counsel to defend the insured and the indemnitee; and

    f.  The indemnitee:

        (1) Agrees in writing to:

            (a) Cooperate with us in the investigation, settlement or defense of the suit;

            (b) Immediately send us copies of any demands, notices,

summonses or legal papers received in connection with the suit;

(c) Notify any other insurer whose coverage is available to the indemnitee; and

(d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

(2) Provides us with written authorization to:

(a) Obtain records and other information related to the suit; and

(b) Conduct and control the defense of the indemnitee in such suit.

So long as the above conditions are met, attorneys' fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments. Notwithstanding the provisions of Paragraph 2.b. (2) of Section I - Coverage A - Bodily Injury and Property Damage Liability, such payments will not be deemed to be damages for bodily injury and property damage and will not reduce the limits of insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys' fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in Paragraph f. above, are no longer met.

## SECTION II- WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

d. An organization other than a partnership, joint venture or limited liability company, you are an insured. Your executive officers and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

a. Your volunteer workers only while performing duties related to the conduct of your business, or your employees, other than either your executive officers (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these employees or volunteer workers are insureds for:

(1) Bodily injury or personal and advertising injury:

(a) To you, to your partners or members (if you are a

partnership or joint venture), to **your** members (if **you** are a limited liability company), to a co-employee while in the course of his or her employment or performing duties related to the conduct of **your** business, or to **your** other volunteered workers while performing duties related to the conduct of **your** business.

(b) To the spouse, child, parent, brother or sister of that co-employee as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) Property damage to property:

(a) Owned, occupied or used by,

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

**you**, any of **your** employees, **volunteer workers**, any partner or member (if **you** are a partnership or joint venture), or any member (if **you are** a limited liability company).

b. Any person (other than **your** employee or **volunteer worker**), or any organization while acting as **your** real estate manager.

c. Any person or organization having proper temporary custody of **your** property if **you** die, but only:

(1) With respect to liability arising out of the

maintenance or use of that property; and

(2) Until **your** legal representative has been appointed.

d. **Your** legal representative if **you** die, but only with respect to duties as such. That representative will have all **your** rights and duties under this Coverage Part.

3. With respect to **mobile equipment** registered in **your** name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with **your** permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

a. **Bodily injury** to a co-employee of the person driving the equipment; or

b. **Property damage** to property owned by, rented to, in the charge of or occupied by **you** or the employer of any person who is an insured under this provision.

4. Any organization **you** newly acquire or form, other than a partnership, joint venture or limited liability company, and over which **you** maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

a. Coverage under this provision is afforded only until the 90th day after **you** acquire or form the organization or the end of the policy period, whichever is earlier;

b. Coverage A does not apply to **bodily injury** or **property damage** that occurred before **you** acquired or formed the organization; and

c. Coverage B does not apply to **personal and advertising injury** arising out of an

offense committed before you acquired or formed the organization.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

## SECTION III - LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or suits brought; or

   c. Persons or organizations making claims or bringing suits.

2. The Master Control Program Aggregate is the most we will pay for the sum of damages paid under this policy and any local underlying policy. You will reimburse us within thirty (30) days of our request for any payment we make under this policy or any local underlying policy for damages or expenses after the Master Control Program Aggregate is exhausted.

3. Subject to 2. above, the General Aggregate Limit is the most we will pay for the sum of:

   a. Medical expenses under Coverage C;

   b. Damages under Coverage A, except damages because of bodily injury or property damage included in the products-completed operations hazard; and

   c. Damages under Coverage B.

4. Subject to 2. above, the Products-Completed Operations Aggregate Limit is the most we will pay under Coverage A for damages because of bodily injury and property damage included in the products-completed operations hazard.

5. Subject to 3. above, the Personal and Advertising Injury Limit is the most we will pay under Coverage B for the sum of all

damages because of all personal and advertising injury sustained by any one person or organization.

6. Subject to 3. or 4. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

   a. Damages under Coverage A; and

   b. Medical expenses under Coverage C because of all bodily injury and property damage arising out of any one occurrence.

7. Subject to 6. above, the Damage To Premises Rented To You Limit is the most we will pay under Coverage A for damages because of property damage to any one premises, while rented to you, or in the case of damage by fire, while rented to you or temporarily occupied by you, with permission of the owner.

8. Subject to 6. above, the Medical Expense Limit is the most we will pay under Coverage C for all medical expenses because of bodily injury sustained by any one person.

9. All payments made under any local policy issued to you by us or any other insurance company will reduce the Limits of Insurance of this policy.

The Limits of Insurance of this Coverage Part apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

1. Bankruptcy

   Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under this Coverage Part.

2. Duties In The Event Of Occurrence, Offense, Claim Or Suit

a. You must see to it that we are notified as soon as practicable of an occurrence or offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the occurrence or offense took place;

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the occurrence or offense.

