**EXHIBIT I**

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

FILED-CLERK
U.S. DISTRICT COURT

2006 NOV 14 AM 11: 22

TX EASTERN-MARSHALL

BY_____

SHANNON WARS, an individual, and on
Behalf of All Others Similarly Situated,  )
                                          )
                                          )
                    Plaintiffs,           )    NO.  **2 - 0 6 C V - 4 7 0** 𝒯𝒿𝓌
                                          )
vs.                                       )
                                          )
PLANTRONICS, INC.,                        )
                                          )
                    Defendant.            )    JURY

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, SHANNON WARS ("Plaintiff"), individually and on behalf of others similarly

situated, brings this action against Defendant, PLANTRONICS, INC., and would show unto the

court as follows:

### VENUE AND JURISDICTION

1.    This Court has jurisdiction of this case under 28 U.S.C. § 1332.

2.    Venue is proper in the Eastern District in that Plaintiff is a resident of the Eastern

District of Texas. Plaintiff purchased the goods at issue while a resident of the Eastern District of

Texas, and the breach of warranty and statutory violations of which Plaintiff complains all occurred

in the Eastern District of Texas.

### THE PARTIES

3.    Individual and representative plaintiff, SHANNON WARS, is a resident of the

Eastern District of Texas.

4.    Plaintiff is informed and believes and on that basis allege that Defendant Plantronics

Inc. ("Plantronics") is a Delaware corporation, with its principal place of business in California,

registered to do business, and doing business, in the state of Texas. Defendant may be served by

serving its registered agent for service, C T Corporation System, 350 North St. Paul Street, Dallas, TX 75201

### FACTUAL BACKGROUND

5.     On or about November 2006 Plaintiff purchased a Plantronics Model Voyager 510 Bluetooth headset.

6.     This action arises from Defendant's marketing, manufacture, and distribution of devices known as "Bluetooth Headsets" which permit wearers to utilize a mobile phone without holding the phone next to the face and without the necessity of wires connecting the phone to the headset.

7.     Plantronics has manufactured and distributed many different models of Bluetooth Headsets, including the Discovery 655, Discovery 645, Discovery 640, Discovery 640E, Voyager 510, Explorer 350, Explorer 340, and Explorer 330 (collectively the "Headsets"). On the packaging of these Headsets, Plantronics has made false representations, omissions and concealments to purchasing consumers in order to induce the consumers to purchase the product. Each Headset is sold with affirmative representations that it can be used for extensive time periods, yet the packaging lacks any warnings regarding the noise induced hearing loss, a condition which has no cure or treatment, which will result from use of the Headsets even when used under nominal conditions.

8.     Use of Bluetooth headsets is becoming increasingly popular among the consuming public because of the ease and convenience associated with the technology.   As more and more people switch from using landlines to using mobile phones in order to accommodate their telecommunication needs, more and more consumers are spending hours per day on the mobile phone.  Such increased usage is particularly dramatic with respect to individuals using a mobile phone for business purposes.

9.    Plaintiff is informed and believes that noise induced hearing loss is the slow loss of hearing caused by too much noise. Hearing loss happens when too much noise hurts the hair cells in the inner ear. Noise induced hearing loss is one of the most common causes of nerve deafness. Noise induced hearing loss lasts forever. There is no treatment, no medicine, no surgery, and no device which can correct hearing once damaged by noise.

10.    Plaintiff is informed and believes that noise induced hearing loss can happen gradually over time and does not cause pain. As such, one is not aware that noise induced hearing loss is occurring until it is too late. Because noise induced hearing loss is an insidiously developing hearing impairment, damage occurs prior to the point at which it is perceived.

11.    Noise induced hearing loss can also result because an individual has become accustomed to a particular sound level. As the individual gradually suffers hearing loss, in an effort to compensate for the decrease in ability to hear, the individual unwittingly increases the volume of a device in order to hear the sound produced and thereby compounds the injury.

12.    A government organization, *Dangerous Decibels, a public health partnership for the* prevention of noise induced hearing loss, advises the public that "[a] dangerous sound is anything that is 85 dB (sound pressure level - SPL) or higher." The organization further explains that "[o]f the roughly 40 million Americans suffering from hearing loss, 10 million can be attributed to noise-induced hearing loss (NIHL). NIHL can be caused by a one-time exposure to loud sound as well as by repeated exposure to sounds at various loudness levels over an extended period of time."

13.    Plantronics's Headsets have volume controls which produce sounds exceeding 85 decibels, with sound often peaking in excess of 100 decibels. The consumer cannot determine, without resorting to scientific testing, the decibel level of the sound being emitted from the Headset.

---

*Plaintiff's Original Complaint – Page 3*

A consumer statistically develops NIHL if exposed to such sounds for between only three to four minutes a day.

