EXHIBIT J



**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**FOURTH CIRCUIT**

RALPH COOK, individually and on
behalf of a class of others similarly
situated

               Plaintiff,

    vs.

PLANTRONICS INC., a Delaware
corporation,

               Defendant.

Case No. 2:07 cv 12

**COMPLAINT - CLASS ACTION-JURY
TRIAL DEMANDED**

Plaintiff RALPH COOK ("Plaintiff"), individually and on behalf of others similarly

situated, brings this action against Defendant Plantronics ("Defendant"), demanding a

trial by jury, as follows:

### JURISDICTION AND VENUE

1.    This Court has original jurisdiction over this class action pursuant to 28

U.S.C. § 1332(d)(Class Action Fairness Act), in that the matter in controversy exceeds

the sum or value of $5,000,000, exclusive of interest and costs, there are at least 100

members of the proposed class, and at least one member of the class is a citizen of a

different state than Defendant.

2.    This Court has general and specific personal jurisdiction over each of the

named Defendant. The Defendant was engaged in unfair business practices directed at

and/or causing injury to persons residing, located or doing business in the United

States.

3.    Plaintiff is informed and believes that Defendant is authorized to do

1

business in Virginia, have sufficient minimum contacts with Virginia, and/or otherwise intentionally avail themselves of the markets in Virginia through the promotion, marketing and sales in the Commonwealth of Virginia of Bluetooth headsets, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

4.    Venue in this Court is proper under 28 U.S.C. § 1391(b) and (c), because Defendant has transacted business, maintained offices, or are otherwise found within this district, and many of Defendant's unlawful acts giving rise to Plaintiff's claims occurred, and a substantial portion of the affected interstate trade and commerce described below has been carried out, in this district in the Norfolk area.

5.    Plaintiff resided in the City of Norfolk at the time that the purchase at issue was made, and continues to live in the City of Norfolk at the present time. Plaintiff purchased the product at issue in the Commonwealth of Virginia.

6.    The business activities of Defendant at issue in this Complaint were within the flow of and substantially affected interstate trade and commerce. There has been a continuous and uninterrupted flow of activities in interstate commerce throughout the class period.

## THE PARTIES

7.    Individual and representative plaintiff RALPH COOK is a resident of the City of Norfolk, and the Commonwealth of Virginia.

8.    Plaintiffs are informed and believe and on that basis allege that Defendant, Plantronics, Inc. ("Plantronics") is a Delaware corporation, with its principal place of business in California, doing business, in the Commonwealth of Virginia.

2

9.    Plantronics is authorized to do business in the Commonwealth of Virginia, has sufficient minimum contacts with the Commonwealth of Virginia, and/or otherwise intentionally avails itself of the markets in Virginia through the promotion, marketing and sale of its products in Virginia, to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

### FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

10.    This action arises from Defendants' marketing, manufacture, and distribution of devices known as "Bluetooth Headsets" which permit wearers to utilize a mobile phone without holding the phone next to the face and without the necessity of wires connecting the phone to the headset.

11.    Plantronics has manufactured and distributed many different models of Bluetooth Headsets, including the Discovery 655, Discovery 645, Discovery 640, Discovery 640E, Voyager 510, Explorer 350, Explorer 340, and Explorer 330 (collectively the "Headsets"). On the packaging of these Headsets, Plantronics has made false representations, omissions and concealments to purchasing consumers in order to induce the consumers to purchase the product. Each Headset is sold with affirmative representations that it can be used for extensive time periods, yet the packaging lacks any warnings regarding the noise induced hearing loss, a condition which has no cure or treatment, which can be expected to result from use of the Headsets in most environments over that period of time.

12.    Use of Bluetooth headsets is becoming increasingly popular among the consuming public because of the ease and convenience associated with the technology. According to the Insight Research Corporation ("IRC"), "[n]early 65 percent

3

of Americans, or 195 million people, are expected to be mobile phone subscribers by the close of 2005." IRC has also reported that "[a]s users become more used to the convenience of cellular, long distance and local usage is shifting from wireline to cellular. The average wireline residential toll minutes of use (MOUs) have been dropping at a compounded rate of 15 percent since 2000, while wireless interstate MOUs per user grew at a compounded rate of nearly 40 percent during the same period. According to one FCC study, on the wireless side, the percentage of interstate residential minutes has increased from 16 percent to 26 percent of all wireless minutes." As more and more people switch from using landlines to using mobile phones in order to accommodate their telecommunication needs, more and more consumers are spending hours per day on the mobile phone. Such increased usage is particularly dramatic with respect to individuals using a mobile phone for business purposes.

