**EXHIBIT L**

1   Stephen M. Garcia, State Bar No. 123338
    sgarcia@lawgarcia.com
2   David M. Medby, State Bar No. 227401
    dmedby@lawgarcia.com
3   THE GARCIA LAW FIRM
    One World Trade Center, Suite 1950
4   Long Beach, California 90831
    Telephone: (562) 216-5270
5   Facsimile: (562) 216-5271

6   Bruce L. Simon, State Bar No. 96241
    bsimon@psswplaw.com
7   Esther L. Klisura, State Bar No. 221171
    eklisura@psswplaw.com
8   PEARSON, SIMON, SOTER, WARSHAW & PENNY LLP
    44 Montgomery Street, Suite 1200.
9   San Francisco, California 94104
    Telephone: (415) 433-9000
10  Facsimile: (415) 433-9008

11  *Co-Lead Counsel for Plaintiffs and the Putative Class*
    *[Other Counsel for Plaintiffs listed on signature page]*
12

13              **UNITED STATES DISTRICT COURT**

14             **CENTRAL DISTRICT OF CALIFORNIA**

15                    **(WESTERN DIVISION)**

16  In re:                        ) CASE NO. 07-ML-01822 DSF
17                                ) MDL No. 1822
    Bluetooth Headset Products Liability )
18  Litigation                    ) **CONSOLIDATED CLASS**
                                  ) **ACTION COMPLAINT**
19                                )
20                                ) **DEMAND FOR JURY TRIAL**
                                  )
21                                )
                                  )
22                                )
                                  )
23                                )
                                  )
24  _____ )
25
26
27
28

                                1

Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.doc

RECEIVED

JUL 09 2007

Eldridge, Cooper
Steichen & Leach

1    Plaintiffs, Michael Jones, Amy Karle, Aleksandra Spevacek, Betty Dumas,

2   Betsee Finlee, and Lori Raines, ("Plaintiffs"), on their own behalf and as

3   representatives of a putative class of similarly situated parties, complain and allege on

4   information and belief as follows:

5                          **INTRODUCTION**

6       1.      This action arises from the marketing, manufacture, and distribution of

7   devices commonly known as "Bluetooth headsets" (hereinafter referred to as

8   "Bluetooth Headsets" or the "Headsets"), which permit the use of a mobile phone

9   without the necessity of holding the phone next to the face and without the necessity

10  of wires connecting the phone to the Headset.

11      2.      Bluetooth technology is a short-range wireless radio technology that

12  allows electronic devices to connect to another.  The term "Bluetooth" refers to a

13  standardized wireless specification that was established in September 1998 by a trade

14  association and has since been adopted by many electronics manufacturers in

15  different industries.  The first Bluetooth enabled mobile phone hit the market in

16  2000.  By 2001, each of the Defendants had Bluetooth enabled products on the

17  market.  Since then, use of Bluetooth Headsets has become increasingly popular

18  among consumers because of the ease of use and convenience associated with the

19  technology.  Over 100 million Bluetooth Headsets have been sold since they first hit

20  the market.

21      3.      Each Headset is sold with affirmative representations that it may be used

22  for extensive periods of time, however the product is sold without any warning as to

23  its propensity to cause noise induced hearing loss, a condition that has no cure or

24  treatment and which may result from normal use of the Headsets over time.

25      4.      These Headsets produce sounds exceeding the identified danger zone of

26  85 decibels, with sound often peaking in excess of 100 decibels.  Exposure to sounds

27  emitted from the Headsets at these decibel levels, may cause serious and permanent

28  hearing loss over an extended period as herein below alleged.  Thus, by design, the

                                    2

Consolidated Class Action Complaint
M:\Bluetooth. In Re r06-063]\Pleadings\Complaint.Consolidated.doc

1   Defendants have put consumers at risk of suffering serious hearing loss when the

2   Headsets are put to their normal and intended use.

3       5.    Millions of consumers have had their hearing put at risk by the

4   Defendants' Headsets. Consumers have detrimentally relied upon the uniform

5   affirmative misrepresentations, omissions, and concealments made by Defendants

6   regarding the permissible use of their products. Consumers have further relied upon

7   the Defendants' skill and judgment to furnish suitable goods, which would not cause

8   harm to the consumer, and to warn the consumer of any information known by

9   Defendants, or which should reasonably have been known by Defendants, relating to

10   the safe operation of their products.

11

12                      **JURISDICTION AND VENUE**

13

14       6.    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332(d)

15   This is a putative class action involving more than 100 class members, at least one

16   member of the putative class is a citizen of a state different from one defendant, and

17   the aggregate amount in controversy exceeds $5 million, exclusive of interest and

18   costs.

19       7.    Each defendant has conducted business in this District and is subject to

20   personal jurisdiction. Accordingly, venue in this District is proper under 28 U.S.C. §

21   1391.

22                            **PARTIES**

23

24   A.    **Plaintiffs**

25

26       8.    Plaintiff Lori Raines is a resident of the County of Los Angeles,

27   California who purchased a Bluetooth headset from Defendant Plantronics during the

28   relevant time period. Plaintiff Raines brings this action on behalf of putative Sub-

     Class A, defined below.

                                    3

---

Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.doc

9.    Plaintiff Betsee Finlee is a resident of Los Angeles County, California who purchased a Jabra-brand Bluetooth headset during the relevant time period. Plaintiff Finlee brings this action on behalf of putative Sub-Class B, defined below.

10.    Plaintiff Michael Jones is a resident of Los Angeles County, California who purchased a Bluetooth headset from Defendant Motorola during the relevant time period. Plaintiff Jones brings this action on behalf of putative Sub-Class C, defined below.

11.    Plaintiff Amy Karle is a resident of Los Angeles County, California who purchased a Bluetooth headset from Defendant Motorola during the relevant time period. Plaintiff Karle brings this action on behalf of putative Sub-Class C, defined below.

12.    Plaintiff Evan Nass is a resident of Cook County, Illinois who purchased a Bluetooth headset from Defendant Motorola during the relevant time period. Plaintiff Nass brings this action on behalf of putative Sub-Class D, defined below.

13.    Plaintiff Aleksandra Spevacek is a resident of Cook County, Illinois who purchased a Bluetooth headset from Defendant Motorola during the relevant time period. Plaintiff Spevacek brings this action on behalf of putative Sub-Class D, defined below.

14.    Plaintiff Betty Dumas is a resident of the Eastern District of Texas who purchased a Bluetooth headset from Defendant Motorola during the relevant time period. Plaintiff Dumas brings this action on behalf of putative Sub-Class D, defined below.

15.    Plaintiff Kimberly Ryan is a resident of Grant County, Kentucky who purchased a Bluetooth headset from Defendant Motorola during the relevant time period. Plaintiff Ryan brings this action on behalf of putative Sub-Class D, defined below.

