1  DEAN A. PAPPAS (SBN 115140)
   LAURA L. REIDENBACH (SBN 158335)
2  ROPERS, MAJESKI, KOHN & BENTLEY
   1001 Marshall Street, Suite 300
3  Redwood City, CA 94063
   Telephone:  (650) 364-8200
4  Facsimile:  (650) 780-1701
   E-mail: dpappas@rmkb.com
5  E-mail: lreidenbach@rmkb.com

6  Attorneys for Defendant
   ATLANTIC MUTUAL INSURANCE COMPANY
7

8              UNITED STATES DISTRICT COURT

9              NORTHERN DISTRICT OF CALIFORNIA

10                    SAN JOSE DIVISION

11

12 | PLANTRONICS, INC., | CASE NO. C 07-06038PVT
13 | Plaintiff, | **NOTICE OF ERRATA IN SUPPORT OF ATLANTIC MUTUAL INSURANCE COMPANY'S MOTION TO DISMISS; REVISED TABLE OF AUTHORITIES**
14 | v. |
15 | AMERICAN HOME ASSURANCE COMPANY, a New York corporation; THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a Pennsylvania corporation; ATLANTIC MUTUAL INSURANCE COMPANY, a New York corporation | Date:    March 18, 2008
   | | Time:    10:00 a.m.
   | | Courtroom: 5
   | | Judge: Magistrate Judge Patricia V. Trumbull
16 | |
17 | |
18 | |
19 | Defendants. |

20

21     PLEASE TAKE NOTICE that defendant ATLANTIC MUTUAL INSURANCE

22 COMPANY hereby cures the *errata* to the Table of Authorities in support of its Motion To

23 Dismiss served and filed on Monday, February 4, 2008, as attached.

24

25

26

27

28

RC1/5066395.1/BS

NOTICE OF ERRATA IN SUPPORT OF ATLANTIC MUTUAL'S REVISED TABLE OF AUTHORITIES C 07-06038PVT

| | | |
|---|---|---|
| 1 | Dated: February 6, 2008 | ROPERS, MAJESKI, KOHN & BENTLEY |
| 2 | | |
| 3 | | By: /s/ |
| 4 | | DEAN A. PAPPAS<br>LAURA L. REIDENBACH<br>Attorneys for Defendant |
| 5 | | ATLANTIC MUTUAL INSURANCE COMPANY |

Ropers Majeski Kohn & Bentley
A Professional Corporation
Redwood City

RC1/5066395.1/BS

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Amfac Mortgage Corp. v. Arizona Mall of Tempe, Inc.* (9th Cir. 1978) 583 F.2d 426 ................................................................................................................. 5

*Balistreri v. Pacifica Police Dept.* (9th Cir. 1988) 901 F.2d 696 ....................................... 4

*Clegg v. Cult Awareness Network* (9th Cir. 1994) 18 F.3d 752 ....................................... 5

*Dobrin v. Allstate Ins. Co.* (1995) 897 F.Supp. 442 .......................................................... 8

*Durning v. First Boston Corp.* (9th Cir. 1987) 815 F.2d 1265 .......................................... 5

*Steckman v. Hart Brewing, Inc.* (9th Cir.1998) 143 F.3d 1293 ........................................ 5

## CALIFORNIA STATE CASES

*Bank of the West v. Superior Court* (1992) 2 Cal. 4th 1254 ........................................... 10

*Chatton v. National Union Fire Insurance Co.* (1992) 10 Cal. App. 4th 846 .................. 7

*Cutler-Orosi Unified School District v. Tulare County School etc. Authority* (1994) 31 Cal. App. 4th 617. .......................................................................................... 10

*Economy Lumber Co. v. Insurance Co. of North America* (1984) 157 Cal. App. 3d 641 ........................................................................................................................... 11

*Fibreboard Corp. v. Hartford Accident & Indem. Co.* (1993) 16 Cal. App. 4th 492 ....... 12

*Fresno Economy Import Used Cars, Inc. v. United States Fid. & Guar. Co.* (1977) 76 Cal. App. 3d 272 ................................................................................................. 9, 10

*Giddings v. Industrial Indemnity Co.* (1980) 112 Cal.App.3d 213, 219 ........................... 9

*Golden Eagle Ins. Corp. v. Cen-Fed, Ltd.* (2007) 148 Cal.App. 4th 976. ........................ 9

*Gray v. Zurich Insurance Co.* (1966) 65 Cal. 2d 263. ...................................................... 2

*Gunderson v. Fire Insurance Exchange* (1995) 37 Cal. App. 4th 1106 ........................... 9

*Hurley Construction Co. v. State Farm Fire & Casualty Co.* (1992) 10 Cal. App. 4th 533 ............................................................................................................................ 9

*Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal. 4th 287. ............................... 9

*Palmer v. Truck Ins. Exchange* (1999) 21 Cal. 4th 1109 ................................................ 12

*Scalf v. D. B. Log Homes, Inc.* (2005) 128 Cal. App. 4th 1510 ....................................... 7

*Shade Foods, Inc. v. Innovative Products Sales & Marketing, Inc.* (2000) 78 Cal. App. 4th 847 ............................................................................................................... 11

*Valerio v. Andrew Youngquist Construction* (2002) 103 Cal. App. 4th 1264 .................. 7

*Waller v. Truck Ins. Exch.* (1995) 11 Cal. 4th 1 .................................................................. 2, 9

**OUT-OF-STATE CASES**

*Samsung Electronics American, Inc. v. Federal Ins. Co.* (Tex. App. 2006) 202 S.W. 3d 372 ....................................................................................................................... 8

**FEDERAL STATUTES**

Fed. R. Civ. P. 8(a)(2) ............................................................................................................ 4

