1  LATHAM & WATKINS LLP
       Stephen Stublarec (Bar No. 69451)
2      Paul T. Llewellyn (Bar No. 216887)
   505 Montgomery Street, Suite 2000
3  San Francisco, California  94111-6538
   Telephone:  (415) 391-0600
4  Facsimile:  (415) 395-8095
   Email:  Paul.Llewellyn@lw.com
5
   Attorneys for Plaintiff
6  PLANTRONICS, INC.

7

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10                        SAN JOSE DIVISION

11

12  PLANTRONICS, INC., a Delaware            CASE NO. C07-06038 PVT
    corporation,
13                                           **PLAINTIFF PLANTRONICS, INC.'S**
                      Plaintiff,             **OPPOSITION TO ATLANTIC MUTUAL**
14                                           **INSURANCE COMPANY'S MOTION TO**
              v.                             **DISMISS COMPLAINT**
15
    AMERICAN HOME ASSURANCE
16  COMPANY, a New York corporation; THE     Date:  March 18, 2008
    INSURANCE COMPANY OF THE STATE           Time:  10:00 a.m.
17  OF PENNSYLVANIA, a Pennsylvania          Place: Courtroom 5
    corporation; ATLANTIC MUTUAL             Trial Date:  None Set
18  INSURANCE COMPANY, a New York
    corporation,                             (Honorable Patricia V. Trumbull)
19
                      Defendants.
20

21

22

23

24

25

26

27

28

## TABLE OF CONTENTS

**PAGE**

I.     INTRODUCTION ................................................................................................. 1

II.    LEGAL STANDARD............................................................................................ 3

III.   ARGUMENT ........................................................................................................ 4

     A.     The Atlantic Mutual Policy Provides Coverage For The
         Underlying Actions................................................................................... 4

     B.     A Plaintiff's Strategic Choice to Disclaim Certain Damages Does
         Not Change the Coverage Under the Policy .......................................... 5

     C.     In Similar Cases Courts Have Found a Duty to Defend ...................... 10

IV.    CONCLUSION.................................................................................................... 12

i

1

<u>**TABLE OF AUTHORITIES**</u>

2

<u>**PAGE(S)**</u>

3

**CASES**

4

*188 LLC v. Trinity Indus. Inc.,*
   300 F.3d 730 (7th Cir. 2002) ............................................................. 9

5

*American Title Ins. Co. v. Lacelaw Corp.,*
   861 F.2d 224 (9th Cir. 1988) ............................................................. 8

6

7

*Armstrong v. Davis,*
   275 F.3d 849 (9th Cir. 2001) ............................................................. 9

8

*Balistreri v. Pacifica Police Department,*
   901 F.2d 696 (9th Cir. 1988) ......................................................... 4, 10

9

10

*California Insurance Guarantee Association v. Superior Court,*
   231 Cal. App. 3d 1617 (1991) ........................................................... 8

11

*David Kleis, Inc.,*
   37 Cal. App. 4th at 1044 ............................................................... 3, 8

12

13

*Dobrin v. Allstate Insurance Co.,*
   897 F.Supp. 442 (C.D. Cal. 1995) ...................................................... 6

14

*Federal Insurance Company v. Samsung Electronics America, Inc.,*
   2007 Tex. LEXIS 1023 ................................................................... 11

15

16

*Gilligan v. Jamco Development Corporation,*
   108 F.3d 246 (9th Cir. 1997) ............................................................. 4

17

*Gray v. Zurich Insurance Co.,*
   65 Cal. 2d 263 (1966) .................................................................. 4, 7

18

19

*Greenman v. Yuba Power Products, Inc.,*
   59 Cal. 2d 57 (1963) ....................................................................... 6

20

*Hurley Construction Co. v. State Farm Fire & Casualty Co.,*
   10 Cal. App. 4th 533 (1992) ............................................................. 9

21

22

*In re Fordson Engineering Corp.,*
   25 B.R. 506 (Bankr. E.D. Mich. 1982) ............................................... 8

23

*Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit,*
   507 U.S. 163 (1993) ......................................................................... 3

24

25

*Montrose Chemical Corp. v. Superior Court,*
   6 Cal. 4th 287 (1993) .................................................................... 4, 9

26

*Motorola Inc. v. Associated Indemnity Corp. et al.,*
   878 So. 2d 824 (La. Ct. App. 2004) .............................................. 3, 7, 10