Notice of an occurrence or offense is not notice of a claim.

b. If a claim is made or suit is brought against any insured, you must:

(1) Immediately record the specifics of the claim or suit and the date received; and

(2) Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or suit as soon as practicable.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation or settlement of the claim or defense against the suit; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insured will, except at that insured's own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. Legal Action Against Us

No person or organization has a right under this Coverage Part:

a. To join us as a party or otherwise bring us into a suit asking for damages from an insured; or

b. To sue us on this Coverage Part unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this Coverage Part or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

4. Other Insurance

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over:

(1) Any of the other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builders' Risk,

Installation Risk or similar coverage for your work;

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for property damage to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, autos or watercraft to the extent not subject to Exclusion g. of Section I - Coverage A **Bodily Injury And Property Damage Liability.**

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement; or

(2) Any of the other insurance or your self-insurance plan that that covers a loss on the same basis.

When this insurance is excess, we will have no duty under Coverages A or B to defend the insured against any suit if any other insurer has a duty to defend the insured against that suit. If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of

insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

d. Difference in Conditions

When the insurance provided by this policy has broader coverage than any other policy available to you covering the same loss, the insurance afforded by this policy will apply to the extent that any coverage or condition herein is less restrictive to you than are the terms and conditions afforded under that other policy.

5. Maintenance of Underlying Insurance

For as long as this policy is in effect all local underlying policies must:

a. Continuously provide no less coverage than in effect at inception of this policy; and

b. Afford no lower Limits of Insurance than in effect at inception of this policy, except for reduction or

exhaustion of primary limits solely due to payment of losses.

This policy shall apply as though such policies had been maintained in force at the terms and conditions at inception of this policy.

6. **Premium Audit**

   a. We will compute all premiums for this Coverage Part in accordance with our rules and rates.

   b. Premium shown in this Coverage Part as advance premium is a deposit premium only. At the close of each audit period we will compute the earned premium for that period. Audit premiums are due and payable on notice to the first Named Insured. If the sum of the advance and audit premiums paid for the policy period is greater than the earned premium, we will return the excess to the first Named Insured.

   c. The first Named Insured must keep records of the information we need for premium computation, and send us copies at such times as we may request.

7. **Representations**

   By accepting this policy, you agree:

   a. The statements in the Declarations are accurate and complete;

   b. Those statements are based upon representations you made to us; and

   c. We have issued this policy in reliance upon your representations.

8. **Separation Of Insureds**

   Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this Coverage Part to the first Named Insured, this insurance applies:

   a. As if each Named Insured were the only Named Insured; and

   b. Separately to each insured against whom claim is made or suit is brought.

9. **Transfer Of Rights Of Recovery Against Others To Us**

   If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

10. **When We Do Not Renew**

    If we decide not to renew this Coverage Part, we will mail or deliver to the first Named Insured shown in the Declarations written notice of the nonrenewal not less than 30 days before the expiration date.

    If notice is mailed, proof of mailing will be sufficient proof of notice.

11. **Cancellation**

    a. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

    b. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

       (1) 10 days before the effective date of cancellation if we cancel for non-payment of premium; or

       (2) 60 days before the effective date of cancellation if we cancel for any other reason.

    c. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

    d. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

    e. If this policy is canceled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named

Insured cancels, the refund may be less than pro rata. If the first Named Insured cancels and the Total Advance Program Premium is indicated as a minimum premium, no refund will be made. The cancellation will be effective even if we have not made or offered a refund.

f. If notice is mailed, proof of mailing will be sufficient proof of notice.

12. Changes

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

13. Examination of Your Books and Records

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

14. Inspections and Surveys

a. We have the right to:

(1) make inspections and surveys at any time;

(2) give you reports on the conditions we find; and

(3) recommend changes.

b. We are not obligated to make any inspections, surveys, reports or recommendations, and such actions we do make relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And, we do not warrant that conditions:

(1) are safe or healthful; or

(2) comply with laws, regulations, code, or standards.

c. Paragraphs a. and b. of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

f. Paragraph b. of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

15. Premiums

The first Named Insured shown in the Declarations:

a. is responsible for the payment of all premiums; and

(b) will be the payee for any return premiums we pay.

16. Transfer of Your Rights and Duties Under This Policy

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative, but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your right and duties, but only with respect to that property.

## SECTION V - DEFINITIONS

1. Advertisement means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

a. Notices that are published include material placed on the Internet or on

similar    electronic    means    of
communication; and

b. Regarding web-sites, only that part of a
website that is about your goods,
products or services for the purposes of,
*attracting customers or supporters is*
considered an advertisement.

2. **Auto** means a land motor vehicle, trailer or
semitrailer designed for travel on public
roads, including any attached machinery or
equipment. But **auto** does not include
**mobile equipment.**

3. **Bodily injury** means **bodily injury,** sickness
or disease sustained by a person, including
death resulting from any of these at any
time.

4. **Coverage territory** means anywhere in the
world, including international waters or
airspace, but excluding those countries
against which the Office of Foreign Assets
Control of the U.S. Department of the
Treasury administers and enforces
economic and trade sanctions.

5. **Employee** includes a **leased worker.**
**Employee** does not include a **temporary
worker.**

6. **Executive officer** means a person holding
any of the officer positions created by your
charter, constitution, by-laws or any other
similar governing document.

7. **Hostile fire** means one which becomes
uncontrollable or breaks out from where it
was intended to be.