14.    Millions of consumers have had their hearing put at risk by Plantronics's conduct. Defendant impliedly warranted that the Headsets were suited for a particular purpose. Defendant failed to warn the consumer of information known by Defendant, or which should reasonably have been known by Defendant, relating to the safe operation of the product.

15.    Defendant sold the Headsets with a booklet setting forth safety information relating to use of the Headsets. However, Defendant omitted and concealed from consumers any safety information pertaining to the Headsets' propensity for causing noise induced hearing loss. Defendant also omitted and concealed from the consuming public information advising that the Headsets produced noise at decibel levels exceeding 85 db, and even exceeding 100 db.

16.    Because the Headset transmits sound to only one ear, extraneous sound from the environment is simultaneously being heard by the Headset user from the other ear. Such ambient sound makes it more difficult for the Headset user to isolate and hear the sound being transmitted over the Headset. The Headset user is thus required to maximize the volume of the Headset in order to overcome the extraneous noise being heard in the other ear.

17.    Due to Defendant's lack of disclosure Plaintiff was unaware and could not have known that the Headsets were emitting sounds in excess of safe decibel levels. Had Plaintiff known what he knows now he would not have purchased the Headset; would not have purchased it for the price for which it was purchased, or would have known that the Headset could be used only for nominal periods of time.

18.    The design, manufacture, distribution and sale by Defendant of the Headsets without adequate warning labels that the Headsets produce decibel levels harmful to the human ear

---

constitutes unconscionable conduct and a deceptive business practice. As a result of Defendant's conduct, numerous consumers have paid for an unsafe product which they falsely were led to believe could be used safely.

19.     The packaging on the Headsets advises that the Headsets can be used for a certain amount of talk time. The various models indicate talk time of 3 hours, 6 hours, 8 hours, 9 hours, 10 hours, and even 15 hours. However, the representations as to permissible talk times are false, as a consumer cannot safely use the Headsets for the talk times represented.

20.     Plantronics impliedly warranted that the Headsets are "free from defects in materials and workmanship under normal consumer usage. . . ." This representation was and is false. The Headsets are defective and cannot safely be used for their intended purpose. The materials and workmanship of the product cause the product to produce unsafe decibel levels under normal consumer usage.

CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action both on behalf of himself, and as a class action on behalf of the following Class (the "Class"):

> All consumers who, within the four years prior to the filing of this Complaint ("Class Period"), purchased a Bluetooth Headset device manufactured by Defendant, and who (1) resided in Texas during the Class Period; (2) purchased the Headset while located in Texas or (3) purchased the Headset from a source in Texas.

Said definition may be further defined by additional pleadings, evidentiary hearings, a class certification hearing, and order of this Court.

22.     The proposed class specifically excludes the United States of America, the State of Texas, counsel for the parties, the presiding United States District Court judge, the justices of the United States Court of Appeals for the Fifth Circuit, all offices and agents of Plantronics, and all

persons related to within the third degree of consanguinity or affection to any of the foregoing individuals.

23.    Although Plaintiff does not know the exact number of the members of the Class, since such information is within the exclusive control of Defendant, Plaintiff believes that due to the nature of the commerce involved, the number of members of the Class is sufficiently numerous, most likely thousands of purchasers, that joinder of all Class members is impracticable.

24.    The claim of Plaintiff is typical of the Class claims. Plaintiff purchased one or more Headsets manufactured by Plantronics within the Class Period. The unsafe Headsets were unfairly and falsely marketed by Plantronics, with the same misrepresentations, omissions and concealments made as to Plaintiff and the Class members. All Class members purchased the Product within the Class Period.

25.    Numerous questions of law and fact are common to the Class, which predominate over any individual issues. Questions of law and fact which are common to the Class include, without limitation:

a)    Whether Defendant represented to consumers that the Headsets had a characteristic, use, benefit or quality that permitted a consumer to use the Headsets;

b)    Whether the Headsets in fact have a characteristic, use, benefit or quality that prevents a consumer from safely using the Headsets;

c)    Whether use of the Headsets expose users to dangerous levels of sound;

d)    Whether Defendant knowingly concealed the danger of using the Headsets;

e)    Whether Defendant truthfully advertised that the Headsets could safely be used;

f)    Whether Defendant violated implied warranty statutes;

---

*Plaintiff's Original Complaint – Page 6*

g)     Whether Defendant's actions were unconscionable under the Texas Deceptive Trade Practices Act;

h)     The nature and extent of damages and other remedies to which the conduct of Defendant entitle the Class members;

i)     The availability of statutory penalties; and

j)     Attorneys' fees and costs.

26.     Defendant engaged in a common course of conduct involving similar or identical unsafe designs, statutory violations, and misrepresentations. Individual questions, if any, pale by comparison to the numerous questions that dominate this litigation. The claims at issue herein do not seek damages for physical injury which has already occurred to the Class members, and thus individualized determination as to causation related to bodily injury already suffered will not be required. The monetary damages sustained by the Class members arise from a common nucleus of operative facts involving the Defendant's misconduct.