13.    As explained by the National Institute on Deafness and Other Communication Disorders (NIDOCD) (www.nidcd.nih.gov/health/hearing/noise.asp), "[h]earing is a series of events in which the ear converts sound waves into electrical signals that are sent to the brain and interpreted as sound. The ear has three main parts: the outer, middle, and inner ear. Sound waves enter through the outer ear and reach the middle ear where they cause the eardrum to vibrate." Noise induced hearing loss "can be caused by . . . repeated exposure to sounds at various loudness levels over an extended period of time."

14.    "The vibrations are transmitted through three tiny bones in the middle ear, called the ossicles. These three bones are named the malleus, incus, and stapes (and are also known as the hammer, anvil, and stirrup). The eardrum and ossicles amplify

4

the vibrations and carry them to the inner ear. The stirrup transmits the amplified vibrations through the oval window and into the fluid that fills the inner ear. The vibrations move through fluid in the snail-shaped hearing part of the inner ear (cochlea) that contains the hair cells. The fluid in the cochlea moves the top portion of the hair cells, called the hair bundle, which initiates the changes that lead to the production of nerve impulses. These nerve impulses are carried to the brain, where they are interpreted as sound. Different sounds move the hair bundles in different ways, thus allowing the brain to distinguish one sound from another, such as vowels from consonants."

15.    Plaintiff is informed and believes that noise induced hearing loss is the slow loss of hearing caused by too much noise. Hearing loss happens when too much noise hurts the hair cells in the inner ear. Noise induced hearing loss is one of the most common causes of nerve deafness. Noise induced hearing loss lasts forever. There is no treatment, no medicine, no surgery, and no device which can correct hearing once damaged by noise.

16.    Plaintiff is informed and believes that noise induced hearing loss can happen gradually over time and does not cause pain. As such, one is not aware that noise induced hearing loss is occurring until it is too late. Because noise induced hearing loss is an insidiously developing hearing impairment, damage occurs prior to the point at which it is perceived.

17.    Noise induced hearing loss can also result because an individual has become accustomed to a particular sound level. As the individual gradually suffers hearing loss, in an effort to compensate for the decrease in ability to hear, the individual

unwittingly increases the volume of a device in order to hear the sound produced and thereby compounds the injury.

18.     Another organization, Dangerous Decibels, a public health partnership for the prevention of noise induced hearing loss, advises the public that "[a] dangerous sound is anything that is 85 dB (sound pressure level - SPL) or higher." The organization further explains that "[o]f the roughly 40 million Americans suffering from hearing loss, 10 million can be attributed to noise-induced hearing loss (NIHL). NIHL can be caused by a one-time exposure to loud sound as well as by repeated exposure to sounds at various loudness levels over an extended period of time."

19.     Exposure to a time weighted energy average decibel level by itself can cause harm.  One knowledgeable organization, the National Institute for Occupational Safety and Health (NIOSH), has offered the view that exposure to sound averaging at 85 decibels for more than 8 hours a day by itself presents a risk of hearing loss. According to NIOSH, each three decibel volume increase reduces the safe exposure time by half, which reflects the logarithmic nature of the decibel scale.  For example, if a Headset set on the higher volume level produces decibel levels of 91 decibels, noise induced hearing loss statistically develops if the Headset is used for more than two hours a day.  At 94 decibels, noise induced hearing loss statistically develops if the Headset is used for more than one hour a day.  At 102 decibels, irreversible damage statistically develops if the Headset is used for more than 7 ½ minutes per day.

20.     Plantronics' Headsets have volume controls which produce sounds exceeding 85 decibels, with sound often in excess of 100 decibels.  According to the standards promulgated by such organizations as NIOSH and Dangerous Decibels, a

6

consumer statistically develops NIHL if exposed to such sounds for less than 15 minutes a day. Further, the consumer cannot determine, without resorting to scientific testing, the decibel level of the sound being emitted from the Headset.

21.    The packaging on the Headsets advises that the Headsets can be used for "extended talk time." The various models indicate talk time of 3 hours, 6 hours, 8 hours, 9 hours, 10 hours, and even 15 hours. However, the representations as to permissible talk times are false, as a consumer cannot safely use the Headsets for the talk times represented.    Plaintiff and the Class members relied upon these representations made by Defendant in determining whether to purchase the Headsets at the high price charged for the devices.