**B.    Defendants**

16.    Defendant Plantronics, Inc. is a Delaware Corporation with its principal

4

1    place of business in California. Plantronics, Inc. maintains its corporate headquarters
2    and principal executive offices in Santa Cruz, California. Plantronics employs
3    engineering, marketing, information technology, finance, operations, quality
4    assistance, and technical assistance personnel in its Santa Cruz headquarters.
5    Plantronics is authorized to do business in California, has sufficient minimum
6    contacts with California, and intentionally avails itself of the markets in California
7    through the promotion, marketing and sale of its products in California, to render the
8    exercise of jurisdiction by this Court permissible under traditional notions of fair play
9    and substantial justice.

10        17.    Defendant GN Netcom, Inc. manufacturers, distributes, and markets
11    Bluetooth Headsets sold under the "Jabra" brand. GN Netcom, Inc. is the successor
12    in interest to Jabra Corporation, a San Diego, California based company that
13    was purchased by GN Netcom's foreign parent company in 2000. GN Netcom, Inc.
14    maintained its corporate headquarters and operations in San Diego, including
15    engineering and marketing functions, up until at least May, 2004. Thereafter, GN
16    Netcom moved its operations to Illinois, then again to its current offices in New
17    Hampshire. As used herein, "Jabra" refers to GN Netcom, Inc. and all predecessor
18    entities.

19        18.    Defendant Motorola, Inc. is a Delaware Corporation with its principal
20    place of business in Schaumburg, Illinois.

21    **FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

22        19.    This action arises from Defendants' marketing, manufacture, and
23    distribution of devices known as "Bluetooth Headsets" which permit wearers to
24    utilize a mobile phone without holding the phone next to the face and without the
25    necessity of wires connecting the phone to the Headset.

26        20.    On the respective packaging of these Bluetooth Headsets, Defendants
27    have made false representations, omissions and concealments to consumers in order
28    to induce them to purchase the product. Each Headset is sold with affirmative

5

Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.doc

1    representations that it can be used for extensive time periods, and the packaging lacks
2    any warnings regarding noise induced hearing loss, a condition which has no cure or
3    treatment, which may result from use of the Headsets over time.

4           21.    Use of Bluetooth Headsets is becoming increasingly popular among the
5    consuming public because of the ease and convenience associated with the
6    technology. According to the Insight Research Corporation ("IRC"), "[n]early 65
7    percent of Americans, or 195 million people, are expected to be mobile phone
8    subscribers by the close of 2005." *See* The Insight Research Corporation, *Fixed*
9    *Mobile Convergence: Single Phone Solutions for Wireless, Wireline, and VoIP*
10   *Convergence 2005-2011* (September 2005), available at <http://www.insight-
11   corp.com/reports/fixmobcon.asp>. IRC has also reported that "[a]s users become
12   more used to the convenience of cellular, long distance and local usage is shifting
13   from wireline to cellular. The average wireline residential toll minutes of use
14   ("MOUs") have been dropping at a compounded rate of 15 percent since 2000, while
15   wireless interstate MOUs per user grew at a compounded rate of nearly 40 percent
16   during the same period. According to one FCC study, on the wireless side, the
17   percentage of interstate residential minutes has increased from 16 percent to 26
18   percent of all wireless minutes." *Id.*

19          22.    As more people switch from using landlines to using mobile phones in
20   order to accommodate their telecommunication needs, more consumers are spending
21   hours per day on the mobile phone.

22          23.    As explained by the National Institute on Deafness and Other
23   Communication Disorders ("NIDOCD"), hearing depends on a series of events that
24   change sound waves into electrical signals that the auditory nerve carries to the brain.
25   Sound waves enter the outer ear and travel through the ear canal, which leads to the
26   eardrum. The eardrum vibrates from incoming sound and then sends the vibrations
27   to three bones in the middle ear, the malleus, incus and stapes. These bones then
28   amplify the sound and send the vibrations to the inner ear, or cochlea. The vibrations

6

---

Consolidated Class Action Complaint

cause fluid inside the cochlea to ripple and travel in waves along the basilar membrane. Hair cells sit atop the basilar membrane. The motion causes bristles, or stereocillia, atop the hair cells to bump against another overlying membrane. As the bristles move, pore-like channels on their surface open, allowing chemicals that generate sound to rush in. The auditory nerve carries these signals to the brain, which translates it into sound recognizable by humans. *See* NIDOCD, *Noise-Induced Hearing Loss* (May 2007), available at <www.nidcd.nih.gov/health/hearing/noise.asp.>

24. Noise induced hearing loss is the slow loss of hearing caused by unsafe levels of noise. Hearing loss happens when unsafe levels of noise hurt the hair cells in the inner ear. Noise induced hearing loss is nerve deafness which lasts forever. There is no treatment, no medicine, no surgery, and no device which can correct hearing once damaged by noise.

25. Plaintiffs are informed and believe that noise induced hearing loss can happen gradually over time and does not cause pain. Consequently, many people are unaware that noise induced hearing loss is occurring until it is too late. Because noise induced hearing loss is an insidiously developing hearing impairment, damage occurs prior to the point at which it is perceived.

26. Noise induced hearing loss can also result because an individual has become accustomed to a particular sound level. As the individual gradually suffers hearing loss, in an effort to compensate for the decrease in ability to hear, the individual unwittingly increases the volume of a device in order to hear the sound produced and thereby compounds the injury.

27. Dangerous Decibels, a public health partnership for the prevention of noise induced hearing loss, advises the public that "[a] dangerous sound is anything that is 85 dB (sound pressure level - SPL) or higher." *See* Dangerous Decibels, *Information Center: Hearing Loss* (June 22, 2007), available at www.dangerousdecibels.org/hearingloss.cfm. The organization further explains that:

7

[o]f the roughly 40 million Americans suffering from hearing loss, 10 million can be attributed to noise-induced hearing loss (NIHL). NIHL can be caused by a one-time exposure to loud sound as well as by repeated exposure to sounds at various loudness levels over an extended period of time. *Id.*

28.    Exposure to a time weighted average decibel level by itself can cause harm. Another reputable organization, the National Institute for Occupational Safety and Health (NIOSH), has offered the view that exposure to sound averaging at 85 decibels for more than 8 hours is hazardous.    *See* NIOSH, *Criteria for a Recommended Standard: Occupational Noise Exposure* (June 1998), available at www.dangerousdecibels.org/hearingloss.cfm.    According to NIOSH, each three decibel volume increase reduces the safe exposure time by half, which reflects the logarithmic nature of the decibel scale. For example, if a headset set on the higher volume level produces decibel levels of 91 decibels, noise induced hearing loss statistically develops if the headset is used for more than two hours a day. At 94 decibels, noise induced hearing loss statistically develops if the headset is used for more than one hour a day. At 103 decibels, irreversible damage statistically develops if the headset is used for more than 7 ½ minutes per day.