Fed. R. Civ. P. 12(b)(6) .......................................................................................................... 4

Fed. R. Civ.P. 10(c) ................................................................................................................ 5

LexisNexis® Total Research System

Switch Client | Preferences | Sign Off | ? Help

Search | Research Tasks | Get a Document | Shepard's® | Alerts | Total Litigator | Counsel Selector | Dossier | His

Service: **Get by LEXSEE®**
Citation: **202 sw3d 372**

202 S.W.3d 372, *; 2006 Tex. App. LEXIS 7376, **

SAMSUNG ELECTRONICS AMERICA, INC., SAMSUNG TELECOMMUNICATIONS AMERICA, L.P. F/K/A SAMSUNG TELECOMMUNICATIONS AMERICA, INC., and SAMSUNG ELECTRONICS CO., LTD., Appellants v. FEDERAL INSURANCE COMPANY, Appellee

No. 05-04-01316-CV

COURT OF APPEALS OF TEXAS, FIFTH DISTRICT, DALLAS

202 S.W.3d 372; 2006 Tex. App. LEXIS 7376

August 21, 2006, Opinion Filed

**SUBSEQUENT HISTORY:** Released for Publication October 25, 2006.
Rehearing overruled by Samsung Elecs. Am. v. Fed. Ins. Co., 2006 Tex. App. LEXIS 9407 (Tex. App. Dallas, Oct. 18, 2006)
Petition for review granted by Fed. Ins. Co. v. Samsung Elecs. Am., 2007 Tex. LEXIS 1023 (Tex., Nov. 30, 2007)

**PRIOR HISTORY:** [**1] On Appeal from the 193rd Judicial District Court, Dallas County, Texas. Trial Court Cause No. 02-9939-L.

**DISPOSITION:** Affirm in part; Reverse and Render in part; Reverse and Remand in part.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Appellant insured, a cell phone manufacturer, challenged a summary judgment entered by the 193rd Judicial District Court, Dallas County, Texas, in favor of appellee insurer on the insurer's duty to defend and indemnify the insured in five underlying class actions. Four of the class actions were substantially similar in all material respects, while the fifth asserted violations of state consumer laws and unjust enrichment.

**OVERVIEW:** The insured believed the class actions alleged "bodily injury" and sought damages under its commercial general liability policies with the insurer. The class action complaints alleged that plaintiffs suffered an "adverse cellular reaction" or "cellular dysfunction," also referred to as "biological injury," when they used the insured's cell phones without a headset. The court held that allegations of "biological injury" potentially stated a claim for "bodily injury" under the policies because injury to human cells was not clearly within or excluded by the policy provisions. Accordingly, four of the complaints potentially alleged a claim for "bodily injury," triggering the insurer's duty to defend, because they alleged that exposure to radio frequency radiation from the use of cell phones without a headset caused an "adverse cellular reaction" or "cellular dysfunction" that caused "biological injury" and could result in serious health conditions in the future. However, there was no duty to defend as to the fifth complaint. It did not assert facts which, if true, would provide coverage under the "bodily injury" provision because it expressly disclaimed damages for personal injury.

**OUTCOME:** The court reversed the judgment and rendered judgment that the insurer

owed the insured a duty to defend in four of the class actions. The court reversed the part of the trial court's judgment awarding summary judgment for the insurer regarding those class actions on the duty to indemnify and remanded for further proceedings. The court affirmed the part of the judgment awarding summary judgment for the insurer regarding the fifth class action.

**CORE TERMS:** bodily injury, cell, phone, class actions, duty to defend, headset, exposure, biological, cellular, summary judgment, coverage, insurer's, disease, human cells, radiation, insured, policy period, asbestos, physical injury, mental anguish, insurance policies, sickness, antenna, policy provisions, disclaimed, indemnify, lawsuit, duty to indemnify, liability policy, economic damages

**LEXISNEXIS® HEADNOTES**                                    ⊟ **Hide**

 Civil Procedure > Summary Judgment > Appellate Review > Standards of Review
 Civil Procedure > Summary Judgment > Motions for Summary Judgment > Cross-Motions
HN1⬥ An appellate court reviews a grant of summary judgment de novo. When both parties move for summary judgment, each bears the burden of establishing it is entitled to judgment as a matter of law. If the trial court grants one motion and denies the other, the non-prevailing party may appeal the granting of the prevailing party's motion as well as the denial of its own motion. The appellate court reviews the summary judgment evidence presented by both parties and determines all questions presented. More Like This Headnote

 Civil Procedure > Summary Judgment > Appellate Review > Standards of Review
 Civil Procedure > Summary Judgment > Burdens of Production & Proof > General Overview
HN2⬥ When a trial court does not specify the basis for its ruling, it is an appellant's burden on appeal to show that each of the independent grounds asserted in support of summary judgment is insufficient to support the judgment. And when the trial court's order granting summary judgment does not specify the grounds upon which it was granted, an appellate court will affirm the judgment if any of the theories advanced are meritorious. The appellate court may affirm the trial court's summary judgment or reverse and render the judgment the trial court should have rendered. More Like This Headnote

 Insurance Law > General Liability Insurance > Obligations > Allegations in Complaints
 Insurance Law > General Liability Insurance > Obligations > Defense
HN3⬥ An insurer's duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a claim within the terms of the policy. The duty to defend is determined by the allegations in the underlying pleadings and the language of the insurance policy. This standard is referred to as the "eight corners" rule. More Like This Headnote | *Shepardize:* Restrict By Headnote