27

28

*Northern Ins. Co. of New York v. Baltimore Business Communications, Inc.*,
    68 Fed. Appx. 414 (4th Cir. 2003)........................................................ 3, 10

*Samsung Electronics America, Inc. v. Federal Insurance Company*,
    202 S.W.3d 372 (Tex. App. 2006)........................................................ 10, 11

*Sicor Ltd. v. Cetus Corp.*,
    51 F.3d 848 (9th Cir. 1995) ................................................................. 9

*Stoner v. Santa Clara County Office of Education*,
    502 F.3d 1116 (2007)........................................................................ 3

*Vandenberg v. Superior Court*,
    21 Cal. 4th 815 (1999) ...................................................................... 6

*Voicestream Wireless Corporation v. Fed. Ins. Co.*,
    112 Fed. Appx. 553 (9th Cir. 2004)..................................................... 3, 10

*Zellmer v. Acme Brewing Company*,
    184 F.2d 940 (9th Cir. 1950) ............................................................. 6

**RULES**

Fed. R. Civ. P. 12(b)(6)........................................................................ 2

**TREATISES**

Couch, Insurance (3d ed. 1997) ............................................................ 7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

PLAINTIFF'S OPPOSITION TO ATLANTIC MUTUAL'S MOTION TO DISMISS

## I.    INTRODUCTION

On November 29, 2007, Plantronics filed this declaratory relief action against the three defendant insurance companies, American Home Assurance Company ("American Home"), The Insurance Company of the State of Pennsylvania ("ICSOP"), and Atlantic Mutual Insurance Company ("Atlantic Mutual"). The action arose out of the denial of insurance coverage by defendants for seven putative class actions that have been filed against Plantronics ("underlying actions").[1] *See* Complaint, Exs. F-M.

Atlantic Mutual issued a Commercial General Liability policy to Plantronics, which was effective from June 30, 2002, to June 30, 2003. *See* Compl., Ex. E. This policy obligates Atlantic Mutual, *inter alia*, to defend Plantronics against any suit seeking damages because of bodily injury, and to pay those sums that Plantronics becomes legally obligated to pay as damages because of bodily injury. *Id.* p. 5. The underlying actions in this case arise out of the harm allegedly suffered by plaintiffs by their use of "Bluetooth Headsets"[2] marketed, manufactured and distributed by Plantronics. There is no question that, by alleging that plaintiffs suffered "bodily injury" in the form of noise induced hearing loss, the underlying actions allege claims that are within the coverage defined by these provisions. For example, the *Schiller* complaint alleges that "noise induced hearing loss is the slow loss of hearing caused by too much noise. *Schiller* complaint ¶ 13, attached as Ex. F to complaint. The same complaint also alleges that Plantronics "risk[ed] the health and safety of millions of consumers," that plaintiffs "have

---

[1] The seven actions are: *Schiller, et al. v. Plantronics, Inc.,* filed in Los Angeles County Superior Court on October 10, 2006; *Edwards, et al. v. Plantronics, Inc.,* filed in the U.S. District Court for the Middle District of Florida on October 17, 2006; *Raines, et al. v. Plantronics, Inc.,* filed in the U.S. District Court for the Central District of California on October 20, 2006; *Wars, et al. v. Plantronics, Inc.,* filed in the U.S. District Court for the Eastern District of Texas, Marshall Division, on November 14, 2006; *Cook, et al. v. Plantronics, Inc.,* filed in the U.S. District Court for the Eastern District of Virginia on January 10, 2007; *Pierce, et al. v. Plantronics, Inc.,* filed in the U.S. District Court for the Eastern District of Arkansas on February 8, 2007; and *In re: Bluetooth Headset Products Liability Litigation,* a consolidated class action complaint filed in the U.S. District Court for the Central District of California on July 9, 2007.

[2] These headsets permit wearers to utilize a mobile telephone without holding the telephone next to the face and without the necessity of wires connecting the telephone to the headset.

1    each been directly and proximately injured by the conduct of" Plantronics and that they "have

2    suffered injury in fact" as a result of the alleged conduct of Plantronics.  *Id.* ¶¶ 30, 47, 52.  The

3    six other underlying actions contain comparable allegations.  *See* Compl., Exs. G-M.  Thus, in

4    simple, straightforward terms, these actions allege that Plantronics caused the plaintiffs bodily

5    injury because sound from its headsets hurt the hair cells in their inner ears, which resulted in

6    noise induced hearing loss.  There is likewise no question that the plaintiffs seek damages based

7    on the facts alleged in their complaints.  *See, e.g., Schiller* complaint, ¶¶ 30, 34(i), 39, 55, 84 and

8    prayer for relief; *see also* Compl., Exs. G-M.  Upon service of the underlying actions, Plantronics

9    tendered them to Atlantic Mutual for defense and indemnity.  Compl., ¶ 18.  By letter dated

10   October 5, 2007, Atlantic Mutual declined Plantronics' tender.  *Id.*  Thereafter, Plantronics filed

11   this declaratory relief action.