8. **Impaired property** means tangible property,
other than **your product** or **your work,** that
cannot be used or is less useful because:

a. It incorporates **your product** or **your
work** that is known or thought to be
defective, deficient, inadequate or
dangerous; or

b. You have failed to fulfill the terms of a
contract or agreement;

if such property can be restored to use by:

a. The repair, replacement, adjustment or
removal of **your product** or **your work;**
or

b. **Your** fulfilling the terms of the contract
or agreement.

9. **Insured contract** means:

a. A contract for a lease of premises.
However, that portion of the contract
for a lease of premises that indemnifies
any person or organization for damage
by fire to premises while rented to **you**
or
temporarily occupied by **you** with
permission of the owner is not an
**insured contract;**

b. A sidetrack agreement;

c. Any easement or license agreement,
except in connection with construction
or demolition operations on or within
50 feet of a railroad;

d. An obligation, as required by ordinance,
to indemnify a municipality, except in
*connection   with   work   for   a*
municipality;

e. An elevator maintenance agreement;

f. That part of any other contract or
agreement pertaining to **your** business
(including an indemnification of a
municipality in connection with work
performed for a municipality) under
which **you** assume the tort liability of
another party to pay for **bodily injury** or
**property damage** to a third person or
organization. Tort liability means a
liability that would be imposed by law
in the absence of any contract or
agreement.

Paragraph f. does not include that part of
any
contract or agreement:

(1) That indemnifies a railroad for
**bodily injury** or **property damage**
arising out of construction or
demolition operations, within 50
feet of any railroad property and
affecting any railroad bridge or

trestle, tracks, road-beds, tunnel, underpass or crossing;

(2) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    (a) Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders or drawings and specifications; or

    (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

(3) Under which the insured, if an architect, engineer or surveyor, assumes liability for injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (2) above and supervisory, inspection, architectural or engineering activities.

10. **Leased worker** means a person leased to you by a labor-leasing firm under an agreement between you and the labor-leasing firm, to perform duties related to the conduct of **your** business. **Leased worker** does not include a **temporary worker**.

11. **Loading or unloading** means the handling of property:

a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or auto;

b. While it is in or on an aircraft, watercraft or auto; or

c. While it is being moved from an aircraft, watercraft or auto to the place where it is finally delivered;

but **loading or unloading** does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or auto.

12. **Local underlying policy** means a primary policy effective on or after the inception of this policy which has been issued at our direction or coordinated by **us** specifically for this insurance program.

13. **Mobile equipment** means any of the following types of land vehicles, including any attached machinery or equipment:

a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

b. Vehicles maintained for use solely on or next to premises **you** own or rent;

c. Vehicles that travel on crawler treads;

d. Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

    (1) Power cranes, shovels, loaders, diggers or drills; or

    (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

e. Vehicles not described in a, b, c, or d, above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

    (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

    (2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in a., b, c, or d, above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not **mobile equipment** but will be considered **autos**:

    (1) Equipment designed primarily for:

(a) Snow removal;

(b) Road maintenance, but not construction or resurfacing; or

(c) Street cleaning;

(2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

(3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

14. **Occurrence** means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15. **Personal and advertising injury** means injury, including consequential bodily injury, arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

f. The use of another's advertising idea in your advertisement; or

g. Infringing upon another's copyright, trade dress or slogan in your advertisement.

16. **Pollutants** mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. **Products-completed operations hazard:**

a. Includes all bodily injury and property damage occurring away from premises you own or rent and arising out of your product or your work except:

(1) Products that are still in your physical possession; or

(2) Work that has not yet been completed or abandoned. However, your work will be deemed completed at the earliest of the following times:

(a) When all of the work called for in your contract has been completed.

(b) When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

b. Does not include bodily injury or property damage arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the loading or unloading of that vehicle by any insured;

(2) The existence of tools, uninstalled equipment or abandoned or unused materials; or

(3) Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are subject to the General Aggregate Limit.

18. **Property damage means:**

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the *occurrence* that caused it.

For the purposes of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or other media which are used with electronically controlled equipment.

19. **Suit** means a civil proceeding in which damages because of **bodily injury, property damage** or **personal and advertising injury** to which this insurance applies are alleged. **Suit** includes:

a. An arbitration proceeding in which such damages claimed and to which the insured must submit or does submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

20. **Temporary worker** means a person who is furnished to **you** to substitute for a permanent employee on leave *or* to meet seasonal or short-term workload conditions.

21. **Terrorism** means the use or threatened use of force or violence against person or property, or commission of an act dangerous to human life or property, or commission of an act that interferes with or disrupts an electronic or communication system, undertaken by any person or group, whether or not acting on behalf of or in connection with any organization, government, power, authority or military force, when the effect is to intimidate or coerce a government, the civilian population or any segment thereof, or to disrupt any segment of the economy.

**Terrorism** shall also include any act which is verified or recognized by the United States Government as an act of terrorism.