27.     Plaintiff will fairly and adequately represent the interests of the Class in that Plaintiff, who is a Texas resident, is a typical purchaser of the Headsets. Plaintiff's interests do not conflict with the interests of the other Class members that they seek to represent. Furthermore, Plaintiff has retained competent counsel experienced in class action litigation. Plaintiff's counsel will fairly and adequately protect the interests of the Class.

28.     This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy. The Class is readily definable. A class action will enable claims to be handled in an orderly and expeditious manner. A class action will save time and expense and will ensure uniformity of decisions.

29.     The relief sought per individual member of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct

---

*Plaintiff's Original Complaint – Page 7*

of Defendant. Furthermore, it would be virtually impossible for the Class members to seek redress on an individual basis. Furthermore, most class members are unaware of the Headsets' defective condition; the fact that the Headsets are unfit for their intended use, or the danger that the Headset posed. Even if the Class members themselves could afford such individual litigation, the court system could not.

30.    Injunctive relief is appropriate as to the Class as a whole because Defendant has acted or refused to act on grounds generally applicable to the Class.

### CAUSES OF ACTION

### Unconscionable Conduct (Tex. Bus. & Comm. Code § 17.45(5)

31.    Plaintiff would show the Court that the conduct of Defendant described above is unconscionable and violates Tex. Bus. & Comm. Code § 17.45(5) in that Defendant took advantage of the lack of knowledge, the ability, experience, or capability of the Plaintiff, to Plaintiff's detriment to a grossly unfair degree. Plaintiff gave written notice to Defendant advising it of Plaintiff's specific complaints. A true and correct copy of the written notice is attached as Exhibit "A" and incorporated by reference the same as if fully copied and set forth at length.

### Breach of Implied Warranty (Tex. Bus. & Comm. Code § 17.45(a)(2)

32.    At the time of the conduct described above, Defendant impliedly warranted that the Bluetooth Headset would be merchantable, that it was reasonably fit for the ordinary purpose for which it was to be used, and could pass without objection in the trade under its description. However, the implied warranty of fitness was breached in that the Bluetooth Headset was not as warranted, in that it was not fit for the ordinary purpose for which it was to be used, and was dangerous. The danger of the Bluetooth Headset is set out above. Thus, the Defendant's breach of its implied warranty constitutes a violation of § 17.50(a)(2).

---

*Plaintiff's Original Complaint – Page 8*

## DAMAGES

33.     For himself and on behalf of the entire Class, Plaintiff, SHANNON WARS, seeks actual damages sufficient to restore to these consumers the benefit of their bargain with Plantronics.

34.     Plaintiff seeks, on behalf of himself and the Class members, injunctive relief, product repair, restitution, damages, and all other appropriate relief.

## JURY DEMAND

Plaintiff, on behalf of himself and as representative of all other persons similarly situated, hereby demands a trial by jury.

**WHEREFORE**, Plaintiff, SHANNON WARS, on behalf of himself and as representative of all other persons similarly situated, prays for judgment against the Defendant, as follows:

1.     An Order certifying the Class and any appropriate sub-class thereof, and appointing Plaintiff, Shannon Wars, and his counsel, to represent the Class;

2.     An award of general damages according to proof;

3.     A award of restitution in an amount according to proof;

4.     A permanent injunction enjoining Defendant, and its agents, servants, employees and all persons acting under or in concert with it, to cease and desist from selling, marketing or advertising the Headsets without a mechanism by which the user can readily and easily determine the decibel levels being emitted by the Headsets and thereby be made aware of the safe time limits (if any) for use of the Headsets at the higher volume settings;

5.     For reasonable attorneys' fees;

6.     For costs incurred herein;

7.     For prejudgment interest; and

*Plaintiff's Original Complaint – Page 9*

8.    For all other relief to which the Plaintiff and the members of the Class are

entitled by law.

Respectfully submitted,

John R. Mercy
State Bar of Texas No. 13947200
MERCY ★ CARTER ★ TIDWELL, L.L.P.
1724 Galleria Oaks Drive
Texarkana, TX 75503
Telephone:   (903) 794-9419
Facsimile:   (903) 794-1268
E-mail:   jmercy@texarkanalawyers.com

David Marks
State Bar of Texas No. 12993300
MARKS, BALETTE & GIESSEL
10000 Memorial Drive, Suite 760
Houston, Texas 77024
Telephone:   (713) 681-3070
Facsimile:   (713) 681-2811

James Holmes
State Bar of Texas No. 00784290
THE LAW OFFICE OF JAMES HOLMES, P.C.
605 South Main, Suite 203
Henderson, TX 75654
Telephone:   (903) 657-2800
Facsimile:   (903) 657-2855

ATTORNEYS FOR PLAINTIFFS