22.    Millions of consumers have had their hearing put at risk by Plantronics' conduct.    Plaintiff and the class members detrimentally relied upon the affirmative misrepresentations, omissions and concealments made by Defendant regarding the permissible use of the product.    Plaintiff and the class members further relied upon Defendant's skill and judgment to furnish suitable goods which would not cause harm to the consumer, and to warn the consumer of any information known by Defendant, or which should reasonably have been known by Defendant, relating to the safe operation of the product.

23.    Defendant sold the Headsets with a booklet setting forth "important safety and operational information" relating to use of the Headsets.    However, Defendant omitted and concealed from consumers any safety information pertaining to the Headsets' propensity for causing noise induced hearing loss.    Defendant also omitted and concealed from the consuming public information advising that the Headsets

7

produced noise at decibel levels exceeding 85 db, and even exceeding 100 db.

24.     The same misrepresentations, omissions and concealments were made in the product packaging to each consumer who purchased the product. Plaintiff and the class members relied upon the misrepresentations, omissions and concealments in purchasing the Headsets.

25.     Because the Headset transmits sound to only one ear, extraneous sound from the environment is simultaneously being heard by the Headset user from the other ear. Such ambient sound makes it more difficult for the Headset user to isolate and hear the sound being transmitted over the Headset. The Headset user is thus required to maximize the volume of the Headset in order to overcome the extraneous noise being heard in the other ear.

26.     Plaintiff purchased and used a Headset manufactured and distributed by Defendants. Plaintiff was not aware that the Headset was emitting sounds in excess of safe decibel levels which thereby required the time the product could safely be used to be greatly minimized. Plaintiff would not have purchased the Headset, including at the price charged, if Defendant had disclosed the truth.

27.     The design, manufacture, distribution and sale by Defendant of the Headsets without adequate warning labels that the Headsets produce decibel levels harmful to the human ear constitutes deceptive and unlawful business practices. As a result of Defendant's conduct, numerous consumers have paid for an unsafe product which they falsely were led to believe could be safely used for extended periods of time.

28.     Despite the information provided by Plantronics in its "safety booklet," Plantronics fails to divulge the decibel output of the device and the potential for noise

induced hearing loss if the Headset is used at a loud setting for more than a safe number of hours per day. The exclusion of such information from the safety information in the booklet wrongly implies that the Headset is safe at its maximum volume for the hours of talk time permitted by the Headset. The safety book falsely represents to consumers that the "important" information provided in the booklet permits the "safe and efficient operation" of the Headset. This representation is false, as important safety information has been excluded from the booklet. Plaintiff and the Class members relied upon such misrepresentations, omissions and concealments to their detriment.

29. Plantronics affirmatively represented that the Headsets are warranted to be free from "defects in materials and workmanship." This representation was and is false. The Headsets are defective and cannot safely be used for their intended purpose. The materials and workmanship of the product cause the product to produce unsafe decibel levels under normal consumer usage.

30. Plaintiff is informed and believes that the Headsets can be used to listen to music or television downloaded onto mobile phones. Because of these new uses for the mobile phone, the time over which the Headsets are used is increased significantly. The decibel levels of the music or television also exceeds 85 decibel levels, and may even reach levels capable of producing hearing loss from a single exposure to the load sound emitted.

31. Other manufacturers of music listening devices, such as Apple with respect to its iPod, include a warning so that consumers are aware of the potential for hearing damage. For example, the iPod is sold with the following warning:

Avoid Hearing Damage

9

> Warning: Permanent hearing loss may occur if earphones or headphones are used at high volume. You can adapt over time to a higher volume of sound, which may sound normal but can be damaging to your hearing. Set your iPod's volume to a safe level before that happens. If you experience ringing in your ears, reduce the volume or discontinue use of your iPod.

The Headsets manufactured, distributed and sold by Defendant, which contain no such warnings, thus fail to follow industry standards for music listening devices.