29.    Defendants' Bluetooth Headsets produce sound directly into the ear canal exceeding 85 decibels, with sound often peaking in excess of 100 decibels. For example, in a test recently performed by the American Speech-Hearing-Language Association ("ASHLA"), Motorola's H700 Headset produced decibel levels of up to 106 decibels. *See* ASHLA, *Popular Technology Unpopular with Ear's Hair Cells* (February 28, 2006), available at www.asha.org/about/news/2006/techdamage.htm.

30.    According to the standards promulgated by such organizations as NIOSH and Dangerous Decibels, a consumer statistically develops NIHL if exposed to sounds over 100 decibels for between only three to four minutes a day. However, Defendants have each marketed their Headsets as having talk times of multiple hours.

31.    Bluetooth headsets have no mechanism that quantifies the noise output levels or signals when the decibel levels exceed safe ranges. Consequently, there is

8

1  no way for a consumer who wants to limit the noise output to a certain decibel level

2  to do so reliably. That is, because of the products' design, a consumer cannot

3  determine, without resorting to scientific testing, the decibel level of the sound being

4  emitted from the Headset.

5      32.   Because the Headsets transmit sound to only one ear, extraneous sound

6  from the environment is simultaneously being heard by the Headset user from the

7  other ear. Such ambient sound makes it difficult for the Headset user to isolate and

8  hear the sound being transmitted over the Headset. The one ear design of the Headset

9  thus requires the user to maximize the volume of the Headset in order to overcome

10  the extraneous noise being heard in the other ear.

11      33.   The in-ear or "ear bud" style Bluetooth Headsets that sit in the ear, as

12  opposed to on the ear, are particularly dangerous to consumers because of their close

13  proximity to the ear canal. Each of the defendants produces in-ear Bluetooth

14  Headsets. Examples of these in-ear Bluetooth Headsets include Plantronic's

15  Discovery 610, Jabra's BT250V, and Motorola's H9 Miniblue.

16      34.   The Headsets can be used to listen to music or television downloaded

17  onto mobile phones, including certain mobile phones manufactured and sold by

18  Motorola. Because of these new uses for the mobile phone, the time over which the

19  Headsets are used is increased significantly.

20      35.   Other manufacturers of music listening devices, such as Apple with

21  respect to its iPod, include a warning so that consumers are aware of the potential for

22  hearing damage. For example, the iPod is sold with the following warning:

23

24      Avoid Hearing Damage Warning: Permanent hearing loss may occur if
       earphones or headphones are used at high volume. You can adapt over
25      time to a higher volume of sound, which may sound normal but can be
       damaging to your hearing. Set your iPod's volume to a safe level before
26      that happens. If you experience ringing in your ears, reduce the volume
       or discontinue use of your iPod.
27

28

9

Consolidated Class Action Complaint
M:\Bluetooth. In Re \06-063\\Pleadines\Complaint.Consolidated.doc

The Headsets manufactured, distributed and sold by Defendants contain no such warnings regarding the actual and avoidable risks of hearing loss associated with the use of the Headsets, and thus fail to follow industry standards for music listening devices.

36. Plaintiffs each have purchased and used Headsets manufactured and distributed by one of the Defendants. None of the Plaintiffs were aware that the Headsets were emitting sounds in excess of safe decibel levels.

37. Defendants' misrepresentations about the time that headsets can be used, and the absence of warnings of the risk of noise induced hearing loss, substantially influenced Plaintiffs' decision to purchase Bluetooth Headsets from Defendants.

38. The design, manufacture, distribution and sale by Defendants of the Headsets without adequate warning labels that the Headsets produce decibel levels harmful to the human ear constitutes deceptive and unlawful business practices. As a result of Defendants' conduct, numerous consumers have paid for an unsafe or unusable product which they falsely were led to believe could be safely used for extended periods of time.

39. Millions of consumers have had their hearing put at risk by Defendants' conduct. Plaintiffs and the Class members detrimentally relied upon the affirmative misrepresentations, omissions and concealments made by Defendants regarding the permissible use of the product. Plaintiffs and the Class members further relied upon Defendants' skill and judgment to furnish suitable goods which would not cause harm to the consumer, and to warn the consumer of any information known by Defendants, or which should reasonably have been known by Defendants, relating to the safe operation of the product.

40. Plaintiffs seek damages, on behalf of themselves and the Classes as defined below, injunctive relief, product repair, restitution, disgorgement, and all other appropriate relief. Defendants misrepresented the time period over which consumers could safely use the Headsets. In marketing and advertising the Headsets,

10

Consolidated Class Action Complaint
M:\Bluetooth. In Re (06-063)\Pleadings\Complaint.Consolidated.doc

1    Defendants concealed and omitted material information as to the capacity for the
2    headsets to cause hearing loss. Plaintiffs and the members of the classes thus: (1)
3    cannot safely use the Headsets for the length of time for which the Headsets were
4    advertised as usable; or (2) must turn the volume of the Headsets so low as to render
5    the headsets unusable in most environments, thereby drastically limiting and/or
6    eliminating the usability of the product.

7         41.    Since learning of the problems with the product as described herein,
8    each of the Plaintiffs have each stopped using the Headsets completely, or have
9    limited their use of the Headsets. Plaintiffs, and the Class Members, have thus lost
10   money as a result of the wrongful acts of Defendants.

11                    **PLANTRONICS' WRONGFUL CONDUCT**

12        42.    Plantronics has manufactured and distributed many different models of
13   Bluetooth Headsets including Discovery 655, Discovery 645, Discovery 640,
14   Discovery 640E, Voyager 510, Explorer 350, Explorer 340, and Explorer 330
15   (hereinafter "Plantronics Headsets"). On the packaging of the Plantronics Headsets,
16   Plantronics has made false representations, omissions and concealments to
17   purchasing consumers in order to induce the consumers to purchase the product.
18   *Each Plantronics Headset is sold with affirmative representations that it can be used*
19   *for extensive time periods, yet the packaging lacks any warnings regarding the noise*
20   *induced hearing loss, a condition which has no cure or treatment, which can be*
21   *expected to result from use of the Plantronics Headsets in most environments over*
22   *that period of time.*

23        43.    The packaging on the Plantronics Headsets advises that the Headsets can
24   be used for "extended talk time." The various models indicate talk time of 3 hours, 6
25   *hours, 8 hours, 9 hours, 10 hours, and even 15 hours.* However, the representations
26   as to permissible talk times are false, as a consumer cannot safely use the Plantronics
27   Headsets for the talk times represented. Plaintiffs and the Class members relied upon
28   these representations made by Defendants in *determining whether to purchase the*

11

1 | Plantronics Headsets at the high price charged for the devices.