 Insurance Law > General Liability Insurance > Obligations > Allegations in Complaints
 Insurance Law > General Liability Insurance > Obligations > Defense
HN4⬥ When a reviewing court applies the eight corners rule, it gives the allegations in the underlying lawsuit a liberal interpretation in favor of the insured. The court considers the allegations in light of the policy provisions without reference to their truth or falsity and without reference to what the parties know or believe to be the true facts. The court presumes the facts alleged in the underlying lawsuit are true when gauging the insurer's duty to defend. The court does not read facts into the

pleadings, look outside the pleadings, or imagine factual scenarios which might trigger coverage. A liability policy obligates the insurer to defend the insured against any claim that could potentially be covered, regardless of the claim's merits. If the pleadings do not state facts sufficient to bring the claim clearly within or without the coverage, the general rule is that the insurer is obligated to defend if a claim potentially falls within the coverage of the policy. A duty to defend any of the claims against the insured requires the insurer to defend the entire suit. More Like This Headnote | *Shepardize:* Restrict By Headnote

Insurance Law > General Liability Insurance > Coverage > Bodily Injuries

HN5 The term "bodily" implies a physical rather than mental injury and requires an injury to the physical structure of the human body. Cells are part of the physical structure of the body. Additionally, "injury" means hurt, damage, or loss sustained. More Like This Headnote

**COUNSEL:** For APPELLANT: Michael Edwin Jones, Ronald Stutes, POTTER MINTON, P.C., Tyler, TX; Finley T. Harckham, ANDERSON KILL & OLICK PC, New York, NY.

For APPELLEE: Michael W. Huddleston, SHANNON, GRACEY, RATLIFF & MILLER, L.L.P., Dallas, TX.

**JUDGES:** Before Justices FitzGerald, Lang-Miers and Mazzant. Opinion By Justice Lang-Miers.

**OPINION BY:** ELIZABETH LANG-MIERS

**OPINION**

[*374] This is an insurance coverage dispute where we interpret the duty to defend in commercial general liability (CGL) policies. The trial court decided cross-motions for [*375] summary judgment in favor of Federal Insurance Company and against Samsung Electronics America, Inc., Samsung Telecommunications America, L.P. f/k/a Samsung Telecommunications America, Inc., and Samsung Electronics Co., Ltd. (Samsung) on Federal's duty to defend and indemnify Samsung in five underlying class actions.[1] Samsung contends the trial court erred by rendering judgment for Federal because Federal has a duty to defend Samsung in the class actions. We affirm in part, reverse and render in part, and reverse and remand in part.

**FOOTNOTES**

1 Four of the five complaints, *Farina v. Nokia, Inc.*, No. 002527 (Ct. of Common Pleas, Phila. County, Apr. 19, 2001); *Gilliam v. Nokia, Inc.*, No. 15692-2001 (NY Sup. Ct., Bronx County, Apr. 23, 2001); *Pinney v. Nokia, Inc.*, No. 01-MD-1421 (Cir. Ct., Balt., Apr. 19, 2001); and *Gimpelson v. Nokia, Inc.*, No. 2001CV38932 (Ga. Super. Ct., Fulton County, Jun. 8, 2001), which are substantially similar in all material respects, assert a combination of state law claims for strict products liability (failure to warn, design or manufacturing defect), violations of state consumer laws, breach of implied warranties, negligent misrepresentation, fraud by concealment, civil battery, and civil conspiracy. We refer to these complaints as the *Pinney* complaints. The fifth complaint, *Dahlgren v. Audiovox Commc'ns Corp.*, No. 02-0007884 (D.C. Super. Ct., Sep. 6, 2002), asserts violations of state consumer laws and unjust enrichment. We refer to this complaint as

the *Dahlgren* complaint.

## [**2] BACKGROUND

Samsung is a manufacturer of wireless handheld telephones (cell phones). It was named as one of many defendants in the *Pinney* and *Dahlgren* complaints seeking damages allegedly arising from the use of its cell phones. ² Although the complaints were filed in different forums and contained variations in the wording of their allegations, all alleged that defendants' cell phones emit harmful radio frequency radiation that potentially causes injury to human cells when the cell phones are used without a headset. Samsung tendered the defense of the complaints to Federal, from whom it had purchased CGL and excess umbrella liability insurance policies, because it believed the class actions alleged "bodily injury" and sought "damages because of bodily injury" under Federal's policies. ³ Federal defended Samsung in the *Pinney* class actions under a reservation of rights but declined to defend Samsung in the *Dahlgren* class action because the plaintiffs in that action expressly disclaimed damages for personal injury resulting from the use of the cell phones. Federal also sought a declaratory judgment that its policies did not obligate it to defend or indemnify [**3] Samsung in any of the class actions.

### FOOTNOTES

2 Unlike the *Pinney* plaintiffs who alleged biological injury from the use of Samsung's cell phones, the *Dahlgren* plaintiffs expressly disclaimed any damages for physical or biological injury arising from the use of the cell phones and alleged their injury was paying for cell phones that did not comport with the description provided by Samsung.

3 Several primary and excess insurance policies are at issue in this case. For our purposes, we refer to them collectively because any variations in wording do not affect the issues on appeal.

Federal and Samsung filed cross motions for summary judgment on Federal's duty to defend and indemnify Samsung. Additionally, Federal sought reimbursement of the defense costs it had already paid in defending Samsung under the reservation of rights. Without stating the grounds, the trial court granted Federal's motion for summary judgment in part, holding Federal had no duty to defend or indemnify Samsung in the class actions. [**4] The trial court also granted Samsung's motion in part, holding Federal was not [*376] entitled to reimbursement of past defense costs. Samsung appeals the judgment.