12       Faced with almost identical allegations, two of the three defendants, American Home and

13   ICSOP answered Plantronics' complaint.[3]  On February 4, 2008, however, Atlantic Mutual

14   moved to dismiss the complaint pursuant to rule 12(b)(6) of the Federal Rules of Civil

15   Procedure.[4]  In its motion, Atlantic Mutual concedes that its policy provides coverage for "bodily

16   injury."  Mot. at 3.  Atlantic Mutual also concedes that the plaintiffs in the underlying actions

17   allege potential hearing loss from the use of plaintiff's products.  Mot. at 5.  But it seeks to avoid

18   its obligations under the policy solely on the basis that plaintiffs in the underlying actions do not

19   presently claim to seek damages for physical injury.  Mot. at 5-9.

20       Atlantic Mutual cannot avoid its duty to defend Plantronics based on a tactical allegation

21   that the putative class members do not currently seek damages for physical injury which has

22   already occurred.  A plaintiff's strategic choice—to disclaim (perhaps temporarily) certain

---

[3]    American Home and ISCOP filed their answer over two weeks after Atlantic Mutual filed its
       motion to dismiss.  After reading Atlantic Mutual's motion, American Home and ICSOP
       apparently concluded that there are insufficient grounds to move to dismiss the complaint.

[4]    In its Notice of Motion, Atlantic Mutual argues that the complaint should be dismissed on the
       grounds that "it fails to state facts constituting a claim for relief *against Plantronics*."  Mot.
       at 1 (emphasis added).  Atlantic Mutual is correct to note that the complaint does not state a
       claim for relief against Plantronics—Plantronics is the plaintiff in this action.

1 damages in order to facilitate certification of a class—does not change the essential facts alleged

2 in the underlying complaints.  Moreover, plaintiffs could amend their pleadings at any time in

3 order to explicitly seek damages for bodily injury.[5]  Faced with very similar circumstances such

4 as those presented here, the courts have reached the conclusion that the allegations of the

5 complaint were at least potentially covered by the policies.  *See, e.g., Voicestream Wireless*

6 *Corporation v. Fed. Ins. Co.*, 112 Fed. Appx. 553 (9th Cir. 2004); *Motorola Inc. v. Associated*

7 *Indemnity Corp., et al.*, 878 So. 2d 824 (La. Ct. App. 2004); *Northern Ins. Co. of New York v.*

8 *Baltimore Business Communications, Inc.*, 68 Fed. Appx. 414 (4th Cir. 2003).

9     Atlantic Mutual has provided no basis to wrongfully deprive Plantronics of the benefit of

10 the insurance for which it paid the premiums that Atlantic Mutual has enjoyed, and certainly no

11 basis to dismiss plaintiff's complaint on the pleadings, before the parties have had the benefit of

12 factual development of the underlying actions.  Atlantic Mutual's motion should be denied.

13 **II.    LEGAL STANDARD**

14     In considering a motion to dismiss, the Court must accept all material allegations of the

15 complaint as true.  *See Leatherman v. Tarrant County Narcotics Intelligence & Coordination*

16 *Unit*, 507 U.S. 163, 164 (1993).  A plaintiff's claims should not be dismissed on the pleadings

17 unless "it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim

18 which would entitle him to relief."  *Stoner v. Santa Clara County Office of Education*, 502 F.3d

19 1116, 1120 (2007) (emphasis added).  As Atlantic Mutual concedes, a court should only dismiss

20 a complaint on the pleadings when there is either a "lack of a cognizable legal theory" or "the

21 absence of sufficient facts alleged under a cognizable legal theory."  Mot. at 4, citing *Balistreri v.*

---

23
24
25
26
27
28

[5] Plantronics has filed a motion to stay this action pending resolution of the underlying actions, which is set for hearing on March 18, 2008, the same day as the hearing on Atlantic Mutual's motion to dismiss.  As set forth in that motion, in circumstances such as those presented here, where there are questions of insurance coverage related to underlying litigation, the insured is not required to wage a "two front war" at the same time.  *See, e.g., David Kleis, Inc. v. Superior Court*, 37 Cal. App. 4th 1035 (1995).  That reasoning makes particular sense here, since factual development is still ongoing in the underlying actions.  The Court should grant Plantronics' motion for a stay, and postpone ruling on this motion, until the underlying actions have been resolved.