22. **Volunteer worker** means a person who is not **your** employee, and who donates his or her work and acts at the direction of and within the scope of duties determined by **you**, and is not paid a fee, salary or other compensation by **you** or anyone else for their work performed for **you.**

23. **Your product:**

a. **Means:**

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) **You;**

(b) Others trading under **your** name; or

(c) A person or organization whose business or assets **you** have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. **Includes:**

(1) Warranties or representations made at any time with respect to the fitness, quality, durability,

performance or use of your product; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

24. **Your work:**

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your work; and

(2) The providing of or failure to provide warnings or instructions.

POLICY NUMBER: GL    359-79-82

**COMMERCIAL GENERAL LIABILITY**
**CG 00 62 12 02**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# WAR LIABILITY EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

A. Exclusion i. under Paragraph 2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability is replaced by the following:

2. Exclusions

This insurance does not apply to:

i. War

"Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

(1) War, including undeclared or civil war; or

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

B. The following exclusion is added to Paragraph 2., Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:

2. Exclusions

This insurance does not apply to:

WAR

"Personal and advertising injury", however caused, arising, directly or indirectly, out of:

a. War, including undeclared or civil war; or

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

C. Exclusion h. under Paragraph 2., Exclusions of Section I - Coverage C - Medical Payments does not apply. Medical payments due to war are now subject to Exclusion g. of Paragraph 2., Exclusions of Section I - Coverage C - Medical Payments since "bodily injury" arising out of war is now excluded under Coverage A.

POLICY NUMBER: GL   359-79-82

COMMERCIAL GENERAL LIABILITY
CG 21 47 07 98

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:
COMMERCIAL GENERAL LIABILITY COVERAGE PART

**A.** The following exclusion is added to Paragraph **2., Exclusions of Section I - Coverage A - Bodily Injury And Property Damage Liability:**

This insurance does not apply to:

"Bodily injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

**B.** The following exclusion is added to Paragraph **2.,**

**Exclusions of Section I - Coverage B - Personal And Advertising Injury Liability:**

This insurance does not apply to:

"Personal and advertising injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Copyright, Insurance Services Office, Inc., 1997

POLICY NUMBER: GL    359-79-82                    IL 02 70 07 02

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART

A. Paragraphs 2. and 3. of the Cancellation Common Policy Condition are replaced by the following:

2. **All Policies In Effect For 60 Days Or Less**

If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

a. 10 days before the effective date of cancellation if we cancel for:

(1) Nonpayment of premium; or

(2) Discovery of fraud or material misrepresentation by:

(a) Any insured or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy.

b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. **All Policies In Effect For More Than 60 Days**

a. If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

(1) Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

(2) Discovery of fraud or material misrepresentation by:

(a) Any insured or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy.

(3) A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

(5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

IL 02 70 07 02                    ©ISO Properties, Inc., 2001                    Page 1 of 3    □

(6) A determination by the Commissioner of Insurance that the:

    (a) Loss of, or changes in, our re-insurance covering all or part of the risk would threaten our financial integrity or solvency; or

    (b) Continuation of the policy coverage would:

        (i) Place us in violation of California law or the laws of the state where we are domiciled; or

        (ii) Threaten our solvency.

(7) A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

  b. We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

    (1) 10 days before the effective date of cancellation if we cancel for a reason listed in Paragraph 3.a.(1) or 3.a.(2); or

    (2) 30 days before the effective date of cancellation if we cancel for any other reason listed in Paragraph 3.a.

B. The following provision is added to the Cancellation Common Policy Condition:

  7. Residential Property

  This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under one of the following:

  Commercial Property Coverage Part

  Farm Coverage Part - Farm Property - Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

  a. If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in b. and c. below.

  b. We may not cancel this policy solely because the first Named Insured has:

    (1) Accepted an offer of earthquake coverage; or

    (2) Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included an earthquake policy premium surcharge.

    However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

  c. We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This Restriction (c.) applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

    (1) Capital Assets Program Coverage Form (Output Policy);

    (2) Commercial Property Coverage Part - Causes Of Loss - Special Form; or

    (3) Farm Coverage Part - Causes Of Loss Form - Farm Property, Paragraph D. Covered Causes Of Loss - Special.

C. The following is added and supersedes any provisions to the contrary:

  NONRENEWAL

  1. Subject to the provisions of Paragraphs C.2. and C.3. below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days, but not more than 120 days, before the expiration or anniversary date.

  We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

  2. Residential Property

  This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property contained in a residential unit, if such coverage is written under one of the following:

  Capital Assets Program (Output Policy) Coverage Part

  Commercial Property Coverage Part

  Farm Coverage Part - Farm Property - Farm Dwellings, Appurtenant Structures And Household Personal Property Coverage Form

    ©ISO Properties, Inc., 2001     IL 02 70 07 02   ☐

a. We may elect not to renew such coverage for any reason, except as provided in b., c. and d. below;

b. We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

However, the following applies only to insurers who are associate participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

(1) The nonrenewal is based on sound underwriting principles that relate to the coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

(2) The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition includes, but is not limited to, a condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

(3) We have:

(a) Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

(b) Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

c. We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

d. We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This Restriction (d.) applies only if coverage is subject to one of the following, which exclude loss or damage caused by or resulting from corrosive soil conditions:

(1) Capital Assets Program Coverage Form (Output Policy)

(2) Commercial Property Coverage Part - Causes Of Loss - Special Form; or

(3) Farm Coverage Part - Causes Of Loss Form - Farm Property, Paragraph D. Covered Causes Of Loss - Special.