32. Plaintiff seeks, on behalf of himself and the Class as defined below, injunctive relief, product repair, restitution, damages, and all other appropriate relief. Defendant misrepresented the time period over which consumers could safely use the Headsets. In marketing and advertising the Headsets, Defendant also concealed and omitted material information as to the capacity for the Headsets to cause hearing loss. Plaintiff and the Class members thus: (1) cannot safely use the Headsets for the length of time for which the Headsets were advertised as usable; or (2) must turn the volume of the Headsets so low as to render the Headsets unusable in most environments, thereby drastically limiting and/or eliminating the usability of the product. Had Plaintiff and the Class they seek to represent known the true facts, they would not have purchased them or would have purchased them only at a lesser price. Plaintiff, and the Class Members, thus lost money as a result of the misrepresentations, omissions and concealments by Defendant. In doing the acts herein alleged and purposefully risking the health and safety of millions of consumers in order to increase sales and profits, Defendant, and each of them, acted with oppression, or malice, and Plaintiff and the

Class members are entitled to punitive damages.

## CLASS ACTION ALLEGATIONS

33.    Plaintiff brings this action both on behalf of himself, and as a class action on behalf of the following Class (the "Class"):

> All persons who, within the four years prior to the filing of this
> Complaint ("Class Period"), purchased a Bluetooth Headset
> device manufactured by Defendant, and who (1) resided in
> Virginia during the Class Period; (2) purchased the Headset
> while located in Virginia; or (3) purchased the Headset from
> a source in Virginia.

Said definition may be further defined by additional pleadings, evidentiary hearings, a class certification hearing, and order of this Court.

34.    Although Plaintiff does not know the exact number of the members of the Class, since such information is within the exclusive control of Defendant, Plaintiff believes that due to the nature of the commerce involved, the number of members of the Class are sufficiently numerous, most likely thousands of purchasers, that joinder of all class member is impracticable.

35.    The claim of Plaintiff is typical of the Class claims. Plaintiff purchased one or more Headsets manufactured by Plantronics within the Class Period. The Headsets were defectively designed and unfairly marketed by Plantronics. All Class members purchased the Product within the Class Period.

11

36.     Numerous questions of law and fact are common to the Class, which predominate over any individual issues. Questions of law and fact which are common to the Class include, without limitation:

a.    Whether Defendant represented to consumers that the Headsets had a characteristic, use, benefit or quality that rendered the Headsets safe for listening to sounds at a loud volume level and/or over a period of time;

b.    Whether the Headsets in fact have a characteristic, use, benefit or quality that renders it unsafe for listening to sounds at a loud volume level and/or over a period of time;

c.    Whether the Headsets were defectively designed in that they can cause exposure to dangerous levels of sound;

d.    Whether Defendant failed to accurately and sufficiently warn of the defective characteristics of the Headsets:

e.    Whether Defendant knowingly concealed the defective design of the Headsets;

f.    Whether Defendant truthfully advertised that the Headsets could safely be used for extended periods of time;

g.    Whether Defendant violated express and implied warranty statutes;

h.    Whether Defendant were unjustly enriched;

i.    The nature and extent of damages and other remedies to which the conduct of Defendant entitle the Class members.

12

37.    Defendant engaged in a common course of conduct involving similar or identical defective designs, statutory violations, and defective products. Individual questions, if any, pale by comparison to the numerous questions that dominate this litigation. The claims at issue herein do not seek damages for physical injury which has already occurred to the Class members, and thus individualized determination as to causation related to bodily injury already suffered will not be required. The injuries sustained by the Class members arise from a common nucleus of operative facts involving the Defendant's misconduct.

38.    Plaintiff will fairly and adequately represent the interests of the Class in that Plaintiff, who are residents of the Commonwealth of Virginia, are typical purchasers of the Headsets. Plaintiff's interests do not conflict with the interests of the other Class members that they seek to represent. Furthermore, Plaintiff has retained competent counsel experienced in class action litigation. Plaintiff's counsel will fairly and adequately protect the interests of the Class.

39.    This class action is superior to the alternatives, if any, for the fair and efficient adjudication of this controversy. The Class is readily definable. A class action will enable claims to be handled in an orderly and expeditious manner. A class action will save time and expense and will ensure uniformity of decisions.

40.    The relief sought per individual member of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendant. Furthermore, it would be virtually impossible for the Class members to seek redress on an individual basis. Even if the Class members themselves could afford such individual litigation, the court system could not.

13

41.    The Class members have been damaged by Defendant's misconduct in that each member purchased a defectively designed Headset. The Class members would not have purchased the Headsets and/or paid as much had they known the truth about the product and the limitations on its use.

42.    Individual litigation of the legal and factual issues raised by the conduct of Defendant would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the similar nature of the Class members' claims and the law applicable thereto, the Court and the parties will easily be able to manage a class action.

43.    Prosecution of separate actions by individual Class members would create the risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for the Defendant.