2 |     44.    Plantronics sold the Plantronics Headsets with a booklet setting forth
3 | "important safety and operational information" relating to use of the Plantronics
4 | Headsets. However, Plantronics omitted and concealed from consumers any safety
5 | information pertaining to the Headsets' propensity for causing noise induced hearing
6 | loss. Defendants also omitted and concealed from the consuming public information
7 | advising that the Headsets produced noise at decibel levels exceeding 85 db, and even
8 | exceeding 100 db.

9 |     45.    Despite the information provided by Plantronics in its "safety booklet,"
10 | Plantronics fails to divulge the decibel output of the device and the potential for noise
11 | induced hearing loss if the Headset is used at a loud setting for more than a safe
12 | number of hours per day. The exclusion of such information from the safety
13 | information in the booklet wrongly implies that the Headset is safe at its maximum
14 | volume for the hours of talk time permitted by the Headset. The safety book falsely
15 | represents to consumers that the "important" information provided in the booklet
16 | permits the "safe and efficient operation" of the Headset. This representation is false,
17 | as important safety information has been excluded from the booklet.

18 |     46.    Plantronics affirmatively represented that the Headsets are warranted to
19 | be free from "defects in materials and workmanship." This representation was and is
20 | false. The Headsets are defective and cannot safely be used for their intended
21 | purpose. The materials and workmanship of the product cause the product to
22 | produce unsafe decibel levels under normal consumer usage.

23 |     47.    Plaintiffs and the Class members relied upon such misrepresentations,
24 | omissions and concealments to their detriment in that the Defendants'
25 | misrepresentations and concealments to the effect that the Headsets were safe for
26 | their normal and intended use substantially influenced Plaintiffs' choice to buy and
27 | utilize Defendants' Bluetooth Headsets.

28 |

12

## JABRA'S WRONGFUL CONDUCT

48.    GN Jabra North America and GN Netcom, Inc. (hereinafter referred to as the "Jabra" Defendants") have manufactured and distributed many different models of Bluetooth Headsets, including the JX10, BT160, BT500, BT800, BT250v, BT350, and BT150 (hereinafter referred to as the "Jabra Headsets").

49.    On the packaging and marketing materials for these Headsets, Defendants have made false representations, omissions and concealments to purchasing consumers in order to induce the consumers to purchase the product. Each Headset is sold with affirmative representations that it can be used for extensive time periods, yet the packaging lacks any warnings regarding the noise induced hearing loss, a condition which has no cure or treatment, which can be expected to result from use of the Headsets in most environments over that period of time.

50.    The packaging on the Jabra Headsets advises that the Jabra Headsets can be used for an extensive amount of talk time. The various models indicate talk time of 6 hours, 8 hours, 7 hours, and even 10 hours. However, the representations as to permissible talk times are false, as a consumer cannot safely use the Jabra Headsets for the talk times represented. Plaintiffs and the Class members relied upon these representations made by Defendants in determining whether to purchase the Headsets at the high price charged for the devices.

51.    Although Jabra provides a user manual with its Headsets, which includes a section entitled "Certification and Safety Approvals," Jabra omits from the manual any information as to the decibel output of the device and the potential for noise induced hearing loss if the Headset is used at a loud setting for more than a safe number of hours per day. The exclusion of such information from the user manual wrongly implies that the Headset is safe at its maximum volume for the hours of talk time permitted by the Headset.

52.    The same misrepresentations, omissions and concealments were made in the product packaging to each consumer who purchased a Jabra Headset. Plaintiffs

13

1  and the Class members relied upon the misrepresentations, omissions and

2  concealments in purchasing the Headsets in that the Defendants' misrepresentations

3  and concealments to the effect that the Headsets were safe for their normal and

4  intended use substantially influenced Plaintiffs' choice to buy and utilize Defendants'

5  Bluetooth Headsets.

6  ## MOTOROLA'S WRONGFUL CONDUCT

7  53.  Motorola has manufactured and distributed many different models of

8  Bluetooth headsets, including the HS830, H3, H300, H500, H605, H700, HS805,

9  HS815, HS820, HS850, and HT820 (hereinafter referred to as the "Motorola

10  Headsets").

11  54.  The packaging on the Motorola Headsets advises that the Headsets can

12  be used for hours of talk time.  The various models advertise on the front of the

13  packaging that the product permits talk time of 3.5 hours, 6 hours, 8 hours, 10 hours,

14  and even 17 hours.  However, the representations as to permissible talk times are

15  false because a consumer cannot safely use the Headsets for the talk times

16  represented.  Rather, the Motorola Headsets can only be safely used for minutes per

17  day, thereby drastically limiting the usability of the product.

18  55.  Plaintiffs and the Class members relied upon these representations made

19  by Defendants in determining whether to purchase the Headsets at the high price

20  charged for the devices (with some versions costing over $100.00).  Had Plaintiffs

21  been advised that the product could only safely be used for mere minutes per day,

22  Plaintiffs would not have purchased the Motorola Headsets for the prices charged, or

23  at all.

24  56.  Motorola sold the Motorola Headsets with a booklet setting forth safety

25  information relating to use of the Headsets.  However, Defendants omitted and

26  concealed from consumers any safety information pertaining to the Headsets'

27  propensity for causing noise induced hearing loss.  Defendants also omitted and

28  concealed from the consuming public information advising that the Headsets

14

Consolidated Class Action Complaint
M:\Bluetooth. In Re (06-063)\Pleadings\Complaint.Consolidated.doc

1  produced noise at decibel levels exceeding 85 decibels, and even exceeding 100
2  decibels.

3      57.  Motorola manufactures and sells the Motorola Headsets without any
4  warning as to the decibel levels the devices emit. Motorola sells its headsets with a
5  booklet entitled "Important Safety and Legal Information." The booklet informs the
6  consumer in bold print that it provides **"IMPORTANT INFORMATION ON
7  SAFE AND EFFICIENT OPERATION. READ THIS INFORMATION
8  BEFORE USING YOUR DEVICE."** The booklet contains three pages of "Safety
9  Information." The booklet also includes a four page section on "Wireless Phone
10  Safety Tips."

11      58.  Despite the seven pages of material devoted to the safe use of the
12  Motorola Headset, Motorola fails to divulge the decibel output of the device and the
13  potential for noise induced hearing loss if the Headset is used at a loud setting for
14  more than a safe number of hours per day. The exclusion of such information from
15  the safety information and tips in the booklet wrongly implies that the Headset is safe
16  at its maximum volume for the hours of talk time permitted by the Headset. The
17  safety book falsely represents to consumers that the "important" information provided
18  in the booklet permits the "safe and efficient operation" of the Headset. This
19  representation is false since important safety information has been excluded from the
20  booklet. Plaintiffs and the Class members relied upon such misrepresentations,
21  omissions and concealments to their detriment.

22      59.  Motorola affirmatively represented in their marketing materials that the
23  Headsets are "free from defects in materials and workmanship under normal
24  consumer usage. . . ." This representation was and is false. The Headsets are
25  defective and cannot safely be used for their intended purpose. The materials and
26  workmanship of the product cause the product to produce unsafe decibel levels under
27  normal consumer usage.