## STANDARD OF REVIEW

HN1 We review a grant of summary judgment de novo. *Gehan Homes, Ltd. v. Employers Mut. Cas. Co.*, 146 S.W.3d 833, 837 (Tex. App.--Dallas 2004, pet. filed); *Reynosa v. Huff*, 21 S.W.3d 510, 512 (Tex. App.--San Antonio 2000, no pet.). When both parties move for summary judgment, each bears the burden of establishing it is entitled to judgment as a matter of law. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356, 43 Tex. Sup. Ct. J. 303 (Tex. 2000). If the trial court grants one motion and denies the other, the non-prevailing party may appeal the granting of the prevailing party's motion as well as the denial of its own motion. *Holmes v. Morales*, 924 S.W.2d 920, 922, 39 Tex. Sup. Ct. J. 779 (Tex. 1996). We review the summary judgment evidence presented by both parties and determine all questions presented. *Dallas Morning News*, 22 S.W.3d at 356.

HN2 When the trial court does not specify the basis for its ruling, it is appellant's burden on

appeal to show that each of **[\*\*5]** the independent grounds asserted in support of summary judgment is insufficient to support the judgment. See Star-Telegram, Inc. v. Doe, 915 S.W.2d 471, 473, 38 Tex. Sup. Ct. J. 718 (Tex. 1995); Caldwell v. Curioni, 125 S.W.3d 784, 789 (Tex. App.--Dallas 2004, pet. denied). And when the trial court's order granting summary judgment does not specify the grounds upon which it was granted, we will affirm the judgment if any of the theories advanced are meritorious. Carr v. Brasher, 776 S.W.2d 567, 567, 32 Tex. Sup. Ct. J. 378 (Tex. 1989). We may affirm the trial court's summary judgment or reverse and render the judgment the trial court should have rendered. Morales, 924 S.W.2d at 922; Jones v. Strauss, 745 S.W.2d 898, 900, 31 Tex. Sup. Ct. J. 250 (Tex. 1988).

**APPLICABLE LAW**

HN3 The insurer's duty to defend arises when a third party sues the insured on allegations that, if taken as true, potentially state a claim within the terms of the policy. Gehan Homes, Ltd., 146 S.W.3d at 838. The duty to defend is determined by the allegations in the underlying pleadings and the language of the insurance policy. Nat'l Union Fire Ins. Co. v. Merchs. Fast Motor Lines, Inc., 939 S.W.2d 139, 141, 40 Tex. Sup. Ct. J. 353 (Tex. 1997); **[\*\*6]** Gehan Homes, Ltd., 146 S.W.3d at 838. This standard is referred to as the "eight corners" rule. Nat'l Union Fire Ins. Co., 939 S.W.2d at 141; Gehan Homes, Ltd., 146 S.W.3d at 838. HN4 When we apply the eight corners rule, we give the allegations in the underlying lawsuit a liberal interpretation in favor of the insured. Gehan Homes, Ltd., 146 S.W.3d at 838. We consider the allegations in light of the policy provisions without reference to their truth or falsity and without reference to what the parties know or believe to be the true facts. Id.; See Argonaut Sw. Ins. Co. v. Maupin, 500 S.W.2d 633, 635, 17 Tex. Sup. Ct. J. 40 (Tex. 1973). We presume the facts alleged in the underlying lawsuit are true when gauging the insurer's duty to defend. Heyden Newport Chem. Corp. v. S. Gen. Ins. Co., 387 S.W.2d 22, 24, 8 Tex. Sup. Ct. J. 187 (Tex. 1965); Gehan Homes, Ltd., 146 S.W.3d at 838. We do not read facts into the pleadings, look outside the pleadings, or "imagine factual scenarios which might trigger coverage." Nat'l Union Fire Ins. Co., 939 S.W.2d at 142; Gehan Homes, Ltd., 146 S.W.3d at 838. **[\*\*7]** A liability policy obligates the insurer to defend the insured against any claim that could potentially be covered, regardless of the claim's merits. Heyden Newport Chem.Corp., 387 S.W.2d at 26; Gehan Homes, Ltd., 146 S.W.3d at 838. If the pleadings do not state facts sufficient to bring the claim clearly within or without the coverage, the general rule is **[\*377]** that the insurer is obligated to defend if a claim potentially falls within the coverage of the policy. Nat'l Union Fire Ins. Co., 939 S.W.2d at 141. A duty to defend any of the claims against the insured requires the insurer to defend the entire suit. Gehan Homes, Ltd., 146 S.W.3d at 838; Pro-Tech Coatings, Inc. v. Union Standard Ins. Co., 897 S.W.2d 885, 892 (Tex. App.--Dallas 1995, no writ); Stumph v. Dallas Fire Ins. Co., 34 S.W.3d 722, 728 (Tex. App.--Austin 2000, no pet.).

**DISCUSSION**

**A. Do Allegations of "Biological Injury" Potentially State a Claim for "Bodily Injury" under Federal's Policies?**

The parties have not cited and we have not found any Texas case that interprets the term "bodily injury" in a CGL policy **[\*\*8]** to include or exclude alleged injury to human cells. In determining this issue of first impression, we look first to the language of the policies. Federal's policies provide:

> We will pay damages . . . because of:
>
> > **bodily injury** . . . caused by an **occurrence** . . .

to which this insurance applies.

This insurance applies . . . to **bodily injury** . . . which occurs during the policy period . . .

. . .

**Bodily injury** means bodily injury, sickness, disease or, if arising out of the foregoing, mental anguish or mental injury sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

. . .

**Occurrence** means an event, including continuous or repeated exposure to conditions which results in **bodily injury** . . . .