3

1    *Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1988).  Given this standard, "[i]t is

2    axiomatic that the motion to dismiss for failure to state a claim is viewed with disfavor and is

3    rarely granted." *Gilligan v. Jamco Development Corporation*, 108 F.3d 246, 249 (9th Cir. 1997)

4    (citations omitted).

5    **III.    ARGUMENT**

6         **A.    The Atlantic Mutual Policy Provides Coverage For The Underlying Actions**

7              It has long been settled that an insurer "must defend a suit which *potentially* seeks

8    damages within the coverage of the policy." *Gray v. Zurich Insurance Co.*, 65 Cal. 2d 263, 275

9    (1966) (original emphasis); *see also Montrose Chemical Corp. v. Superior Court*, 6 Cal. 4th 287,

10   299 (1993) (holding that "the insured is entitled to a defense if the underlying complaint alleges

11   the insured's liability for damages *potentially* covered under the policy, or if the complaint might

12   be amended to give rise to a liability that would be covered under the policy"(original

13   emphasis).[6]  In this case, the allegations of the complaint certainly give rise to a potential for

14   damages within the coverage of the policy.

15             Atlantic Mutual issued a Commercial General Liability policy naming Plantronics as the

16   insured, which was effective from June 30, 2002, to June 30, 2003 (the "policy").  *See* Compl.,

17   Ex. E.  This policy obligates Atlantic Mutual, *inter alia*, to "pay those sums that [Plantronics]

18   becomes legally obligated to pay as damages because of 'bodily injury'. . . to which this

19   insurance applies" *Id.*, p. 5 (Coverage A – Bodily Injury and Property Damage Liability).[7]

20   Atlantic Mutual also agreed to "defend [Plantronics] against any 'suit' seeking those damages."

21   *Id.*  A "suit" is defined to include a civil proceeding in which damages because of "bodily injury"

---

22

23   [6]    In *Montrose*, the Supreme Court reviewed the "familiar principles governing adjudication of
       the insurer's duty to defend."  It reaffirmed the rules established in *Gray* that the duty to
24     defend is broader than the duty to indemnify, that a liability insurer must defend a suit which
       potentially makes claims within the coverage of the policy, and that facts extrinsic to the
25     allegations of the complaint may give rise to a duty to defend when they reveal a possibility
       that the claim may be covered by the terms of the insurance policy.  6 Cal. 4th at 295-96.

26   [7]    The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a
27     person, including mental anguish or death resulting from any of these at any time."  Compl.,
       Ex. E, p. 15.

28

4

1    to which the insurance applies, are alleged. *Id.*, p. 17.

2          The underlying actions in this case arise out of the harm allegedly suffered by plaintiffs

3    by the use of "Bluetooth Headsets" marketed, manufactured and distributed by Plantronics.

4    Plaintiffs allege that they suffered "bodily injury" in the form of noise induced hearing loss from

5    the use of Plantronics' headsets.  For example, the *Schiller* complaint alleges that "noise induced

6    hearing loss is the slow loss of hearing caused by too much noise.  Hearing loss happens when

7    too much noise *hurts the hair cells in the inner ear.*"  *Schiller* complaint ¶ 13, attached as Ex. F

8    to complaint (emphasis added).  The same complaint further alleges that "[t]here is no treatment,

9    no medicine, no surgery, and no device which can correct hearing once damaged by noise."  *Id.*

10    The *Schiller* complaint also alleges that Plantronics "risk[ed] the health and safety of millions of

11    consumers," that plaintiffs "have each been directly and proximately injured by the conduct of"

12    Plantronics and that they "have suffered injury in fact" as a result of the alleged conduct of

13    Plantronics.  *Id.* ¶¶ 30, 47, 52.  There is likewise no question that the plaintiffs seek damages

14    based on the facts alleged in their complaints.  *See, e.g., Schiller* complaint, ¶¶ 30, 34(i), 39, 55,

15    84 and prayer for relief.  The six other underlying actions contain comparable allegations.  *See*

16    Compl., Exs. G-L.  Thus, in simple, straightforward terms, these actions allege that Plantronics

17    caused the plaintiffs bodily injury because sound from its headsets hurt the hair cells in their

18    inner ears, which resulted in noise induced hearing loss.  There is no question that the underlying

19    actions allege claims that are within the coverage provisions of Atlantic Mutual's policy.  At an

20    absolute minimum, Plantronics has alleged a "cognizable legal theory" to survive dismissal on

21    the pleadings.