3. We are not required to send notice of nonrenewal in the following situations:

a. If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

b. If the policy has been extended for 90 days or less, provided that notice has been given in accordance with Paragraph C.1.

c. If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

d. If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

e. If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

f. If we have made a written offer to the first Named Insured, in accordance with the timeframes shown in Paragraph C.1., to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## ENDORSEMENT

This endorsement, effective 12:01 A.M.    06/30/2003    forms a part of

Policy No.    GL 359-79-82    issued to    PLANTRONICS, INC

by    NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

## COMPOSITE RATING PLAN PREMIUM ENDORSEMENT

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

BUSINESS AUTO COVERAGE FORM

**The Class Code, Premium Basis, and Rate section of the Policy Declarations is changed to apply as follows:**

The premium for this policy will be computed upon a composite basis as shown below in accordance with our rules, rates, rating plans, premiums and minimum premiums and the other policy terms.

### SCHEDULE

| Coverage (CGL or BA) | Premium Type (S or NS) | Estimated Basis of Premium | Composite Rate(s) | Estimated Premium | Minimum Premium | Deposit Premium |
|---|---|---|---|---|---|---|
| | | | | | | |
| CGL | S | $258,453,000 | $0.3482 | $90,000 | $90,000 | $90,000 |
| CGL | S | $98,247,000 | $0.2544 | $25,000 | $25,000 | $25,000 |
| | | | | | | |
| | | | Totals: | $115,000 | $115,000 | $115,000 |

The Composite Rate(s) shown above apply per 1,000 of Sales (a basis of premium type defined below or on page 2 of this endorsement).

If no number or no basis of premium type is inserted, for Commercial General Liability Insurance (CGL Coverage) the rate shall apply per 1000 of "Sales"; or for Business Auto Insurance (BA Coverage) the rate shall apply per 1 Unit where "Unit" means a powered covered "auto".

If "Sales" is selected as the basis of premium, such "Sales" will include both foreign and domestic sales and sales by one named insured to another unless otherwise indicated by "x" below:

☒    "Sales" do NOT include foreign sales.

☒    "Sales" do NOT include sales by one named insured to another.

If "Units" is selected as the basis of premium, a Unit is a(n) _____ power unit.

**Other Basis of Premium Type:** (Define herein or in "Exceptions" on Page 2)

\* Foreign Sales Are Subject To Voluntary Audit.

    Copyright American International Group, Inc.

## COMPOSITE RATING PLAN PREMIUM ENDORSEMENT

### DEFINITIONS OF "BASIS OF PREMIUM TYPE"

(Subject to "Exceptions", if any, described below)

**Admissions** means the total number of persons, other than you, your partners and your employees, admitted during the policy period, to events conducted on premises you own, rent, lease, or otherwise control, whether on paid admission tickets, complimentary tickets or passes.

**Cost** means the total cost to you for all work performed for you during the policy period by independent contractors and their subcontractors at all levels, including the cost of all labor, materials, equipment and supplies furnished, used or delivered for use in the execution of such work, whether furnished by the owner, by contractors or subcontractors at any level, including, but not limited to, all fees, allowances, bonuses, and commissions either made, paid or due, as well as taxes other than taxes which you collect as a separate item and remit directly to a governmental division.

**Receipts** means the gross amount of money you have charged others for work that you, your partners, your employees, your contractors and subcontractors at all levels have performed during the policy period, including taxes other than taxes which you collect as a separate item and remit directly to a governmental division.

**Remuneration** or **Payroll** means all of the money or the substitute for money earned during the policy period by you if you are the proprietor of the insured business, by all partners if you are a partnership or by all members if you are a Limited Liability Company, and by all your employees for their services to you during the policy period, subject to the following:

☐ Total Gross Remuneration or Payroll, without limitation; or

☐ Determined and limited in accordance with our Workers' Compensation Insurance Manual's rules respectively for the states in which you have employment; or

☒ Determined and limited in accordance with our General Liability Insurance Manual's rules respectively for the states in which you have employment.

**Sales** means the gross amount of money you or others trading in your name have charged for all goods and services you or they have sold or distributed during the policy period, including charges for delivery, installation, service and repair, and including taxes other than taxes which you or such others collect as a separate item and remit directly to a governmental division.

**Units** means the number of items of the types specified in this endorsement.

   a. *Units that you hold for use in your business* shall mean half the sum of their number at the policy's inception and their number at its expiration or termination, (if terminated then pro-rated by the fraction of an annual period that the policy remained in effect).

   b. *Units that you sell to others* whether for your own account or the account of another, shall mean the total number of such units that you sell during the policy term.

### Other Definitions

**Subject** is a Premium Type that is subject to adjustment under a retrospective rating plan described in an endorsement attached to the policy. "Subject" is signified on Page 1 by a Premium Type "S".

**Non-Subject** is a Premium Type that is NOT subject to adjustment under a retrospective rating plan described in an endorsement attached to the policy. "Non-Subject" is signified on Page 1 by a Premium Type "NS".