44.    Injunctive relief is appropriate as to the Class as a whole because Defendant have acted or refused to act on grounds generally applicable to the Class.

## COMMON OR GENERAL INTEREST ALLEGATIONS

45.    In addition to asserting class action claims in this action, Plaintiff assert claims on behalf of the common or general interest and sue for the benefit of all because the parties are numerous, and it is impracticable to bring them all before the court. Plaintiff seeks to require Defendant to disgorge and restore all monies wrongfully obtained through their false advertising and unfair business practices. A common or general interest action is necessary and appropriate because Defendant have engaged

14

and continue to engage in the wrongful acts and false advertising described herein as a general business practice.

### FIRST CAUSE OF ACTION
**Violation of the Virginia Consumer Protection Act,**
**§ 59.1-196, of the Code of Virginia 1950, as Amended, et seq.**

46.    Plaintiff incorporates by reference all the above allegations as is fully set forth herein.

47.    This Count is brought pursuant to the Virginia Consumer Protection Act ("VCPA"), Section 59.1-196, *et seq.*, Code of Virginia, 1950, as amended, which was enacted to prohibit and protect Virginia citizens from deceptive and unfair conduct.

48.    VCPA "shall be applied as remedial legislation" to "promote fair and ethical standards of dealings" with the "consuming public." § 59.1-197, of the Code of Virginia, 1950 as Amended, *et seq.*    Pursuant to VCPA, "fraudulent acts or practices...in connection with a consumer transaction are hereby unlawful." § 59.1-200 of the Code of Virginia, 1950 as Amended, *et seq.*  Anyone aggrieved by a violation of the Act may bring an action for injunctive relief, actual damages, plus attorney's fees and court costs. § 59.1-204, of the Code of Virginia, 1950 as Amended, *et seq.*

49.    At all times material hereto, Plaintiff and all members of the Plaintiff Class were *consumers* within the meaning of § 59.1-198, of the Code of Virginia, 1950 as Amended, *et seq*, and are entitled to relief under VCPA in accordance with § 59.1-204, of the Code of Virginia, 1950 as Amended, *et seq.*

50.    Plaintiff and members of the Class are individuals who have purchased goods (i.e., the Headsets) for personal, family or household purposes.

15

51.   At all times material hereto, PLANTRONICS conducted consumer transactions within the meaning of § 59.1-198, of the Code of Virginia, 1950 as Amended, *et seq*.

52.   Defendant has misrepresented that the Headsets have characteristics, uses, benefits, or qualities, in violation of § 59.1-200, of the Code of Virginia, 1950 as Amended, *et seq*.  Defendant also represented that the Headsets had a particular standard or quality that they do not have in violation of  § 59.1-200, of the Code of Virginia, 1950 as Amended, *et seq*.

53.   Plaintiff and the members of the Class have each been directly and proximately injured by the conduct of Defendant, and such injury includes payment for the Headsets.

54.   In accordance with § 59.1-204, of the Code of Virginia, 1950 as Amended, *et seq.,* Plaintiff on behalf of the other members of the class a recovery of actual damages, plus attorney's fees and court costs.

55.   Plaintiff submits that the Court should enjoin the Defendant from any further sales, marketing of the standard, characteristics, uses, benefits, and/or qualities of the Headsets. The Court should enjoin Defendant from any further sales, marketing or advertisement of the Headsets without a warning as to the potential for noise induced hearing loss. The Court should further enjoin Defendant from any further sales of the Headsets until Defendant redesigns the Headsets in a manner which ensures that the volume emitted by the Headsets does not exceed the decibel level determined to be safe for 8-hour exposure for virtually all persons (which will be no higher than 85

16

decibels) or, in the alternative, which provides the consumer with the ability to determine the decibel level of the sound being emitted by the Headset.

56.    Plaintiff engaged counsel to prosecute this action and is entitled to recover costs and reasonable attorney's fees according to proof at trial.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

57.    Plaintiff incorporates by reference all the above allegations as is fully set forth herein.

58.    Defendant has benefited and been unjustly enriched by the above-alleged conduct. Defendant knowingly sold the Headsets to Plaintiff and members of the Class based upon misrepresentations as to uses which the product did not possess and concealment and omission of information which should have been disseminated.

59.    Defendant has knowledge of this benefit, and have voluntarily accepted and retained this benefit.

60.    The circumstances as described herein are such that it would be inequitable for Defendant to retain these ill-gotten benefits without paying the value thereof to Plaintiff and the Class members.