28      60.  The same misrepresentations, omissions and concealments were made in

15

Consolidated Class Action Complaint
M:\Bluetooth. In Re (06-063)\Pleadings\Complaint.Consolidated.doc

1    the product packaging to each consumer who purchased a Motorola Headset.

2    Plaintiffs and the Class members relied upon the misrepresentations, omissions and

3    concealments in purchasing the Headsets in that the Defendants' misrepresentations

4    and concealments to the effect that the Headsets were safe for their normal and

5    intended use substantially influenced Plaintiffs' choice to buy and utilize Defendants'

6    Bluetooth Headsets.

7                        **CLASS ACTION ALLEGATIONS**

8        61.    Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs

9    bring these consolidated actions on behalf of themselves and the following sub-

10   classes:

11

12       a.    Plaintiff Sub-Class A: Nationwide Sub-Class Against
               Defendant Plantronics.

13       All persons or entities in the United States who, between June 30, 2002 and

14   the present, purchased a Bluetooth Headset manufactured by Defendant Plantronics.

15   The class does not include: (a) any officers, directors or employees of the

16   Defendants; (b) any judge assigned to hear this case (or spouse or family member of

17   any assigned judge); (c) any juror selected to hear this case.

18       b.    Plaintiff Sub-Class B: "Nationwide Sub-class Against
               the Jabra Defendants.

19
20       All persons and entities in the United States who, between June 30, 2002 and

     the present, purchased a Bluetooth Headset manufactured by Defendant GN Jabra
21
     North America or GN Netcom, Inc. or their successors in interest. The class does
22
     not include: (a) any officers, directors or employees of the Defendants; (b) any judge
23
     assigned to hear this case (or spouse or family member of any assigned judge); (c)
24
     any juror selected to hear this case.
25

26       c.    Plaintiff Sub-Class C: California Class Against
               Defendant Motorola
27
         All persons or entities who reside in California and who, between June 30,
28

                                        16

Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-0063)\Pleadings\Complaint.Consolidated.doc

1   2002 and the present, purchased a Bluetooth Headset manufactured by Defendant
2   Motorola. The class does not include: (a) any officers, directors or employees of the
3   Defendants; (b) any judge assigned to hear this case (or spouse or family member of
4   any assigned judge); (c) any juror selected to hear this case.

5       d.    Plaintiff Sub-Class D: Forty-Nine State Sub-class Against Defendant
6            Motorola

7       All persons and entities who reside in the United States but outside California,
8   and who, between October 16, 2003 and the present, purchased a Bluetooth Headset
9   device manufactured by Defendant Motorola. The class does not include: (a) any
10  officers, directors or employees of the Defendants; (b) any judge assigned to hear this
11  case (or spouse or family member of any assigned judge); (c) any juror selected to
12  hear this case.

13      Said definitions may be further defined by additional pleadings, evidentiary
14  hearings, a class certification hearing, and order of this Court.

15      62.    This action has been brought and may be properly maintained as a class
16  action pursuant to Rule 23 of the Federal Rules of Civil Procedure for the following
17  reasons:

18      a.    Each defendant has sold millions of Bluetooth Headsets during the
19            relevant time period. Therefore, joinder of all Class members in their
20            respective state classes would be impracticable, and class treatment is a
21            superior method for fairly and efficiently adjudicating this controversy.

22      b.    Plaintiffs' claims are typical of other Class members' claims within their
23            respective classes because each Plaintiff purchased one or more
24            Bluetooth Headsets manufactured, sold, marketed or distributed by
25            Defendants within the class period. Each of the Defendants made
26            uniform misrepresentations, omissions, concealment to the Plaintiffs
27            and respective Class members who purchased their Headsets.
28            Accordingly, by proving their own claims, Plaintiffs will presumptively

17

Consolidated Class Action Complaint
M:\Bluetooth. In Re (06-063)\Pleadings\Complaint.Consolidated.doc

1    prove their respective Class members' claims.

2    c.    Numerous questions of law and fact are uniform and common to the

3    classes. These uniform and common questions of law and fact

4    predominate over any individual issues. The uniform and common

5    questions of law and fact which predominate over individual issues

6    include:

7    i.    Whether Defendants, and each of them, represented to consumers

8    that the Bluetooth Headsets had a characteristic, use, benefit, or

9    quality that permitted the consumer to safely use the headsets for

10    an extended amount of time;

11    ii.    Whether the Headsets in fact have a characteristic, use, benefit, or

12    quality that prevents a consumer from safely using the Bluetooth

13    Headsets for an extended amount of time;

14    iii.    Whether use of the Bluetooth Headsets expose users to

15    dangerous levels of sound;

16    iv.    Whether Defendants, and each of them, failed to fairly,

17    accurately, and sufficiently warn Plaintiffs and the members of

18    the proposed Classes of the unsafe characteristics of the

19    Bluetooth Headsets;

20    v.    Whether Defendants, and each of them, knowingly concealed

21    the danger of using the Bluetooth Headsets;

22    vi.    Whether Defendants, and each of them, truthfully advertised that

23    the Bluetooth Headsets could safely be used over multiple hours

24    of time;

25    vii.    Whether Defendants, and each of them, violated express and

26    implied warranty statutes;

27    viii.    Whether Defendants, and each of them, were unjustly

28    enriched;

18

Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.doc

ix.   The nature and extent of damages to which Plaintiffs and members of the proposed classes are entitled based on the conduct of Defendants;

x.   Whether the distribution of Bluetooth Headsets to the consuming public constitutes an illegal nuisance.

xi.   Whether Defendants' Bluetooth Headsets pose an excessive risk of otherwise preventable hearing loss.

xii.   Whether Defendants knew or should have known that their Bluetooth Headsets pose an excessive risk of otherwise preventable hearing loss.

xiii.   Whether Defendants should be ordered to notify all class members of the risk of hearing loss associated with their Bluetooth Headsets.

d.   Plaintiffs can and will fairly and adequately represent and protect their respective Class members' interests, and have no interests that conflict with or are antagonistic to their respective Class members' interests. Plaintiffs' attorneys are experienced and competent in complex class-action and consumer-protection antitrust litigation.

e.   Defendants each engaged in a course of conduct involving similar or identical unsafe designs, statutory violations, and misrepresentations common to Plaintiffs and the members of their respective classes. Individual questions, if any, pale by comparison to the numerous common questions that dominate this litigation.

f.   The claims at issue herein seek damages for economic injury and do not seek damages for physical injury which has already occurred to the Class members. Specifically excluded from the relief sought in this proceeding are damages for personal injury claims. Thus,