### 1. Samsung's Contentions

Samsung contends the complaints alleged a claim potentially covered by Federal's policies because they alleged plaintiffs suffered an "adverse cellular reaction" or "cellular dysfunction," also referred to as "biological injury," when they used Samsung's cell phones without a headset. Samsung contends these allegations were sufficient **[\*\*9]** to allege "bodily injury" within the meaning of Federal's policies. To support its argument, Samsung primarily relies on decisions of three other jurisdictions interpreting these same class action allegations as well as a line of asbestos cases.

Samsung argues that three of the four other jurisdictions that have considered these precise issues found that cellular level injuries constitute "bodily injury" for purposes of the insurer's duty to defend. 4 In *Northern Insurance Co. of New York v. Baltimore Business Communications, Inc.*, 68 F.App'x 414 (4th Cir. 2003) (per curiam) (not designated for publication), the U.S. Court of Appeals for the Fourth Circuit, applying Maryland law, concluded the allegations in the *Pinney* case asserted a claim for "bodily injury" because Maryland courts have consistently held that minute, cellular-level injuries constitute "bodily injury." *Id.* at 419 (citations omitted). In *Motorola, Inc. v. Associated Indemnity Corp.*, 878 So. 2d 824 (La. Ct. App. 2004), the court stated the basis of **[\*378]** the recovery sought was "the personal bodily integrity" of the class plaintiffs. *Id.* at 833-34 (noting **[\*\*10]** Louisiana interprets "bodily injury" liberally for purposes of insurance coverage). Finally, in *Voicestream Wireless Corp. v. Federal Insurance Co.*, 112 F.App'x 553 (9th Cir. 2004) (mem. opin.) (not designated for publication), the U.S. Court of Appeals for the Ninth Circuit also concluded the class actions alleged "bodily injury" for purposes of Federal's policies. The court, applying Washington law, noted that no Washington case had addressed whether cellular injury constituted "bodily injury" for purposes of a CGL policy. *Id.* But the court concluded "logic dictates that it is sufficient to allege injury to human cells." *Id.* at 555-56. It noted that the provisions of the insurance policies did not "explicitly *exclude* coverage for allegations of injury to human cells," and that to construe such injury as insufficient would be to read additional language into the policy. *Id.* It also noted that "allegations of cellular damage as constituting the precursors of cancer are sufficient to allege physical injury within the meaning of the policies." *Id.* at 556 n.3.

**FOOTNOTES**

4 Only *Zurich-American Insurance Co. v. Audiovox Corp.*, 294 A.D.2d 194, 741 N.Y.S.2d 692 (N.Y. App. Div. 2002) held the insurers had no duty to defend because, while the

class actions alleged the risk of physical harm, they "specifically disclaim seeking recovery for anything but the cost of the headphones," which the court characterized as economic damages not covered by the policies.

[**11] Samsung also analogizes the injury alleged in the underlying complaints to the injuries alleged in asbestos cases. Samsung relies on the Fifth Circuit's opinion in _Guaranty National Insurance Co. v. Azrock Industries, Inc._, 211 F.3d 239 (5th Cir. 2000) to support its argument that injury to cells is "bodily injury." In _Azrock_, the Fifth Circuit was asked to determine when an insurer's duty to defend its insured is triggered in asbestos-related personal injury claims under a CGL policy in Texas. The trial court concluded the injury must happen during the policy period and interpreted "injury" to be the date the asbestos-related condition or disease manifested or became identifiable. _Id. at 244_. The Fifth Circuit agreed the injury must occur during the policy period, but it disagreed with the district court's definition of "injury." Instead, the Fifth Circuit defined "injury" as "the subclinical tissue damage that occurs on inhalation of asbestos fibers." _Id._

### 2. Federal's Contentions

Federal argues the class actions did not allege "bodily injury" because they alleged only _risks_ to health associated with radiation exposure and did [**12] not allege any plaintiff suffered a diagnosable disease or discernible sickness from the exposure. Federal argues that "bodily injury" requires a "practical loss of functionality, not a mere 'cellular effect' [that resulted] in no detectable impairment, illness or disease." Absent discernible physical injury to the body, Federal argues there can be no "bodily injury" under its policies.

Federal also contends the class actions did not allege "bodily injury" because the class actions seek only economic damages measured by the cost of headsets; the class actions avoided pleading "bodily injury" because allegations of individualized injury would defeat certification as a class; membership in the class was predicated, not on harm, but on whether the person had purchased a cell phone without a headset and included both past and future purchasers of cell phones; and purchasers who had been diagnosed with a brain tumor or cancer of the eye were excluded from the class.

To support its argument, Federal primarily relies on _Trinity Universal Insurance Co. v. Cowan, 945 S.W.2d 819, 40 Tex. Sup. Ct. J. 583 (Tex. 1997)_ for the proposition that injury to human cells is not "bodily injury" for purposes [**13] of CGL policies. In _Cowan_, the court was asked to decide whether the plaintiff's allegation of mental anguish alone was sufficient to allege "bodily injury" [*379] for purposes of a standard homeowners' insurance policy. _Id. at 820_. The policy defined "bodily injury" as "bodily harm, sickness or disease." _Id._ Analyzing the meaning of "bodily," the court reasoned the term implied a physical injury, "not purely mental, emotional, or spiritual harm" and required "an injury to the physical structure of the human body." _Id. at 823_. _Cowan_ did not decide the issue of whether cellular injuries can be "bodily injury"--it held only that an allegation of mental anguish alone does not allege "bodily injury." In reaching this decision, the court considered decisions of other jurisdictions that analyzed language identical to that in the policy at issue there. The majority of those courts concluded that "bodily injury" did not include claims for purely mental injuries. And the court thought it "prudent to strive for uniformity" with decisions of other jurisdictions when the same insurance provisions would be interpreted in those jurisdictions. _Id. at 824_. [**14]