22          **B.      A Plaintiff's Strategic Choice to Disclaim Certain Damages Does Not Change**

23                **the Coverage Under the Policy**

24          In an effort to avoid its obligations under the policy, Atlantic Mutual argues that

25    Plantronics "cannot become *legally obligated to pay damages* because of bodily injury."  Mot. at

26    5 (original emphasis).  In support of this assertion, Atlantic Mutual points to a single sentence

27    from the underlying actions that plaintiffs "do not [presently] seek damages for physical injury

28    which has already occurred to Class members, and thus individualized determination as to

5

1    causation related to bodily injury already suffered will not be required." Mot. at 5-7; *Schiller*

2    complaint ¶ 35.[8]

3         Atlantic Mutual is wrong for several reasons. To begin with, a third-party plaintiff's

4    strategic choice—to disclaim seeking certain damages in order to facilitate certification of a

5    class—does not change the essential facts alleged in the complaint. In *Dobrin v. Allstate*

6    *Insurance Co.*, 897 F.Supp. 442 (C.D. Cal. 1995), the plaintiff "did what he could to avoid

7    alleging a personal injury that would require [the insurer] to defend [the insured] … [and] drafted

8    the cross-complaint specifically so that there would be no coverage." Nevertheless, the court

9    ruled that the insurer had a duty to defend because the *substance* of the action included a

10   potential claim for bodily injury damages. The court reasoned that "as a matter of policy,

11   however, the insurer cannot avoid coverage *simply because the complainant seeks a tactical*

12   *advantage in the lawsuit*. . . . A mere statement by the complainant that he does not intend to

13   make such a claim is insufficient to establish as a matter of law that such a claim does not exist."

14   *Id.* at 444 (emphasis added).[9] For coverage purposes, it does not matter that the damages are

15   sought under legal theories such as breach of warranty. *See, e.g.,* Compl., Ex. F pp. 23-25.

16   Bodily injury claims are recoverable for breach of warranty. *See, e.g., Zellmer v. Acme Brewing*

17   *Company*, 184 F.2d 940, 945 (9th Cir. 1950); *Greenman v. Yuba Power Products, Inc.*, 59 Cal.

18   2d 57 (1963). Moreover, a third-party's choice of legal theory does not control the coverage

19   afforded by a policy. *See Vandenberg v. Superior Court*, 21 Cal. 4th 815, 840 (1999)

20   ("Predicating coverage upon an injured party's choice of remedy or the form of action sought is

21   not [California] law. . . . Instead, courts must focus on the nature of the risk and the injury, in

22   _____

23   [8]    The other underlying actions contain identical or similar allegations. *See* Compl., Exs. G-L.

24   [9]    Atlantic Mutual attempts to distinguish *Dobrin* by pointing out that the insurer learned in a
       deposition that the plaintiff had drafted his complaint in an effort to avoid triggering

25   insurance coverage. Nevertheless, the court found that the insured could not rely on extrinsic
       evidence, and that the facts stated in the complaint did seek damages for a claim potentially

26   covered by the policy. Mot. at 8. Atlantic Mutual then argues that "[i]n contrast, this motion
       does not involve any extrinsic evidence. *Id.* It is unclear what point Atlantic Mutual is

27   trying to make, since the *Dobrin* Court did not rely on the extrinsic evidence in making its
       ruling.

28

1  light of the policy provisions, to make that determination"); *see also* Couch, Insurance (3d ed.

2  1997) § 126:3 p. 126-28 ("[W]hether a particular claim falls within the coverage afforded by a

3  liability policy is not affected by the form of the legal proceeding. Accordingly, the legal theory

4  asserted by the claimant is immaterial to the determination of whether the risk is covered"). At a

5  minimum, the extent of the third-party plaintiffs' disclaimer is uncertain, which means that it

6  should not be used to deprive Plantronics of the benefit of its coverage.