**Exceptions:**

Countersigned by _____

AUTHORIZED REPRESENTATIVE

POLICY NUMBER:    GL 359-79-82

COMMERCIAL GENERAL LIABILITY
CG 20 11 01 96

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ADDITIONAL INSURED – MANAGERS OR LESSORS OF
PREMISES**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

**SCHEDULE**

**1.** Designation of Premises (Part Leased to You):  ALL LEASED PREMISES

**2.** Name of Person or Organization (Additional Insured):  ANY MANAGER/LESSOR, WHERE REQUIRED BY CONTRACT.

**3.** Additional Premium:  INCLUDED

(If no entry appears above, the information required to complete this endorsement will be shown in the Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured the person or organization shown in the Schedule but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Schedule and subject to the following additional exclusions:

This insurance does not apply to:

**1.** Any "occurrence" which takes place after you cease to be a tenant in that premises.

**2.** Structural alterations, new construction or demolition operations performed by or on behalf of the person or organization shown in the Schedule.

    Copyright, Insurance Services Office, Inc., 1994       □

POLICY NUMBER: GL    359-79-82                                          IL 00 21 07 02

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
## (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
PROFESSIONAL LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

A. Under any Liability Coverage, to "bodily injury" or "property damage":

(1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material", if:

(1) The "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or (b) has been discharged or dispersed therefrom;

(2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

(3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

"Hazardous properties" includes radioactive, toxic or explosive properties.

"Nuclear material" means "source material", "Special nuclear material" or "by-product material".

"Source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material (a) containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

  (a) Any "nuclear reactor";

  (b) Any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging "waste";

  (c) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

  (d) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

# ENDORSEMENT

This Endorsement, effective 12:01 A.M.,    06/30/2003    forms a part of

Policy No.:    GL 359-79-82   Issued to:  PLANTRONICS, INC

By:    NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL GENERAL LIABILITY

This insurance does not apply to any "bodily injury" , "property damage" , "personal injury"
or "advertising injury", or any other loss, cost or expense arising out of the presence,
ingestion, inhalation, or absorption of or exposure to lead in any for or products containing
lead.

---

AUTHORIZED REPRESENTATIVE

58332 (7/93)

## ENDORSEMENT

This endorsement, effective 12:01 A.M. 06/30/2003          forms a part of

policy No. GL    359-79-82     issued to PLANTRONICS, INC

by THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

### RADIOACTIVE MATTER EXCLUSION

*This endorsement modifies insurance provided under the following:*

### COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section I. - Coverages, Coverage A.- Bodily Injury and Property Damage Liability, 2. - Exclusions, is amended to add:**

> Any liability for "bodily injury" or "property damage" arising out of the actual, alleged or threatened exposure of person(s) or property to any radioactive matter or any form of radiation.

**Section I. - Coverages, Coverage B.- Personal and Advertising Liability, 2. - Exclusions, is amended to add:**

> Arising out of the actual, alleged or threatened exposure of person(s) or property to any radioactive matter or any form of radiation.

_____
**Authorized Representative or
Countersignature (In States Where
Applicable)**

62898 (9/01)

POLICY NUMBER:   GL 359-79-82

COMMERCIAL GENERAL LIABILITY
CG 02 24 10 93

THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.

# EARLIER NOTICE OF CANCELLATION PROVIDED BY US

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

### SCHEDULE

**Number of Days' Notice: Sixty (60)**

(If no entry appears above, information required to complete this Schedule will be shown in the Declarations as applicable to this endorsement.)

For any statutorily permitted reason other than nonpayment of premium, the number of days required for notice of cancellation, as provided in paragraph 2. of either the CANCELLATION Common Policy Condition or as amended by an applicable state cancellation endorsement, is increased to the number of days shown in the Schedule above.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT**

This endorsement, effective 12:01 A.M.    06/30/2003    forms a part of

Policy No.    GL 359-79-82    issued to    PLANTRONICS, INC

By    NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA

**ASBESTOS EXCLUSION ENDORSEMENT**

*This endorsement modifies insurance provided under the following:*

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

**Section I. - Coverages, Coverage A.- Bodily Injury and Property Damage Liability, 2. - Exclusions**, is amended to add the following exclusion:

"Property damage" or "bodily injury", arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of damages arising out of such "property damage" or "bodily injury" as a result of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

**Section I. - Coverages, Coverage B.- Personal and Advertising Liability, 2. – Exclusions** is amended to add the following exclusion:

Arising out of the manufacture of, mining of, use of, sales of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust, or to any obligation of the insured to indemnify any party because of damages arising out of the manufacture of, mining of, use of, sale of, installation of, removal of, distribution of, or exposure to asbestos products, asbestos fibers or asbestos dust.