61.    Plaintiff and the Class are entitled to the amount of Defendant's ill-gotten gains, including interest, resulting from its unlawful, unjust and inequitable conduct as described above.

## THIRD CAUSE OF ACTION
### Breach of Express Warranty
### (§ 8.2-313 of the Code of Virginia 1950,

17

as Amended, et seq.)

62.    Plaintiff incorporates by reference all the above allegations as is fully set forth herein.

63.    This claim is asserted on behalf of a sub-class of all persons whose express warranty is still in effect, i.e., Class members who purchased a headset within one year of the filing of this Complaint.

64.    Defendant expressly warranted that their products were free of defects in materials and workmanship.

65.    Defendant's Headsets are defective in that they expose Plaintiff and the Class members to noise induced hearing loss.

66.    Plaintiff and the Class members have incurred damages as described herein as a direct and proximate result of the defective design on the Headsets and Defendant's violation of the provisions of § 8.2-313 of the Code of Virginia, 1950, as amended, et seq., .

## FOURTH CAUSE OF ACTION
### Breach of Implied Warranty
(§ 8.2-314 of the Code of Virginia 1950,
as Amended, et seq.)

67.    Plaintiff incorporates by reference all the above allegations as is fully set forth herein.

68.    This claim is asserted on behalf of a subclass of all purchasers of the Headsets who purchased it within one year of the filing of this Complaint.

69.    The Headsets were sold with the implied warranty of merchantability in that they would pass without objection in the trade, are fit for the ordinary purpose for which they are used, are adequately contained, packaged, and labeled, and conform to

18

the promises or affirmations of fact made on the container and label. The Headsets do not meet any of the foregoing criteria.

70.    The Headsets were sold with the implied warranty of fitness in that Defendant had reason to know of the particular purpose for which the Headsets were required (i.e., to listen safely to communications, music and television via mobile phones) and Plaintiff and the Class members relied upon Defendant's skill and judgment to furnish suitable goods. The Headsets are not suitable for the purpose for which they are required, as Plaintiff and the Class members have no ability to determine the decibel levels being emitted from the devices and the corresponding safe time during which Plaintiff and the Class members may listen to the sound being emitted at such levels.

71.    The defect in the Headsets existed prior to the delivery of the Headsets to Plaintiff and the Class members.

72.    Plaintiff and the class members have incurred damages as described herein as a direct and proximate result of the defective design on the Headsets and Defendant's breach of the implied warranties.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of themselves and as representative of all other persons similarly situated, pray for judgment against the Defendant, as follows:

1.    An Order certifying the Class and any appropriate sub-class thereof, and appointing Plaintiff, RALPH COOK and his counsel, to represent the Class;

2.    An award of general damages according to proof;

19

3.    An award of special damages according to proof;

4.    An award of punitive damages in an amount sufficient to deter and make an example of Defendant;

5.    An award of restitution in an amount according to proof;

6.    A permanent injunction enjoining Defendant, and their agents, servants, employees and all persons acting under or in concert with them, to cease and desist from the following acts:

    (i)    Selling, marketing or advertising the Headsets without a detailed warning advising the consumer as to the potential for noise induced hearing loss and the known risk of harm associated with exposure, even for brief intervals, to sound at high decibel levels;

    (ii)    Selling, marketing or advertising the Headsets without a mechanism by which the user can readily and easily determine the decibel levels being emitted by the Headsets and thereby be made aware of the safe time, limits (if any) for use of the Headsets at the higher volume settings;

    (iii)    Any other conduct which the Court determines warranted so as to prevent the commission of unfair competition by Defendant.

7.    For reasonable attorneys' fees;

8.    For costs incurred herein,

9.    For prejudgment interest;

10.    For all general, special, and equitable relief to which the

Plaintiff and the members of the Class are entitled by law.

This the ___10___ day of January, 2007.

Respectfully submitted,

By:    _____

Joseph A. Miller
Virginia Bar Number 28382
Accidental Injury Advocates, LTD
Stoney Point Center
700 Newton Rd., Ste. 112
Norfolk, VA  23502
Telephone: (757) 455-8889
Facsimile:  (757) 455-6757

And

Michael J. Fuller, Jr.
McHugh Fuller Law Group, PLLC
97 Elias Whiddon Road
Hattiesburg, MS 39402
Telephone: 601-261-2220
Facsimile: 601-261-2481

Attorney for Plaintiffs

21