19

Consolidated Class Action Complaint
M:\Bluetooth. In Re (06-063)\Pleadings\Complaint.Consolidated.doc

individualized determination as to causation related to bodily injury already suffered will not be required. The economic damages sustained by the members of the classes arise from a common nucleus of operative facts involving the respective Defendant's misconduct.

g.   These class actions are superior to the alternatives, if any, for the fair and efficient adjudication of these controversies. The Classes are readily definable. Certification of these class actions will enable claims to be handled in an orderly and expeditious manner. Certification of these class actions will save time and expense and will ensure uniformity of decisions.

h.   The relief sought per individual member of the Class is small given the burden and expense of individual prosecution of the potentially extensive litigation necessitated by the conduct of Defendants. Furthermore, it would be virtually impossible for the Class members to seek redress on an individual basis. Even if the Class members themselves could afford such individual litigation, the court system could not.

i.   The members of the proposed classes have been monetarily damaged and suffered injury in fact as a result of Defendants' misconduct in that each member purchased a Headset which the member would not have purchased if the true facts as to the product's safety and limitations had been revealed by Defendants.

j.   Individual litigation of the legal and factual issues raised by the conduct of Defendants would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economies of scale and comprehensive supervision by a single court. Given the similar nature of the Class members' claims

20

Consolidated Class Action Complaint
M:\Bluetooth. In Re f06-0631\Pleadings\Complaint.Consolidated.doc

1    and the law applicable thereto, the Court and the parties will easily be

2    able to manage the class actions in this MDL.

3    k.    Prosecution of separate actions by individual Class members will

4    create the risk of inconsistent or varying adjudications, establishing

5    incompatible standards of conduct for the Defendants.

6    l.    Injunctive relief is appropriate as to each of the Classes as a whole

7    because Defendants have acted or refused to act on grounds generally

8    applicable to the Classes.

9    63.    Application of California law to the putative nationwide Sub-Class A is

10   proper because defendant Plantronics markets, advertises and sells its Bluetooth

11   Headsets in and from the State of California. Thus, a substantial portion of the

12   alleged wrongful conduct emanates from this state. In addition, California's public

13   policy favors the protection of consumers, and California has a strong interest in

14   deterring wrongful conduct that occurs within its borders. Thus, application of

15   California law is not arbitrary or unfair as it relates to Sub-Class A.

16   64.    Application of California law to the putative nationwide Sub-Class B is

17   proper because the Jabra defendants marketed, advertised, and sold their Bluetooth

18   Headsets in and from the State of California. Thus, a substantial portion of the

19   alleged wrongful conduct emanates from this state. In addition, California's public

20   policy favors the protection of consumers, and California has a strong interest in

21   deterring wrongful conduct that occurs within its borders. Thus, application of

22   California law is not arbitrary or unfair as it relates to Sub-Class B.

23   65.    Application of California law to the putative California Sub-Class C is

24   proper because defendant Motorola conducts business in this state and has purposely

25   availed itself to the markets in this state by promoting, marketing, and selling its

26   Bluetooth Headsets in California. All the members of the putative Sub-Class C are,

27   by definition, residents of California. California's public policy favors the protection

28   of consumers, and California has a strong interest in protecting its citizens from

21

Consolidated Class Action Complaint
M:\Bluetooth. In Re (06-063)\Pleadings\Complaint.Consolidated.doc

wrongful conduct.

66.    Application of Illinois law to the putative Sub-Class D is proper because defendant Motorola markets, advertises and sells its Bluetooth Headsets in and from the State of Illinois.  Thus, a substantial portion of the alleged wrongful conduct emanates from Illinois, and Illinois has a strong interest in deterring wrongful conduct that occurs within its borders.

## FIRST CAUSE OF ACTION
### Violation of Consumers Legal Remedies Act, Cal Civ. Code § 1750 et seq.
### *(Brought on Behalf of Sub-Classes A, B, and C)*

67.    Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

68.    Plaintiffs and members of Sub-Classes A, B, and C are individuals who have purchased goods (i.e. Bluetooth Headsets) for personal, family or household purposes.  This cause of action is being asserted on behalf of all persons who purchased a Bluetooth Headset within three years of the filing of this action.

69.    Defendants have represented that the Bluetooth Headsets have characteristics, uses, benefits, or qualities that they do not have, in violation of Civil Code § 1770(a)(5).  Defendants have also represented that the Bluetooth Headsets had a particular standard or quality that they do not have in violation of Civil Code § 1770(a)(7).

70.    Plaintiffs and members of the Classes have each been directly and proximately injured by the conduct of Defendants, and such injury includes payment for the unsafe Bluetooth Headsets.

71.    More than (30) thirty days prior to the filing of this complaint, notice was sent to each Defendant in writing by certified mail pursuant to California Civil Code § 1782(a), in which demand was made that Defendants correct their unfair and deceptive acts, recall the product, contact and refund to Plaintiffs and the Classes the purchase price, and otherwise rectify its conduct with respect to the product.  Notice

22

1  was also given to Defendants by virtue of complaints and amended complaints filed

2  in *Jones, et al. v. Motorola, Inc., et al.*, Case No. 2:06-5182, United States District

3  Court, Central District of California; *Finlee v. GN Jabra North America, et al.*, Case

4  No. 2:06-6280, United States District Court, Central District of California, *Karle v.*

5  *Motorola, Inc.*, Case No. 2:06-6706, United States District Court, Central District of

6  California, *Raines v. Plantronics, Inc.*, Case No. 2:06-7608, United States District

7  Court, Central District of California.

8      72.    Defendants have failed to make an appropriate correction, repair or

9  replacement, or other remedy with respect to the product.

10     73.    Defendants have failed to make an appropriate correction, repair or

11 replacement, or other remedy with respect to the product.

12     74.    As a result of the conduct of Defendants as alleged herein, Plaintiffs and

13 the Class should be awarded actual damages in the amount paid for the product, and

14 restitution pursuant to California Code § 1780(a).

15     75.    The Court should enjoin Defendants from any further sales, marketing

16 or advertisement of the Bluetooth Headsets which contain the misrepresentation

17 detailed herein as to the standard, characteristics, uses, benefits, and/or qualities of

18 the Bluetooth Headsets. The Court should enjoin Defendants from any further sales,

19 marketing or advertisement of the Bluetooth Headsets without a warning as to the

20 potential for noise induced hearing loss. The Court should further enjoin Defendants

21 from any further sales, marketing or advertisement of the Bluetooth Headsets until

22 Defendants redesign the Bluetooth Headsets in a manner that ensures that the volume

23 emitted by the Bluetooth Headsets does not exceed the decibel level determined to be

24 safe for the advertised use of the Headsets, or alternatively, redesign the Bluetooth

25 Headsets in a manner that provides the consumer with the ability to determine the

26 decibel level of the sound being emitted by the Bluetooth Headset.

27     76.    Plaintiffs engaged counsel to prosecute this action and are entitled to

28 recover costs and reasonable attorney's fees according to proof at trial.