Federal also cites several cases that addressed whether derivative claims for mental anguish and loss of consortium are "bodily injury" for purposes of the respective liability policies, but we do not find those cases helpful to our analysis because they concerned statutes and issues not relevant here. _See, e.g., McGovern v. Williams, 741 S.W.2d 373, 375, 31 Tex. Sup. Ct. J. 121 (Tex. 1987)_ (wife's loss of consortium claim not "bodily injury" for purposes of minimum

limits in automobile liability policy because wife not involved in accident); *Miller v. Windsor Ins. Co.*, 923 S.W.2d 91, 96 (Tex. App.--Fort Worth 1996, writ denied) (same); *State Farm Lloyds v. Borum*, 53 S.W.3d 877, 884-85 (Tex. App.--Dallas 2001, pet. denied) (no duty to indemnify because unable to discern whether jury awarded damages for mental anguish, physical injury, or both, and policy excluded intentional conduct); *Nguyen v. State Farm Lloyds, Inc.*, 947 S.W.2d 320, 323 (Tex. App.--Beaumont 1997, writ denied) (no "bodily injury" because only injury alleged was mental anguish from defamation).

### 3. Analysis

Federal's policies define "bodily injury" as "bodily injury, [**15] sickness, disease" that occurs during the policy period. Although the policies do not further define "bodily" or "injury," the *Cowan* court concluded that [HN5] the term "bodily" implied a physical rather than mental injury and required "an injury to the physical structure of the human body." *Cowan*, 945 S.W.2d at 823. And cells are part of the physical structure of the body. [5] Additionally, "injury" means "hurt, damage, or loss sustained." WEBSTER'S THIRD NEW INT'L DICT. 1164 (1981). Consequently, we must determine whether the claim damage to cells is a covered claim.

#### FOOTNOTES

5 A "cell" is generally regarded as the smallest "unit of living structure capable of independent existence." STEDMAN'S MEDICAL DICT. 265 (25th ed. 1990). Additionally, "a cell is the fundamental, structural, and functional unit of living organisms." SLOANE-DORLAND ANN. MEDICAL-LEGAL DICT. 128 (West 1987).

Notably, jurisdictions that have interpreted these same or similar policy provisions have concluded "bodily injury" includes [**16] injury at the cellular level. See *Baltimore Business*, 68 F.App'x at 419; *Motorola*, 878 So. 2d at 837; *Voicestream Wireless Corp.*, 112 F.App'x at 555-56. Additionally, other jurisdictions have found injury to human cells sufficient to allege "bodily injury" in other contexts as well. See, e.g., *Ins. Co. of N. Am. v. Forty-Eight Insulations, Inc.*, 657 F.2d 814, 816 (6th Cir. 1981) (insurance coverage triggered at exposure because "bodily injury" in form of tissue damage occurred at or shortly after inhalation of asbestos fibers); *Keene Corp. v. Ins. Co. of N. Am.*, 215 U.S. App.D.C. 156, [*380] 667 F.2d 1034, 1047 (D.C. Cir. 1981) ("bodily injury" means "any part of the single injurious process that asbestos-related diseases entail"); *Chantel Assocs. v. Mount Vernon Fire Ins. Co.*, 338 Md. 131, 656 A.2d 779, 785-86 (Md. 1995) (exposure to lead resulting in "direct and indirect damage to cells, tissues, and organs" sufficient to allege "bodily injury"); *J.H. France Refractories Co. v. Allstate Ins. Co.*, 534 Pa. 29, 626 A.2d 502, 506 (1993) (describing injury to cells caused by [**17] exposure to asbestos and concluding "bodily injury" occurred in all stages of disease progression); *Zurich Ins. Co. v. Raymark Indus.*, 118 Ill. 2d 23, 112 Ill. Dec. 684, 514 N.E.2d 150, 159-60 (1987) ("bodily injury" occurred upon inhalation of asbestos even if disease manifests outside policy period). But see *Abex Corp. v. Maryland Cas. Co.*, 252 U.S. App. D.C. 297, 790 F.2d 119, 124-25 (D.C. Cir. 1986) (injury need not be manifest during policy period but must exist in fact and does not necessarily occur on exposure); *Eagle-Picher Indus. v. Liberty Mut. Ins. Co.*, 682 F.2d 12, 19 (1st Cir. 1982) (injury must manifest to trigger coverage).

Federal has presented no persuasive argument why injury to human cells should not constitute "bodily injury" under its CGL policies. And to adopt Federal's narrow construction that the injury must be diagnosable, identifiable, or a discernible physical injury to the body would require us to read language into the policy that is not there. See *Nat'l Union Fire Ins. Co.*, 939 S.W.2d at 142; *Gehan*, 146 S.W.3d at 843. Because injury to human cells is not clearly within [**18] or excluded by the policy provisions, we conclude the allegations

potentially state a covered claim.

### B. Do the Complaints Allege "Bodily Injury" and "Damages Because of Bodily Injury"?

We now turn to the question whether the *Pinney* and *Dahlgren* complaints alleged "bodily injury" and "damages because of bodily injury" under Federal's policies.