7        Atlantic Mutual also ignores the decision in *Motorola Inc. v. Associated Indemnity Corp.*

8  *et al.*, 878 So. 2d 824 (La. Ct. App. 2004), where the same result was reached under

9  circumstances similar to those present here. That case arose out of allegations of injury caused

10  by radio frequency radiation from the use of cell phones. The court noted that "[t]he artful

11  crafting of the class action plaintiffs' pleadings, presumably motivated to aid in maintaining class

12  action status, has not served to substantially alter the factual allegations upon which the limited

13  relief sought is based. The form of the relief sought in the Class Actions does not change its

14  essential character or purpose. . . ." *Id.* at 834.

15        The reasoning of these cases is directly applicable here. Notwithstanding the third-party

16  plaintiffs' purported disclaimer, the *facts* alleged in the complaint describe "bodily injury" and

17  seek recovery of damages based on those facts. It would be singularly inappropriate to deprive

18  Plantronics of the benefit of the policy for which it paid premiums because of the third-party

19  plaintiffs' tactical decision to disclaim personal injury damages in order to bolster their motion

20  for class certification. As the court stated in *Gray v. Zurich Insurance Company*, *supra*, 65 Cal.

21  2d at 276, "Defendant cannot construct a formal fortress of the third party's pleadings and retreat

22  behind its walls. The pleadings are malleable, changeable and amendable."

23        For the same reason, it would be even more inappropriate to deprive Plantronics of the

24  benefits of its insurance at the pleading stage. Factual development in the underlying actions is

25  still ongoing, and the third-party plaintiffs could amend their complaints at any time. For

26  example, it is unclear what plaintiffs will allege if their tactical disclaimer is unsuccessful and

27  class certification is nevertheless denied. If that should occur, it would presumably obviate the

28  third-party plaintiffs' incentive to disclaim personal injury damages and provide the contrary

7

1    incentive to recover bodily injury damages based on the facts alleged in their complaints.  At a

2    minimum, this constitutes a potential for coverage that requires denial of Atlantic Mutual's

3    motion.

4        Atlantic Mutual's motion illustrates why an insured should not be required to fight a

5    "two-front war" against third-party plaintiffs and its insurers at the same time.  As the courts

6    have noted, a "stay of a declaratory relief action to determine coverage is often in order when the

7    coverage question turns on facts to be litigated in the underlying third party action . . . ."  *David*

8    *Kleis, Inc.*, 37 Cal. App. 4th at 1044.  In this case, questions of insurance coverage to be

9    determined in this action are related to issues that will be litigated in the underlying actions.  In

10   circumstances such as those presented here, the courts prevent a litigant from having to fight a

11   "two-front war" at the same time through the granting of a stay.  *See, e.g., California Insurance*

12   *Guarantee Association v. Superior Court*, 231 Cal. App. 3d 1617, 1628 (1991) ("[w]here, as

13   here, the question of coverage turns upon one or more factual issues which will necessarily be

14   resolved in the underlying action, then it was entirely appropriate for the trial court to stay the

15   declaratory relief action pending resolution of those issues.")  Plantronics is entitled to the

16   benefit of the factual development  in the underlying actions—including the development of the

17   third-party allegations of bodily injury—without having its insurer attempt to capitalize on the

18   third-party plaintiffs' (perhaps temporary) tactical choices to escape its obligations under the

19   policies.

20       Atlantic Mutual argues that "statements disclaiming damages for physical injury

21   contained in pleadings constitute binding judicial admissions."  Mot. at 7.  Atlantic Mutual

22   fundamentally misunderstands the doctrine of judicial admissions.  The doctrine only applies to

23   *factual assertions* and the admissions are only binding upon the *party who made them. See, e.g.,*

24   *In re Fordson Engineering Corp.*, 25 B.R. 506, 509 (Bankr. E.D. Mich. 1982) ("Judicial

25   admissions are formal admissions in the pleadings which have the effect of withdrawing a fact

26   from issue and dispensing wholly with the need for proof of the fact."); *American Title Ins. Co.*

27   *v. Lacelaw Corp.,* 861 F.2d 224, 226 (9th Cir. 1988) ("Factual assertions in pleadings and

28   pretrial orders, unless amended, are considered judicial admissions conclusively binding on the

8

1   party who made them."). A statement that a party does not presently seek damages for physical

2   injury is neither an admission of fact, nor is it binding on Plantronics which did not make the

3   statement. Moreover, even if such a statement did constitute a "judicial admission," which it

4   does not, Atlantic Mutual's argument ignores the fact that the underlying actions could be

5   amended at any time. "[A]n amended pleading supersedes the original." *Armstrong v. Davis*,

6   275 F.3d 849, 878 n. 40 (9th Cir. 2001). Thus, although "a statement in a complaint may serve

7   as a judicial admission," the admission is no longer binding if the party subsequently amends the

8   pleading. *Sicor Ltd. v. Cetus Corp.*, 51 F.3d 848, 859 (9th Cir. 1995); *see also, e.g., 188 LLC v.*

9   *Trinity Indus. Inc.*, 300 F.3d 730, 736 (7th Cir. 2002) ("When a party has amended a pleading,

10  allegations and statements in earlier pleadings are not considered judicial admissions.")