_____
AUTHORIZED REPRESENTATIVE

65165 (9/01)

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**ENDORSEMENT**

This endorsement, effective 12:01 A.M.    06/30/2003    forms a part of

Policy No.    GL 359-79-82    issued to    PLANTRONICS, INC

By    THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

**SELF-INSURED RETENTION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

I.    **INSURING AGREEMENTS**

SECTION I - COVERAGES, COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY, 1. - INSURING AGREEMENT, paragraph a. is deleted in its entirety and replaced with the following:

a.    We will pay on behalf of the Insured those sums, in excess of the Retained Limit, subject to the terms and conditions set forth in this Endorsement, that the Insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage", to which this insurance applies.  We will have the right but not the duty to defend any "suit" seeking those damages.  We may at our discretion and expense, participate with you in the investigation of any "occurrence" and the defense or settlement of any claim or "suit" that may result.

    (1)  The amount we will pay for damages is limited as described in SECTION III - LIMITS OF INSURANCE; and

    (2)  Our right to defend, if we so exercise it, ends when we have exhausted the applicable limit of insurance in the payment of judgment or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the ALLOCATED LOSS ADJUSTMENT EXPENSES – COVERAGES A AND B section.

SECTION I - COVERAGES, COVERAGE B - PERSONAL AND ADVERTISING INJURY, 1. - Insuring Agreement, paragraph a. is deleted in its entirety and replaced with the following:

a.    We will pay on behalf of the Insured those sums, in excess of the Retained Limit, subject to the terms and conditions set forth in this Endorsement, that the Insured becomes legally obligated to pay as damages because of "personal and advertising injury", to which this insurance applies.  We will have the right but not the duty to defend any "suit" seeking those damages.  We may at our discretion and expense, participate with you in the investigation of any "occurrence" or offense and the defense or settlement of any claim or "suit" that may result.

    (1)  The amount we will pay for damages is limited as described in Section III – LIMITS OF INSURANCE; and

79201 (2-02)                                    1

(2) Our right to defend, if we so exercise it, ends when we have exhausted the applicable limit of insurance in the payment of judgment or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under the ALLOCATED LOSS ADJUSTMENT EXPENSES – COVERAGES A AND B section.

## II. ALLOCATED LOSS ADJUSTMENT EXPENSES – COVERAGES A AND B

SECTION I - COVERAGES, SUPPLEMENTARY PAYMENTS - COVERAGES A AND B is deleted in its entirety and replaced with the following:

ALLOCATED LOSS ADJUSTMENT EXPENSES - COVERAGES A AND B

You are responsible for all "Allocated Loss Adjustment Expenses" we pay as Supplementary Payments, according to the election indicated by an "X" below. If no election is indicated, election i. shall apply.

☐ i.    All "Allocated Loss Adjustment Expenses" up to the Retained Limit. However, the most you are responsible for with respect to damages, benefits, medical expenses and "Allocated Loss Adjustment Expenses" combined shall not exceed the Retained Limit.

☐ ii.   All "Allocated Loss Adjustment Expenses".

☒ iii.  A part of "Allocated Loss Adjustment Expenses". That part will be calculated by dividing the smaller of the Retained Limit or the damages, benefits or medical expenses you pay by the damages, benefits or medical expenses we pay. If we pay no damages, benefits or medical expenses, you are responsible for all "Allocated Loss Adjustment Expenses" up to the applicable Retained Limit and 100.0% of all remaining "Allocated Loss Adjustment Expenses".

☐ iv.   No "Allocated Loss Adjustment Expenses".

Your duty to pay for "Allocated Loss Adjustment Expenses" applies separately to each "occurrence" for "bodily injury" or "property damage", or to each offense for "personal and advertising injury".

## III. LIMITS OF INSURANCE

The Limits of Insurance for each of the Coverages provided by this policy will apply in excess of a Self-Insured Retention (hereinafter referred to as the Retained Limit).

The Retained Limit, applying only to damages for "occurrences" or offenses covered under this policy, is $25,000 per "occurrence" or offense.

Subject to additional Allocated Loss Adjustment Expenses, the Retained Limit is the most an insured will pay for:

A. The sum of all damages because of all "personal and advertising injury" sustained by any one person or organization; or

B. The sum of damages under Coverage A and medical expenses under Coverage C, because of all "bodily injury" and "property damage" arising out of any one occurrence.

## IV. BANKRUPTCY

Your bankruptcy, insolvency, inability to pay, failure to pay, or refusal to pay the Retained Limit will not increase our obligations under the policy. In the event there is insurance, whether or not applicable to an "occurrence", claim or "suit" within the Retained Limit, you will continue to be responsible for the full amount of the Retained Limit before the limits of insurance under this policy apply. In no case will we be required to pay the Retained Limit or any portion thereof. Our obligations will attach only when the entire amount of the Retained Limit has been paid and then only in excess of the Retained Limit and not in excess of the total limit of insurance adjusted for any reduction in the aggregate limit of our liability.

## V.  NOTICE PROVISIONS

**Section IV - Commercial General Liability Conditions, 2. - Duties in the Event of Occurrence, Offense, Claim or Suit, a.  is amended to read:**

A. Periodic Notices: on a <u>Quarterly</u> basis, you must provide us with a written summary (loss run) of all "occurrences", offenses, claims, or "suits" which have or may result in payments within the Retained Limit.

This written summary must show:

1.  The date of the "occurrence"; and
2.  The name(s) of the injured person(s) or identification of the damaged property, and
3.  A description of the injury or damage, and
4.  The amount paid or reserved, including "allocated loss adjustment expense", resulting from the "occurrence", claim or "suit".