23

Consolidated Class Action Complaint
M:\Bluetooth. In Re (06-0631)\Pleadings\Complaint.Consolidated.doc

## SECOND CAUSE OF ACTION
### Untrue and Misleading Advertising, Cal. Bus. & Prof. Code § 17500, et seq.
### (Brought on Behalf of Sub-Classes A, B, and C)

77.  Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

78.  Plaintiffs bring this cause of action on behalf of themselves, and on behalf of Sub-Classes A, B, and C. Plaintiffs have suffered injury in fact and lost money or property as a result of Defendants' violations of Bus. & Prof. Code § 17500, *et seq.* Plaintiffs relied on the concealments and misrepresentations of the Defendants in purchasing the Headsets. The Defendants' misrepresentations and concealments to the effect that the Headsets were safe for their normal and intended use substantially influenced Plaintiffs' choice to purchase Defendants' Bluetooth Headsets.

79.  Plaintiffs are informed and believe that Defendants made representations disseminated to the public as to the uses of the Headsets in advertisements, product descriptions and other sales materials, while also concealing and/or omitting relevant information which would have qualified such affirmative representations. These representations and concealments were made to induce the public to purchase the Headsets. The representations were false. The information concealed should have been disseminated.

80.  Defendants were aware, or by the exercise of reasonable care should have been aware, that the representations were untrue or misleading. Defendants also were aware, *or by the exercise of reasonable case should have been aware*, that the concealments and omissions should have been disseminated in the advertising.

81.  Plaintiffs have been harmed. Plaintiffs, on behalf of themselves and on behalf of the Sub-Classes, seeks restitution, injunctive relief and all other relief allowable under § 17500, et *seq.*

82.  Pursuant to Bus. & Prof Code § 17535, Plaintiffs and members of the

24

1    Sub-Classes are entitled to remedies as set forth below.

2        83.    Plaintiffs meet the standing requirements of California Code of Civil

3    Procedure § 382 to bring this cause of action of action because, among other reasons,

4    the question is one of a common or general interest, is a question of many persons

5    and/or the parties are numerous and it is impracticable to bring them all before the

6    Court.

7                              **THIRD CAUSE OF ACTION**

8        **Violation of Unfair Competition Law, Bus. & Prof. Code § 17200, *et seq.***

9                    ***(Brought on Behalf of Sub-Classes A, B, and C)***

10        84.    Plaintiffs incorporate by reference all the above allegations as if fully set

11   forth herein.

12        85.    Plaintiffs bring this cause of action on behalf of themselves and on

13   behalf of Sub-Classes A, B, and C. Plaintiffs have suffered injury in fact and lost

14   money or property as a result of unfair competition by Defendants, as Plaintiffs paid

15   the purchase price for an unsafe product which probably would not have been

16   purchased, or purchased for the same price, if Defendants had not made

17   misrepresentations and concealed or omitted material information as to the safety of

18   the product and its limitations.  Plaintiffs relied upon Defendants to disclose all

19   pertinent safety information and the limitations on the safe usage of the product.

20   Plaintiffs have further suffered injury in fact having been subjected to a nuisance, as

21   defined by *California Civil Code, section 3479*, and as to which they were subjected

22   by virtue of money innocently paid in purchasing a product injurious to health so as

23   to interfere with the comfortable enjoyment of life.

24        86.    The actions of Defendants, as complained herein, constitute unfair,

25   deceptive and unlawful practices committed in violation of the Unfair Competition

26   Act.  Plaintiffs are informed and believe that the conduct of Defendants violated the

27   Unfair Competition Act because:

28           a.    Defendants were aware, or upon reasonable investigation should

                                           25

have been aware, of the risks presented by the use of the Headsets;

b.   Defendants purposefully and knowingly failed to adequately warn the consumer of the safety risk presented by use of the Headset;

c.   Defendants advertised and marketed the Headsets with a representation that the Headsets could be used in excess of the number of hours which would be safe, even though Defendants were aware or should have been aware that such use could be unsafe;

d.   Defendants failed to include in the safety information provided with the Headsets any mention of the potential for noise induced hearing loss, even though such a warning had been issued by competitors;

e.   Defendants concealed, omitted and/or suppressed information as to the decibel levels emitted by the Headsets and the corresponding time limitations for use;

f.   Defendants have unlawfully violated regulations limiting exposure to certain decibel levels over certain periods of time;

87.   Plaintiffs are informed and believe that Defendants are aware, or should be aware, of the risk of hearing loss posed by the Headsets, but Defendants chose to market and sell the Headsets without adequate warning or modifications because such warnings or modifications could have had an adverse impact on the sale of the Headsets and the revenue flowing to Defendants.

88.   Plaintiffs have suffered damages as a result of the conduct of Defendants, because Plaintiffs and the Class members were misled into purchasing a product which was not safe and which was not what Defendants advertised the

26

1    product to be.

2        89.    Plaintiffs are informed and believe that all of the conduct alleged herein

3    occurs and continues to occur in Defendants' business. The conduct of Defendants is

4    part of a pattern or generalized course of conduct repeated on thousands of occasions

5    daily.

6        90.    Plaintiffs request that this Court enter such orders or judgments as may

7    be necessary to restore to any person in interest any money which may have been

8    acquired by means of such unfair practices as provided in Bus. & Prof. Code §

9    17203, and for such other relief as set forth below.

10        91.    Plaintiffs are informed and believe that the continuing sales of the

11    Headsets to the unsuspecting public, without warnings and any mechanism by which

12    the public may protect its hearing, exposes the consuming public in an ongoing

13    danger of noise induced hearing loss, an irreparable and devastating loss. Because

14    the noise induced hearing loss at issue herein is a silent condition (i.e., one is unaware

15    that it is occurring as it evolves and until it is too late) that progressively occurs over

16    time, everyday the consuming public uses the product, consumers continue down the

17    path of noise induced hearing loss, incrementally but permanently affecting and/or

18    jeopardizing one's long-term ability to hear. With every additional sale of the

19    product, this path becomes increasingly congested.

20        92.    Plaintiffs, on behalf of themselves, and Sub-Classes A, B, and C seek an

21    order of this Court awarding restitution, injunctive relief and all other relief allowed

22    under § 17200, *et seq.*, plus interest, attorneys' fees and costs pursuant to, *inter alia*,

23    C.C.P. § 1021.5. Plaintiffs engaged counsel to prosecute this action and are entitled

24    to recover costs and reasonable attorney's fees according to proof at trial. This case

25    will result in the enforcement of an important right affecting the public interest, a

26    significant benefit (pecuniary or nonpecuniary) will be conferred on a large class of

27    persons (thousands if not tens of thousands or more), the necessity and financial

28    burden of private enforcement are such as to make the award appropriate (the product

Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint.Consolidated.doc

costs less than $200, which is minimal in comparison to the financial burden of litigating this important action, made necessary by virtue of Defendants' refusal to protect the public's hearing); and such fees should not in the interest of justice be paid out of the recovery, if any (as the cost of litigation by itself may exceed the monetary amounts paid by way of restitution).