### 1. The *Pinney* Complaints

In their amended complaints, the *Pinney* class plaintiffs alleged:

> Defendants knew or should have known that their [cell phones] emit radio frequency radiation (RFR) from the antenna that causes an adverse cellular reaction and/or cellular dysfunction ("biological injury") through its adverse health effect on: calcium ion distribution across the cell membrane, melatonin production, neurological function, DNA (single and double strand breaks and chromosome damage), enzyme activities, cell stress and gene transcription, and the permeability of the blood brain barrier (collectively hereinafter sometimes described as "the health risk" and/or "the biological effects").
>
> . . .
>
> Each time a [cell phone] user makes or receives a call, a wireless signal is transmitted from the [**19] [cell phone] antenna to the nearest cell tower or from the nearest cell tower to the [cell phone] antenna, respectively, thereby exposing the [cell phone] user to RFR.
>
> . . .
>
> Each time plaintiff used the [cell phone] in the customary position, the antenna was located next to plaintiff[']s head.
>
> . . .
>
> Each time plaintiff used the [cell phone], he was exposed to RFR which emanated from the antenna, thereby subjecting plaintiff to RFR and, in the absence of a headset, to RFR[']s biological effects and the risks to human health arising therefrom.
>
> [*381] . . .
>
> At all relevant times Defendants knew or should have known that Class Plaintiffs are exposed to RFR while using a [cell phone] and as a result are at increased risk for biological injury.

The *Pinney* complaints also alleged Samsung knew plaintiffs incurred "biological damage and/or harm" from using its cell phones. The allegations explained that this "biological injury" included adverse health effects on, among other things, the cell membrane, melatonin production, and neurological function. The class plaintiffs detailed the research studies which showed that exposure to radiation produced [**20] changes in genetic material, a precursor to cancer, and resulted in changes in brain activity, reaction times, and sleep patterns.

The *Pinney* complaints alleged both present and future injuries. They alleged present "biological injury" each time plaintiffs used their cell phones without a headset. They also alleged the potential for future serious health problems. Federal argues the allegation in the *Pinney* complaints that "no individual issues of injury exist" means the *Pinney* plaintiffs expressly excluded any claim for "bodily injury" within the meaning of Federal's policies. We disagree. Instead, we interpret that phrase to mean the *Pinney* class plaintiffs have not alleged the *manifestation* of an injury, sickness, or disease presently, but have alleged their bodily cells were adversely affected from the exposure to radiation emitted by the cell phones.

An insurer's duty to defend is based on its policy provisions and the allegations in the pleadings. See Gehan, 146 S.W.3d at 842-43. Our focus is not whether the *Pinney* complaints have merit, but rather whether they have alleged facts which, if true, state a claim potentially covered by Federal's **[**21]** policies. *Id*. Because we previously concluded that injury to human cells constitutes "bodily injury" under Federal's policies, we further conclude the *Pinney* complaints potentially alleged a claim for "bodily injury."

Next, Samsung argues the *Pinney* complaints sought "damages because of bodily injury" obligating Federal to defend Samsung because they sought "compensatory damages including but not limited to amounts necessary to purchase a [cell phone] headset" for each class member. Samsung argues the relief sought--a cell phone headset--is clearly because of alleged exposure to radiation and constitutes "damages because of bodily injury." Federal argues the costs of cell phone headsets are economic losses and not a result of "bodily injury."

We look first to the definitions in Federal's policies, which provide:

> Damages because of **bodily injury** include damages claimed by any person or organization for care, loss of services or death resulting at any time from the **bodily injury**.

The policies do not further define "damages," "because of," or "care." The parties have not cited and we have not found any Texas case that interprets these phrases, **[**22]** so we give the terms their plain, ordinary meaning. See DeWitt County Elec. Co-op, Inc. v. Parks, 1 S.W.3d 96, 101, 42 Tex. Sup. Ct. J. 979 (Tex. 1999). "Because of" means "by reason of: on account of." WEBSTER'S THIRD NEW INT'L DICT. at 194. Additionally, the phrase "due to" is defined as "because of," *id*. at 699. In Utica National Insurance Co. v. American Indemnity Co., 141 S.W.3d 198, 47 Tex. Sup. Ct. J. 845 (Tex. 2004), the Texas Supreme Court construed the term "due to" in the context of CGL policy exclusions and concluded it is "a more direct type of causation [than but-for causation] that **[*382]** could tie the insured's liability" to the insured's conduct. *Id. at 203*.

As we did in determining the definition of "bodily injury," we also look to other jurisdictions that have considered these allegations and similar insurance provisions. In *Voicestream Wireless Corp.*, the Ninth Circuit held that the class actions sought "damages because of bodily injury" because the plaintiffs sought maximum legal and equitable relief and punitive damages, and the cost of a headset neither clearly fell within the policy or was clearly excluded by it. Voicestream Wireless Corp., 112 F.App'x at 556-57. **[**23]** In *Baltimore Business*, the Ninth Circuit reached the same conclusion. It noted that the relief sought by the *Pinney* plaintiffs, although not "traditional compensation," was "relief designed to address an already existing bodily injury"--harm suffered from radiation exposure. Baltimore Business, 68 Fed. App'x at 420-21. Because the court was unable to conclude with certainty that the class plaintiffs did not seek "damages because of bodily injury," it resolved the duty to defend in favor of the insured. *Id. at 422*. Finally, in *Motorola*, the Louisiana court of

appeals concluded that the form of the relief sought in the class actions, which was a headset or its monetary value, did "not change [the relief's] essential character or purpose, which is that of 'damages' in tort or products liability." Motorola, 878 So. 2d at 834. It reasoned that the relief sought was "predicated upon ongoing, repetitive injurious exposure to allegedly harmful conditions generated by Motorola's products already in use, as well as future injurious exposure from its products later sold" and held that the class actions "plainly seek such relief [**24] 'because of bodily injury.'" Id. at 831, 834. But see Zurich-Am. Ins. Co., 294 A.D.2d 194, 741 N.Y.S.2d 692 (where court held insurers had no duty to defend because, while class actions alleged risk of physical harm, they specifically disclaimed seeking recovery for anything but cost of headphones, which court characterized as economic damages not covered by policies).