11          Atlantic Mutual argues than an insured may not trigger the duty to defend be speculating

12  about extraneous facts regarding potential liability or ways in which the claimants might amend

13  its complaint in the future, citing, for example, *Hurley Construction Co. v. State Farm Fire &*

14  *Casualty Co.,* 10 Cal. App. 4th 533 (1992). *Hurley* involved a general contractor who allegedly

15  overcharged for the repair and restoration of four properties. The insurance company, for whom

16  Hurley furnished repair services, filed suit against Hurley for fraud, negligent misrepresentation,

17  and breach of contract. *Id.* at 536-37. In such circumstances, the court found that the action

18  "involved no potential claim for property damage or bodily injury." *Id.* at 538-39. *Hurley*

19  involved a situation where there was clearly no coverage under the insurance policy, and the

20  court was being invited to engage in rank speculation over possible amendments in the future.

21  This is not the situation here, where the underlying complaints not only include the potential for

22  bodily injury, they actually *allege* bodily injury. In this case, it is neither speculative nor far-

23  fetched to think that the third party plaintiffs' tactical objectives may change in the course of the

24  underlying litigation. Atlantic Mutual's argument also ignores the later ruling of the California

25  Supreme Court that an "insured is entitled to a defense if the underlying complaint alleges the

26  insured's liability for damages potentially covered under the policy, *or if the complaint might be*

27  *amended to give rise to a liability that would be covered under the policy.*" *Montrose Chemical*

28  *Corp. v. Superior Court*, 6 Cal. 4th 287, 299 (1993) (emphasis added).

9

1    Atlantic Mutual also ignores the series of cases similar to the present situation, where the

2    courts have reached the conclusion that the insurers had a duty to defend.  For example, in

3    *Northern Ins. Co. of New York v. Baltimore Business Communications, Inc.*, 68 Fed. Appx. 414

4    (4th Cir. 2003), the court held that the insurer had the duty to defend its insured against claims

5    alleging bodily injuries from such radiation emissions caused by using cell phones.  Although the

6    plaintiffs stated that they were not seeking compensation for any personal injury as a result of

7    using the cell phones, the court held that the unspecified compensatory damages sought by the

8    plaintiffs flowed from their alleged bodily injuries.  *See also Voicestream Wireless Corporation*

9    *v. Fed. Ins. Co.*, 112 Fed. Appx. 553 (9th Cir. 2004) (holding that plaintiffs who alleged that

10   radio frequency radiation from cell phones caused bodily injury and requested the cost of

11   headsets as their compensatory damages constituted requests for "damages because of bodily

12   injury" and, therefore, triggered the insurer's duty to defend); *Motorola Inc. v. Associated*

13   *Indemnity Corp. et al.*, 878 So. 2d 824 (La. Ct. App. 2004) (holding that the recovery of money

14   allegedly owed by the cell phone manufacturer to alleviate plaintiffs' allegedly harmful exposure

15   to radio frequency radiation had to be characterized as falling within the broad category of

16   claims for "damages because of bodily injury").  These cases, which involved situations quite

17   similar to this one, all reached the conclusion that the allegations of the complaints were at least

18   potentially covered by the policies.[10]

19       **C.    In Similar Cases Courts Have Found a Duty to Defend**

20       In support of its argument that this action should be dismissed at the pleading stage,

21   Atlantic Mutual relies primarily on a single authority from a Texas intermediate appellate court,

22   *Samsung Electronics America, Inc. v. Federal Insurance Company*, 202 S.W.3d 372 (Tex. App.

23   2006).  Atlantic Mutual fails to inform the Court that the lower court's ruling is pending review

24

25   [10] Since the underlying actions clearly contain allegations triggering the "bodily injury"
     provisions of the policy, Plantronics has not addressed the "property damage" and "personal
26   and advertising injury" provisions of the policy at this time.  In order to defeat a motion to
     dismiss, Plantronics need only allege a single "cognizable legal theory," which Plantronics
27   clearly has done.  *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir.
     1988).