B. Individual Notices of an Offense or an "Occurrence": in addition to the Periodic Notices provided for in A. above, you must see to it that we are notified as soon as practicable of any "occurrence" or an offense which may result in a claim.  Knowledge of an "occurrence" or an offense by your agent, your servant, or your employee will not in itself constitute knowledge to you unless the Director of Risk Management (or one with similar or equivalent title) or his/her designee, at the address shown in the policy declarations, will have received such notice.  To the extent possible notice should include:

(1) How, when and where the "occurrence" or offense took place;
(2) The names and addresses of any injured persons and witnesses; and
(3) The nature and location of any injury or damage arising out of the "occurrence" or offense, including but not limited to:

   (a) a fatality;
   (b) paralysis of any part of the body;
   (c) a major extremity or multiple minor extremity amputations;
   (d) a brain or brain stem injury;
   (e) severe burns or disfigurement;
   (f) partial or total blindness;
   (g) loss or impairment of hearing;
   (h) a heart attack;
   (i) reserves that exceed 50% of the "retained limit".

  – As respects the above categories, You must provide us with any and all additional information, material and/or data, subsequent to the original notice, as it becomes available.

## VI.    SPECIAL CONDITIONS

79201 (2-02)                                            3

A. You will employ and pay, without any reimbursement from us, a firm acceptable to us for *the purpose* of providing claim services (Claims Administrator). In the event of cancellation, expiration or revision of the contract between you and the self-insurance service company, you will notify us within ten (10) days of the cancellation, expiration or revision.

B. Loss settlements made by you or the Claims Administrator will be within the terms, conditions and limits of the policy.

C. There will be no reduction of the Retained Limit because of payment of claims or "suits" arising from claims or "suits" for which coverage is not afforded by the policy.

## VII. DEFINITIONS

SECTION V - DEFINITIONS is amended to include the following additional definition:

"Allocated Loss Adjustment Expenses" means all fees for service of process and court costs *and court expenses;* pre- and post-judgement interest; attorneys' fees; cost of undercover operative and detective services; costs of employing experts; costs for legal transcripts, copies of any public records, and costs of depositions and court-reported or recorded statements; costs and expenses of subrogation; and any similar fee, cost or expense reasonably chargeable to the investigation, negotiation, settlement or defense of a loss or a claim or "suit" against you, or to the protection and perfection of your or our subrogation rights.

"Allocated Loss Adjustment Expenses" shall not include our general overhead, the salary and employee benefits of any of our employees, nor the fees of any attorney who is our employee or under our permanent retainer; nor the fees of any attorney we retain to provide counsel to us about our obligations, if any, under any policy issued by us or our affiliated company (ies), with *respect to a claim or "suit" against you.*

All other terms, exclusions, and conditions of this policy remain unchanged.

_____
Authorized Representative

## ENDORSEMENT

This endorsement, effective 12:01 A.M. 06/30/2003          forms a part of

policy No. GL     359-79-82     issued to PLANTRONICS, INC

by THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

### THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

## TERRORISM EXCLUSION

This insurance does not apply to loss, injury, damage, claim or suit, arising directly or indirectly as a result of a certified "act of terrorism" defined by Section 102. Definitions., of the Terrorism Risk Insurance Act of 2002 and any revisions or amendments.

For purposes of this endorsement and in compliance with the Terrorism Risk Insurance Act of 2002, an "act of terrorism" shall mean:

(1)   Act of Terrorism -
    (A)   Certification. - The term "act of terrorism" means any act that is certified by the Secretary of the Treasury of the United States, in concurrence with the Secretary of State, and the Attorney General of the United States --
        (i)   to be an act of terrorism;
        (ii)   to be a violent act or an act that is dangerous to --
            (I)     human life;
            (II)    property; or
            (III)   infrastructure;
        (iii)   to have resulted in damage within the United States, or outside of the United States in the case of --
            (I)     an air carrier or vessel described in paragraph (5)(B); (for the convenience of this endorsement, paragraph (5)(B) reads: occurs to an air carrier (as defined in Section 40102 of title 49, United States Code) to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs, or at the premises of any United States mission);
            (II)    the premises of a United States mission; and
        (iv)   to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.
    (B)   Limitation. -- No act shall be certified by the Secretary as an act of terrorism if --
        (i)    the act is committed as part of the course of a war declared by the Congress, except that this clause shall not apply with respect to any coverage for workers' compensation; or
        (ii)   property and casualty insurance losses resulting from the act, in the aggregate, do not exceed $5,000,000.
    (C)   Determinations Final. - Any certification of, or determination not to certify, an act as an act of terrorism under this paragraph shall be final, and shall not be subject to judicial review.

81127 (12/02)                    Page 1 of 2

(D)   Nondelegation. - The Secretary may not delegate or designate to any other officer, employee, or person, any determination under this paragraph of whether, during the effective period of the Program, an act of terrorism has occurred.

All other terms and conditions of the policy are the same.

Authorized Representative or
Countersignature (in States Where
Applicable)