93.    Plaintiffs meet the standing requirements of California Code of Civil Procedure § 382 to bring this cause of action because, among other reasons, the question is one of a common or general interest, is a question of many persons and/or the parties are numerous and it is impracticable to bring them all before the Court. Further, Plaintiffs have standing to bring this action as Plaintiffs suffered injury in fact and damages as a result of Defendants' conduct.

## FOURTH CAUSE OF ACTION
### Deceptive Trade Practices 815 ILCS 510
### *(Brought on Behalf of Sub-Class D Against Motorola, Inc.)*

94.    Plaintiffs incorporate by reference all the above allegations as if fully set forth herein.

95.    Plaintiffs bring this cause of action on behalf of themselves, on behalf of the Class, and on behalf of the common or general interest. Plaintiffs have suffered injury in fact and lost money or property as a result of Defendant's violations of the Uniform Deceptive Trade Practices Act 815 Ill. Comp. Stat. 510.

96.    Plaintiffs are informed and believe that Defendant has made representations to the public that regarding the uses and quality of the Headsets. These representations were made to induce the public to purchase the Headsets. The representations were false and created a likelihood of confusion or misunderstanding among the Plaintiffs and the public.

97.    Defendant was aware, or by the exercise of reasonable care should have been aware, that the representations were untrue and misleading. Defendants also

Consolidated Class Action Complaint
M:\Bluetooth, In Re (06-063)\Pleadings\Complaint Consolidated.doc

1  were aware, or by the exercise of reasonable care should have been aware, that the

2  concealments and omissions should have been disseminated in the advertising.

3      98.    Plaintiffs have been harmed. Plaintiffs, on behalf of themselves, on

4  behalf of the Class, and on behalf of the common or general interest, seek restitution

5  and all other relief allowable under Uniform Deceptive Trade Practices Act 815 Ill.

6  Comp. Stat. 510.

7

8                    **PRAYER FOR RELIEF**

9      **WHEREFORE**, Plaintiffs, on behalf of themselves and as representative

10  of all other persons similarly situated, pray for judgment against the Defendants,

11  as follows:

12      1.    An Order certifying the Sub-Classes herein, and appointing Plaintiffs,

13            and their counsel, to represent the Class;

14      2.    An award of general damages according to proof;

15      3.    An award of special damages according to proof;

16      4.    An award of punitive damages in an amount sufficient to deter and make

17            an example of Defendants;

18      5.    An award of restitution in an amount according to proof;

19      6.    A temporary restraining order, a preliminary injunction and a

20            permanent injunction enjoining Defendants, and their agents, servants,

21            employees and all persons acting under or in concert with them, to cease

22            and desist from the following acts:

23         (a)    Selling, marketing or advertising the Headsets without a detailed

24                warning advising the consumer as to the potential for noise

25                induced hearing loss and the known risk of harm associated with

26                exposure, even for brief intervals, to sound at high decibel levels;

27         (b)    Selling, marketing or advertising the Headsets without a

28                mechanism by which the user can readily and easily determine

29

Consolidated Class Action Complaint
M:\Bluetooth. In Re (06-063)\Pleadings\Complaint.Consolidated.doc

1    the decibel levels being emitted by the Headsets and thereby be

2    made aware of the safe time limits (if any) for use of the Headsets

3    at the higher volume settings;

4      (c)    Any other conduct which the Court determines warranted so as to

5        prevent the commission of unfair competition by Defendants.

6    7.    For reasonable attorneys' fees;

7    8.    For costs incurred herein;

8    9.    For prejudgment interest;

9    10.    For an order of disgorgement;

10    11.    For all general, special, and equitable relief to which the Plaintiffs and

11    the members of the Class are entitled by law.

12

13   Dated: July 6, 2007       **THE GARCIA LAW FIRM**

14            **PEARSON, SIMON, SOTER, WARSHAW & PENNY LLP**

15

16      By: _____

           Stephen M. Garcia

17        David M. Medby

           *Counsel for Plaintiffs and the Class*

18        Bruce L. Simon

           Esther L. Klisura

19        Pearson, Simon, Soter, Warshaw & Penny, LLP

20        *Counsel for Plaintiffs and the Class*

21        Steven A. Hart

           Scott W. Henry

22        Segal, McCambridge, Singer & Mahoney, Ltd.

           Sears Tower

23        233 S. Wacker Drive, Suite 5500

           Chicago, Illinois 60606

24        Telephone: (312) 645-7800

           Facsimile: (312) 645-7711

25        *Counsel for Plaintiffs and the Class*

26        Melissa M. Harnett

27        Wasserman, Comden & Casselman, LLP

28        5567 Reseda Blvd., Suite 300

           Tarzana, California 91357

                  30

Telephone: (818) 705-6800
Facsimile: (818) 996-8266
*Counsel for Plaintiffs and the Class*

Michael J. Fuller
McHugh Fuller Law Group, PLLC
97 Elias Whiddon Road
Hattiesburg, MS 39402
Telephone: (601) 261-2220
Facsimile: (601) 261-2481
*Counsel for Plaintiffs and the Class*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated: July 6, 2007

THE GARCIA LAW FIRM
PEARSON, SIMON, SOTER, WARSHAW
& PENNY LLP

By: _____
Stephen M. Garcia
David M. Medby
*Counsel for Plaintiffs and the Class*

Bruce L. Simon
Esther L. Klisura
Pearson, Simon, Soter, Warshaw & Penny, LLP
*Counsel for Plaintiffs and the Class*

Steven A. Hart
Scott W. Henry
Segal, McCambridge, Singer & Mahoney, Ltd.
Sears Tower
233 S. Wacker Drive, Suite 5500
Chicago, Illinois 60606
Telephone: (312) 645-7800
Facsimile: (312) 645-7711
*Counsel for Plaintiffs and the Class*

Melissa M. Harnett
Wasserman, Comden & Casselman, LLP
5567 Reseda Blvd., Suite 300
Tarzana, California 91357

31

Consolidated Class Action Complaint
M:\Bluetooth. In Re (06-0063)\Pleadings\Complaint.Consolidated.doc

Telephone: (818) 705-6800
Facsimile: (818) 996-8266
*Counsel for Plaintiffs and the Class*

Michael J. Fuller
McHugh Fuller Law Group, PLLC
97 Elias Whiddon Road
Hattiesburg, MS 39402
Telephone: (601) 261-2220
Facsimile: (601) 261-2481
*Counsel for Plaintiffs and the Class*

32

Consolidated Class Action Complaint
M:\Bluetooth. In Re (06-063)\Pleadings\Complaint.Consolidated.doc