The recent case of Ericsson, Inc. v. St. Paul Fire and Marine Insurance Co., 423 F. Supp. 2d 587 (N.D. Tex. 2006) (mem. op.) discusses these same class action complaints and issues. In Ericsson, the court concluded that the complaints were "ambiguous as to whether the class action plaintiffs suffer currently from adverse health effects or injury, or merely have an increased risk of future injury." Id. at 592. Citing the Ninth Circuit's Voicestream case, the court stated that its conclusions were "well-reasoned" and agreed that "biological and/or cellular effects" met the definition of "bodily injury" under the policies. Id. at 593. The court then addressed whether the cost of a headset alleged "damages because of bodily injury." Again the court [**25] concluded the policies were ambiguous because they did not specifically include nor did they clearly exclude damages in the form of the cost of a headset. Id. at 593-94. Because Texas law requires that doubt be resolved in favor of the duty to defend, the court concluded that St. Paul owed Ericsson a duty to defend in the class action lawsuits. Id. at 594.

We agree with the reasoning in these cases. The Pinney complaints alleged that exposure to radio frequency radiation from the use of cell phones without a headset caused an "adverse cellular reaction" or "cellular dysfunction" that caused "biological injury" and could result in serious health conditions in the future. The damages sought by the complaints--a cell phone headset for each class member who had purchased or leased a cell phone without one--are sought "on account of" or "by reason of" the plaintiffs' exposure to radiation from the cell phones. And the cost of [*383] a headset is not clearly within or excluded by the definition of "damages" in Federal's policies. Accordingly, we conclude the damages sought potentially state a claim for "damages because of bodily injury" triggering Federal's [**26] duty to defend the Pinney complaints.

## 2. The Dahlgren Complaint

The Dahlgren complaint asserted claims for false and misleading representations regarding the potential risks associated with the use of Samsung's cell phones and for unjust enrichment. It claimed that as a result of Samsung's conduct, the Dahlgren plaintiffs were injured by paying for cell phones that did not comport with the description provided by Samsung. The Dahlgren complaint expressly disclaimed damages for personal injury:

> This action does not assert personal injury claims, such as claims related to the harmful physical effects that result from any class member's use of [cell phones]. . . Plaintiff and the Class seek economic and related equitable relief.

The Dahlgren complaint sought statutory damages, punitive damages, attorney's fees, an injunction, and the imposition of a constructive trust for Samsung's allegedly ill-gained profits from which class plaintiffs might seek a refund of the purchase price of their cell phones.

But unlike the allegations in the *Pinney* complaints, the allegations in the *Dahlgren* complaint did not allege "bodily injury" [**27] within the meaning of Federal's policies, and, in fact, expressly excluded any such claim. Additionally, the alleged damages derived solely from Samsung's misrepresentations and not from a "bodily injury" covered by Federal's policies. Accordingly, we conclude the *Dahlgren* complaint did not assert facts which, if true, would provide coverage under this portion of Federal's policies. As a result, Federal did not have a duty to defend Samsung in the *Dahlgren* class action. We conclude the trial court did not err by granting summary judgment in favor of Federal with respect to the *Dahlgren* complaint and we affirm the trial court's judgment in part as it relates to *Dahlgren*. 6

### FOOTNOTES

6 Samsung argues that if Federal has a duty to defend it in the *Pinney* complaints, then it also has a duty to defend it in the *Dahlgren* complaint because all of the complaints were consolidated by the Judicial Panel on Multidistrict Litigation and transferred to the United States District Court for the District of Maryland in an action styled *In re Wireless Telephone Radio Frequency Emissions Products Liability Litigation*, No. 01-MDL-1421, 170 F. Supp. 2d 1356 (Jud. Pan. Mult. Lit. 2001). Samsung did not raise this issue below and has not preserved it for our review. See TEX. R. APP. P. 33.1(a)(1)(A).

### [**28] C. Does an Exclusion Apply?

Federal argues that even if the class actions alleged "bodily injury" and sought "damages because of bodily injury," it nevertheless is under no duty to defend Samsung because several "business risk" exclusions applied to preclude coverage. We disagree. The exclusions upon which Federal bases its argument are exclusions for "property damage to your product," "property damage to impaired property," 7 and damages for the recall of the product. The class actions did not contain allegations of property damage to the cell phones, damage to other ("impaired") property, or the recall of the cell phones. As a result, these exclusions do not apply to preclude coverage.

### FOOTNOTES

7 The policy defined "impaired property" as meaning "tangible property, other than **your product** or **your work**, that cannot be used or is less useful because . . . ."

### CONCLUSION

Applying the eight corners rule, we conclude Federal owes Samsung a duty to [*384] defend in the *Pinney* complaints. We reverse [**29] the judgment of the trial court and render judgment that Federal owes Samsung a duty to defend in the *Farina, Pinney, Gilliam*, and *Gimpelson* class actions. As a result of our decision, we also conclude the trial court's ruling on Federal's duty to indemnify in the *Pinney* complaints was premature. See *Gehan Homes, Ltd.*, 146 S.W.3d at 837. Accordingly, we reverse that part of the trial court's judgment awarding summary judgment in favor of Federal regarding the *Farina, Pinney, Gilliam*, and *Gimpelson* class actions on the duty to indemnify and remand for further proceedings consistent with this opinion.

We further conclude the trial court correctly ruled that Federal did not owe Samsung a duty to defend in the *Dahlgren* class action. Accordingly, we affirm that part of the trial court's judgment awarding summary judgment in favor of Federal regarding the *Dahlgren* lawsuit.