28

1    by the Texas Supreme Court, and therefore Atlantic Mutual's reliance on this Texas authority is

2    questionable at best.  *See Federal Insurance Company v. Samsung Electronics America, Inc.*,

3    2007 Tex. LEXIS 1023 (order granting petition for review by the Texas Supreme Court, dated

4    November 30, 2007).

5        Atlantic Mutual also fails to inform the Court that the court in *Samsung* ruled that the

6    insurer *had* a duty to defend.  In *Samsung*, which involved a motion for summary judgment, not

7    a motion to dismiss, a manufacturer of cellular telephones was named in a series of class actions

8    complaints seeking damages from the use of its cell phones, the "*Pinney* complaints" and the

9    "*Dahlgreen* complaint."  The *Pinney* complaints alleged "biological injury" from the use of

10   Samsung's cellular telephones, for example alleging that "[a]t all relevant times Defendants

11   knew or should have known that Class Plaintiffs are exposed to RFR while using a [cell phone]

12   and as a result are at increased risk for biological injury."  *Id.* at 381.  They sought

13   "compensatory damages including but not limited to amounts necessary to purchase a [cell

14   phone] headset" for each class member.  *Id.*  Based on reasoning squarely applicable here, the

15   court ruled that the insurer had a duty to defend because the third-party complaint sought

16   damages for bodily injury:

17           The *Pinney* complaints alleged that exposure to radio frequency
             radiation from the use of cell phones without a headset caused an
18           "adverse cellular reaction" or "cellular dysfunction" that caused
             "biological injury" and could result in serious health conditions in
19           the future.  The damages sought by the complaints – a cell phone
             headset for each class member who had purchased or leased a cell
20           phone without one – are sought "on account of" or "by reason of"
             the plaintiffs' exposure to radiation from the cell phones. . . .
21           Accordingly, we conclude the damages sought potentially state a
             claim for relief for "damages because of bodily injury" triggering
22           Federal's duty to defendant the *Pinney* complaints.

23   *Id.* at 382-83.  By contrast, in the *Dahlgreen* complaint, plaintiffs alleged they were injured by

24   *paying for cell phones* that did not comport with the description provided by Samsung.  Unlike

25   the allegations in the *Pinney* complaints, the *Dahlgreen* complaint did not allege "bodily injury,"

26   claiming "[t]his action does not assert bodily injury claims, such as claims related to the harmful

27   physical effects that result from any class member's *use* of cell phones."  *Id.* at 383.  Since the

28   alleged damages derived solely from Samsung's misrepresentations and not from a "bodily

                                              11

1  injury" the court concluded that the trial court did not err by granting summary judgment in favor

2  of the insurer with respect to the *Dahlgreen* complaint. *Id.*

3      The allegations in the underlying actions in this case are far more similar to the *Pinney*

4  complaints than the *Dahlgreen* complaint. For example, plaintiffs allege that "millions of

5  consumers have had their hearing put at risk by [Plantronics'] headsets." Consol. Complaint ¶ 5,

6  attached as Ex. L to complaint. They allege harmful physical effects from the use of Plantronics'

7  products in the form of "noise induced hearing loss" and that "many people are unaware that

8  noise induced hearing loss is occurring until it is too late." *Id.* ¶ 25. They also allege that

9  Plantronics' products "produce unsafe decibel levels under normal consumer usage" (Compl.,

10  Ex. F, ¶ 27) and that plaintiffs "have each been directly and proximately injured by the conduct

11  of" Plantronics (Compl., Ex. J, ¶ 53), that they have "suffered injury in fact" as a result of the

12  alleged conduct of Plantronics (Compl., Ex. F, ¶ 39), and that "physical injury . . . has occurred

13  to Class members." (Compl., Ex. F, ¶ 35).

14  **IV.    CONCLUSION**

15      There is no question that Plantronics has alleged sufficient facts to survive a motion to

16  dismiss. For the foregoing reasons, Atlantic Mutual's motion to dismiss the complaint should be

17  denied.

18  Dated:  February 26, 2008                Respectfully submitted,

19                                           LATHAM & WATKINS LLP
20                                           Stephen Stublarec
                                             Paul T. Llewellyn

21
22                                           By: _____/s/_____
                                             Paul T. Llewellyn
                                             Attorneys for Plaintiff
23                                           Plantronics, Inc.

24  SF\645502.1

25

26

27

28

12