Denis J. Moriarty (Bar No. 106064)
e-mail: dmoriarty@hbblaw.com
Christopher Kendrick (Bar No. 162869)
email: ckendrick@hbblaw.com
HAIGHT BROWN & BONESTEEL LLP
555 South Flower Street, Forty-Fifth Floor
Los Angeles, California 90071
Telephone: 213.542.8000
Facsimile: 213.542.8100

Attorneys for Defendants AMERICAN HOME ASSURANCE COMPANY and THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PLANTRONICS, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN HOME ASSURANCE COMPANY, a New York corporation; THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a Pennsylvania corporation; ATLANTIC MUTUAL INSURANCE COMPANY, a New York corporation,<br><br>Defendants. | Case No. 5:07-cv-06038-PSG<br><br>**DEFENDANTS AMERICAN HOME ASSURANCE COMPANY'S AND THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA'S TRIAL BRIEF**<br><br>Date: July 28, 2014<br>Time: 9:30 a.m.<br>Ctrm: 5 |

Pursuant to the Court's Standing Order for Civil Practice Defendants American Home Assurance Company and The Insurance Company of the State of Pennsylvania (ICSOP) hereby submit their trial brief as follows:

## TABLE OF CONTENTS

Page

1. INTRODUCTION ........ 1
2. STATEMENT OF RELEVANT FACTS ........ 2
3. PLANTRONICS' DEFENSE COSTS WERE UNREASONABLE ........ 3
4. THERE WERE NO COVERED DAMAGES PAYABLE ........ 8
5. THE POLICIES' ALAE ENDORSEMENTS OBLIGATE PLANTRNONICS TO REIMBURSE DEFENSE COSTS ........ 16
6. AMERICAN HOME AND ICSOP DID NOT WAIVE AND ARE NOT ESTOPPED TO RELY ON THE ALAE ENDORSEMENTS ........ 18
7. CONCLUSION ........ 24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aerojet-General Corp. v. Transport Indemnity Co.* 17 Cal.4th 38, 58 (1997) .......... 6

*AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 825 (1990) .......... 12, 13

*Amato v. Mercury Casualty Co.,* 53 Cal.App.4th 825, 831 (1997) .......... 5

*Amelco Elec. v Thousand Oaks,* 27 Cal.4th 228, 243 (2002) .......... 7

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.,* 7 Cal.4th 503 (1994) .......... 6, 24

*Bank of the West v. Superior Court,* 2 Cal.4th 1254, 1268 (1992) .......... 12

*Brandon & Tibbs v. Kevorkian Accountancy,* 226 Cal.App.3d 442, 455 (1990) .......... 6, 7

*Buss v. Superior Court,* 16 Cal.4th 35, 50, fn. 12 (1997) .......... 20, 23

*California Teachers Assoc. v. Governing Board,* 145 Cal.App.3d 735, 746 (1983) .......... 19

*Ceresino v. Fire Ins. Exch.,* 215 Cal.App.3d 814, 822 (1989) .......... 11

*Chase v. Blue Cross of Calif.,* 42 Cal.App.4th 1142, 1157 (1996) .......... 21

*Cohen v. Metropolitan Life Ins. Co.,* 32 Cal.App.2d 337, 347 (1939) .......... 19, 20

*Cutler-Orosi Unified v. Tulare County,* 31 Cal.App.4th 617, 629-630 (1994) .......... 12

*DeWitt v. Monterey Ins. Co.,* 204 Cal.App.4th 233, 246 (2012) .......... 11

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177-178 (1974) .......... 12

*Elliano v. Assurance Co. of America,* 3 Cal.App.3d 446, 450-451 (1970) .......... 22

**Page(s)**

*Fujimoto v. Western Pioneer Ins. Co.*, 86 Cal.App.3d 305, 310, fn. 3 (1978) .......... 20

*Giddings v. Industrial Indem. Co.*, 112 Cal.App.3d 213, 219 (1980) .......... 12

*Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* 66 Cal.App.3d 101 (1977) .......... 6

*Glendale Fed. Sav. & Loan v. Marina View Heights*, 66 Cal.App.3d 101 (1977) .......... 20, 24

*Goorberg v. Western Assurance Company*, 50 Cal. 510, 519 (1907) .......... 19

*Gray Cary Ware & Freidenrich v. Vigilant Insurance Co.* 114 Cal.App.4th 1185, 1189 (2004) .......... 6

*Green v Smith*, 261 Cal.App.2d 392, 398 (1968) .......... 7, 19

*Helfand v. National Union Fire Ins. Co.*, 10 Cal.App.4th 869, 891-892 (1992) .......... 13

*Hogan v. Midland*, 3 Cal.3d 553 (1970) .......... 11

*In Re: Bluetooth Headset Products Liability Litigation*, Central District of California Case No. 07-ml-01822 .......... 3

*Insurance Co. of the West v. Haralambos Beverage Co.*, 195 Cal.App.3d 1308, 1320 (1987) .......... 20

*Jones v. GN Netcom*, 654 F.3d 935, 939 (9th Cir. 2011) .......... 8, 15

*Lewis Jorge Constr. v Pomona Unified,* 34 Cal.4th 960, 986 (2004) .......... 7

*Loughan v. Harger-Haldeman*, 184 Cal.App.2d 495 (1916) .......... 21

*Lu v Grewal*, 130 Cal.App.4th 841, 849 (2005) .......... 7

*Marie Y. v. General Star*, 110 Cal.App.4th 928, 960-961 (2003) .......... 3, 6

*Mayes v Sturdy N. Sales, Inc.*, 91 Cal.App.3d 69, 85 (1979) .......... 7

**Page(s)**

*Michaelian v. State Comp. Ins. Fund*, 50 Cal.App.4th 1093, 1111-1112 (1996) .......... 22

*Miller v. Elite Ins. Co.*, 100 Cal.App.3d 739 (1980) .......... 22

*New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) .......... 15

*Pegram v. Hergrich*, 530 U.S. 211, 227 N. 8, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000) .......... 15

*Plotnik v. Meihaus*, 208 Cal.App.4th 1590, 1603 (2012) .......... 18

*Prudential-LMI v. Superior Court*, 51 Cal.3d 674, 689-690 (1990) .......... 22

*Pruyn v. Agricultural Excess*, 36 Cal.App.4th 500 (1995) .......... 11

*Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009) .......... 11

*Royal Thrift & Loan Co. v County Escrow, Inc.*, 123 Cal.App.4th 24, 33 (2004) .......... 7

*Sandrez v. Superior Court*, 203 Cal.App.3d 1391 (1988) .......... 22

*Schaefer/Karpf Productions v. CNA Ins. Cos.*, 64 Cal.App.4th 1306, 1313 (1998) .......... 11

*Shaffer v Debbas*, 17 Cal.App.4th 33, 114 (1993) .......... 7

*Solomon v. Union Oil*, 16 Cal.2d 229, 237 (1940) .......... 6

*Southern California Acoustics v. Holden*, 71 Cal.2d 719 (1969) .......... 22

*State of California v. Pacific Indemnity Co.*, 63 Cal.App.4th 1535, 1549 (1998) .......... 5

*Valle de Oro Bank, N.A. v Gamboa*, 26 Cal.App.4th 1686, 1691 (1994) .......... 7

*Waller v. Truck Ins. Exch., Inc.*, 11 Cal.4th 1, 31 (1995) .......... 21, 22

**Page(s)**

*Walters v. Marler*, 83 Cal.App.3d 1 (1978) .......... 6

*Zurich Ins. Co. v. Killer Music Inc.* 998 F.2d 674, 680 (9th Cir. 1993) .......... 6

**Statutes**

*Civil Code*
- Section 1511 .......... 20
- Section 1598 .......... 20
- Section 1641 .......... 13
- Section 2778 .......... 6
- Section 3300 .......... 5
- Section 3358 .......... 6
- Section 3359 .......... 5, 7

*Code of Civil Procedure*
- Section 384(b) .......... 11
- Section 1858 .......... 24

*Insurance Code*
- Section 22 .......... 6

**Other Authorities**

Restatement (2d) of Contracts § 350 (1981) .......... 7

**Rules**

Rule 12(b)(6) .......... 3

## MEMORANDUM OF POINTS AND AUTHORITIES

1.

## INTRODUCTION

This case has been reduced to a dispute over the costs of Plantronics' defense of the underlying class action Bluetooth litigation, and the costs to actually settle the underlying Bluetooth litigation. The Court's May 30, 2014 ruling on the parties' cross-motions for summary judgment correctly eliminated any tort claim for bad faith. Thus, there is no issue of general damages for "wrongful conduct." The case is a straightforward contract claim. Plantronics and the Defendant insurers are sophisticated business entities and this is now simply a question of contract damages.

An insurer's obligation is limited to *reasonable* attorney's fees, even where there is a breach of contract. The underlying Bluetooth case was pure billing machine, which the District Court called "meritless or near meritless." (Exhibit 123, p. DTX641). Yet, Plantronics claims over a million dollars for defending a lawsuit that was settled at the pleading stage, before Plantronics' motion to dismiss was even heard. The claim is patently unreasonable. In the action below Judge Fischer concluded as much for the plaintiffs' side, reducing their fee award by 71% to a total of $232,729 *for all seven plaintiffs' firms, collectively suing three manufacturers*. Plantronics' claim for defense fees is equally unreasonable.

Plantronics also claims a further $403,055.69 for its share of the costs of funding notice to the class members about the risk of noise induced hearing loss, plus its share of the cy pres payments and incentive payments to the class representatives. But those are not covered damages, and a failure to defend does not convert noncovered payments into covered damages.

Finally, Plantronics contends that the Defendant insurers waived and/or are estopped to rely on their insurance policy SIR and deductible endorsements, which make Plantronics responsible for reimbursing a proportionate share of the defense

costs when no covered damages result. However, a failure to defend does not translate to an automatic waiver of policy provisions under California law.

## 2.

## STATEMENT OF RELEVANT FACTS

The Insurance Company of the State of Pennsylvania (ICSOP) issued policy no. GL 359-79-82, in effect from 6/30/03 to 6/30/04, and policy no. GL 382-89-16, in effect from 6/30/04 to 6/30/05, to named insured Plantronics, Inc. American Home Assurance Company issued policy no. GL 382-94-49, in effect from 6/30/05 to 6/30/06, and policy no. GL 721-75-41, in effect from 6/30/06 to 6/30/07, to named insured Plantronics, Inc. The American Home and ICSOP insurance policies issued to Plantronics are pled in and attached to Plantronics' first amended complaint. (See Exhibits 101, 102, 103 and 104, pp. DTX00001-DTX00303)

Plantronics was sued in seven underlying class actions. The operative complaints from those actions are pled in and attached to Plantronics' first amended complaint as exhibits E-L. (Case no. 5:07-cv-06038 Document 94-5 to Document 94-12.) When the class action Bluetooth lawsuits were tendered to American Home and ICSOP in 2007, the claims were denied on the grounds that none of the complaints alleged actual bodily injury. Plantronics argued that the denials were in breach of contract and bad faith, since the underlying Bluetooth complaints all contained allegations regarding the effect of noise-induced hearing loss, allegedly raising a potential for damages because of bodily injury.

On May 30, 2014, this Court ruled on the parties' cross-motions for summary judgment as follows: "Because allegations in the underlying actions traced covered claims that could be added through amendment ... the insurers were duty-bound to defend Plantronics.... Because Defendants withheld policy benefits from Plantronics based on a legitimate dispute of their liability under California law, no reasonable jury could find Defendants acted in bad faith."

Based on that ruling, Plantronics now contends that American Home and ICSOP are obligated to reimburse all moneys Plantronics spent in defending itself against the Bluetooth lawsuits, along with the costs spent to give notice of the class action settlement and the other payments made to effectuate the settlement.

**3.**

**PLANTRONICS' DEFENSE COSTS WERE UNREASONABLE**

Where an insurer is liable for breach of contract to defend (but not indemnify), and where the insurer is not guilty of tortious bad faith, and where the insured in fact retains counsel to defend the claim, the proper measure of damages is the reasonable attorneys' fees and costs incurred by the insured in defense of the claim. *Marie Y. v. General Star*, 110 Cal.App.4th 928, 960-961 (2003).

The principle has limits. Plantronics claims that it incurred $1,137,739.30 in defense fees for a case that involved virtually no defense. This is based in part on Plantronics' agreement to pay its lawyers as much as $1025 per hour for "defending" a case that was settled before a Rule 12(b)(6) motion was even heard. It also involved massive overbilling. The fees and costs incurred by Plantronics were patently unreasonable.

That is not surprising, given what took place below. Six class action lawsuits named Plantronics, but Plantronics never appeared in any of them, because the cases were then consolidated into a single multidistrict action, *In Re: Bluetooth Headset Products Liability Litigation*, Central District of California Case No. 07-ml-01822. Less than a month later, a first amended consolidated complaint was filed by plaintiffs on August 3, 2007 and on September 25, 2007 a second amended complaint was filed. Shortly thereafter, on October 26, 2007, an order was filed by Judge Fischer staying all proceedings and suspending all deadlines in the case.

Plantronics joined with two other defendants in filing a motion to dismiss on May 7, 2008 (Exhibit 121) which was opposed by the plaintiffs on June 6, 2008, but it was never heard. All the parties then entered into settlement negotiations in

October 2008 and on January 16, 2009, jointly filed a motion for settlement approval of a class settlement. The settlement hearing was held on February 9, 2009 and Judge Fischer issued an order approving settlement 10 days later on February 19, 2009. (Exhibit 125)

Thus, the sum total of Plantronics' litigation involved filing an answer in the consolidated action and joining in a motion to dismiss. The real action, such as it was, came later, when class objectors objected to the $800,000 in attorneys fees provided for the class plaintiffs' counsel in the settlement agreement Plantronics negotiated. That dispute went to the Ninth Circuit and back down to the District Court before the settlement was finally approved, subject to a massive cut in the plaintiffs' attorneys fees award.

Judge Fischer issued a memorandum order on July 31, 2012 substantially reducing the attorney's fees from $800,000 down to $232,729.05, the equivalent of a 71% reduction in legal fees. (Exhibit 123) The reductions resulted from a wide variety of improper billing practices including: (1) block-billed time entries; (2) vaguely described time entries; (3) mistaken time entries; (4) multiple attendance by lawyers at the same events; (5) unnecessary travel time; (6) overstaffing of the case on certain tasks; (7) summer associate time and (8) time spent preparing declarations in support of the motion for payment of attorneys' fees. The Court found that the fees were "exorbitant" and concluded that: "[t]he success actually obtained could (and should) have been achieved at a far lower cost." (Exhibit 123)

Those same problems infect Plantronics' claim here. At the time of the negotiated settlement, the case was still in the pleading stages. No discovery had been conducted. No motions had been heard. No depositions had been taken. The settlement had been negotiated in the early stages of the case. It must be noted that not only did Judge Fischer reduce the plaintiffs' $800,000 attorney fee claim to $232,729, *but that was the collective amount for seven different law firms representing all of the class plaintiffs from 23 cases against all three defendant*

*manufacturers.* Yet, Plantronics claims it incurred $1,137,739.30 defending itself alone. That claim is excessive and unreasonable.

Plantronics takes the position that American Home and ICSOP cannot challenge the defense costs, because the insurers declined to defend Plantronics. However, that misstates the applicable rule. The question is not waiver, but burden of proof:

> "Generally, the insured, as the party seeking relief, carries the burden of proving the amount of costs incurred in defense of an action. [] By contrast, in the exceptional case, wherein the insurer has breached its duty to defend, it is the insured that must carry the burden of proof on the existence and amount of the ... expenses, which are then presumed to be reasonable and necessary as defense costs, and it is the insurer that must carry the burden of proof that they are in fact unreasonable or unnecessary." *State of California v. Pacific Indemnity Co.*, 63 Cal.App.4th 1535, 1549 (1998).

"Where an insured mounts a defense at the insured's own expense following the insurer's refusal to defend, the usual contract damages are the costs of the defense." *Amato v. Mercury Casualty Co.,* 53 Cal.App.4th 825, 831 (1997). Contract damages are based on "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom." Cal. Civ. Code, § 3300. "Damages must, in all cases, be reasonable, and where an obligation of any kind appears to create a right to unconscionable and grossly oppressive damages, contrary to substantial justice, no more than reasonable damages can be recovered." Cal. Civ. Code, § 3359. Contract damages serve to put the party in as good a

position as it would have been had performance been rendered as promised. *Brandon & Tibbs v. Kevorkian Accountancy,* 226 Cal.App.3d 442, 455 (1990).

Every single case addressing the issue agrees. Even where there is a breach of the duty to defend, as long as there is no bad faith an insurer only becomes liable for *reasonable* attorney's fees incurred for the defense. *Marie Y., supra.*; *Zurich Ins. Co. v. Killer Music Inc.* 998 F.2d 674, 680 (9th Cir. 1993) ("Zurich is also liable for attorneys' fees as provided in the policy or as 'incurred in good faith, and in the exercise of a reasonable discretion' in defending the action." (Quoting Cal. Civ. Code, § 2778); *Gray Cary Ware & Freidenrich v. Vigilant Insurance Co.* 114 Cal.App.4th 1185, 1189 (2004) ("the duty to defend includes providing competent counsel and paying all reasonable and necessary costs"); *Aerojet-General Corp. v. Transport Indemnity Co.* 17 Cal.4th 38, 58 (1997) (the duty to defend "requires the incurring of reasonable and necessary defense costs").

This is simply a matter of contract law. In California, insurance policies are treated as contracts. *Solomon v. Union Oil*, 16 Cal.2d 229, 237 (1940); Cal. Ins. Code §22. As such, insurance policies are subject to the same rules applicable to other contracts. *Walters v. Marler,* 83 Cal.App.3d 1 (1978). Contract damages seek to proximate the agreed-upon performance, placing the plaintiffs, as far as possible, in the same position they would have been in had the contract been performed, but not giving them more than they would have received had the promisor performed. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503 (1994); *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* 66 Cal.App.3d 101 (1977).

The reasonableness limitation is also consistent with California Civil Code section 3358, which embodies the general principle that the damages awarded for breach of contract cannot be excessive: "Except as provided by statute, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides." It is a corollary of

the rule in Civil Code section 3359 that contract damages must be reasonable. The nonbreaching party's damages cannot exceed what that party would have received had the contract been fully performed. "This limitation of damages for breach of a contract 'serves to encourage contractual relations and commercial activity by enabling parties to estimate in advance the financial risks of their enterprise.'" *Lewis Jorge Constr. v Pomona Unified,* 34 Cal.4th 960, 986 (2004); *Amelco Elec. v Thousand Oaks*, 27 Cal.4th 228, 243 (2002); *Brandon & Tibbs v George Kevorkian Accountancy*, 226 Cal.App.3d 442, 468 (1990).

Plantronics' position also ignores its own responsibility to mitigate its damages. The rule that contract damages should put the aggrieved party in as good a position as full performance would have done is coupled with the requirement for mitigation of damages, so that the compensatory goal is achieved with minimal cost to the defendant. *Valle de Oro Bank, N.A. v Gamboa*, 26 Cal.App.4th 1686, 1691 (1994); Restatement (2d) of Contracts § 350 (1981). "The doctrine of mitigation of damages holds that 'a plaintiff who suffers damage as a result of either a breach of contract or a tort has a duty to take reasonable steps to mitigate those damages and will not be able to recover for any losses which could have been thus avoided.'" *Shaffer v Debbas*, 17 Cal.App.4th 33, 114 (1993); *Royal Thrift & Loan Co. v County Escrow, Inc.*, 123 Cal.App.4th 24, 33 (2004).

A plaintiff cannot recover damages that are avoidable through the exercise of ordinary care and reasonable efforts. *Lu v Grewal*, 130 Cal.App.4th 841, 849 (2005); *Mayes v Sturdy N. Sales, Inc.,* 91 Cal.App.3d 69, 85 (1979). Under the doctrine of mitigation of damages the injured party has an affirmative obligation to make reasonable efforts to avoid continuing or enhanced damages. This is an obligation to avoid an unwarranted enhancement of damages "through passive indifference or stubborn insistence upon a conceived legal right." *Green v Smith*, 261 Cal.App.2d 392, 398 (1968).

At trial, American Home and ICSOP will present expert testimony and documentary evidence demonstrating that of the $1,137,739.30 in fees and costs Plantronics is seeking as damages for breach of contract, $445,319.85 constituted unreasonable and unnecessary charges.

**4.**

**THERE WERE NO COVERED DAMAGES PAYABLE**

Plantronics also alleged that American Home and ICSOP were obligated to indemnify Plantronics as well: "WHEREFORE, Plantronics prays for judgment against defendants as follows: ... c. Pursuant to the Policies, ICSOP and American Home have the duty to indemnify Plantronics for any sums that Plantronics became liable to pay in the underlying actions...." (Prayer, Plantronics' First Amended Complaint.) (Exhibit 117)

However, there were no damages payable. The underlying Bluetooth lawsuits were fully resolved with no covered relief, as set forth in the resulting settlement agreement. The resolution was the subject of a published decision wherein a Ninth Circuit Court of Appeals panel laid out both the operative pleading and the resulting settlement as follows: "Plaintiffs sought actual damages in the amount paid for the product, which they claimed to be between $70 and $150 per headset, along with injunctive relief, restitution, punitive damages, attorneys' fees and costs." *Jones v. GN Netcom*, 654 F.3d 935, 939 (9th Cir. 2011). (Exhibit 124)

Thus, according to the Ninth Circuit: "The complaint did not state a claim for personal injury but asserted economic injury." *Id.* Indeed, the resulting settlement agreement (Exhibit 126) confirmed that fact. The settlement agreement provided that:

> 3.1 Defendants agree to:
>
> a. post warnings containing additional acoustic safety information ... on their respective web sites....

b. provide the additional acoustic safety information set forth in Exhibit D in product manuals and/or packaging....

3.2 Within thirty (30) days after the Effective Date, and upon approval by the Court, Defendants will pay a total of $100,000 to fund the following organizations, selected by Plaintiffs and their counsel, in the specified amounts: The University of Tennessee College of Medicine, Center for Independent Living Research ("CILR"), $31,666.67; the National Hearing Conservation Association ("NHCA"), $31,666.67; the American Speech and Hearing Association ("ASHA"), $31,666.66; and the Greater Los Angeles Agency on Deafness ("GLAD"), $5,000....

* * *

3.4 Defendants will pay all costs associated with disseminating notice of the Settlement to the Class ("Notice Costs"), the form of such notice to be agreed upon by Defendants and Class Counsel....

3.5 Defendants will pay to Representative Plaintiffs incentive payments in an amount to be approved by the Court, not to exceed $12,000 in total payments....

3.6 Defendants will pay Class Counsel attorneys' fees in an amount to be approved by the Court, not to exceed $800,000 for Class Counsel.

3.7 Defendants will pay documented costs to Class Counsel in an amount approved by the Court, not to exceed $38,000. If Notice Costs are less than $1.2 million, then Defendants will pay Class Counsel additional

> documented costs up to $12,000.... In no event shall Defendants be required to pay Class Counsel more than $50,000 in total documented costs.
>
> * * *
>
> 3.10 Although the Actions seek general damages based on allegations that the use of Bluetooth Headsets poses a risk of noise induced hearing loss ... the Settled Claims do not include any claims, causes of action, lawsuits, actions, administrative proceedings, and/or demands for personal injury, including any available remedies ('Personal Injury Claims'). The Parties agree that: (1) any person participating in the Settlement as a Settlement Class Member has not released any Personal Injury Claim or any right to pursue any Personal Injury Claim in a separate litigation; (2) the release of Settled Claims may not be interpreted as a bar to any separate litigation by a Settlement Class Member for any Personal Injury Claim; and (3) in no event shall the release of Settled Claims be used for the purpose of defeating a Settlement Class Member's Personal Injury Claim. Notwithstanding this provision, Paragraph 3.10, or any other provision in this Agreement, the parties agree that the Settled Claims include any and all claims for rescission, restitution, diminution in value, disgorgement, purchase price and other economic damages based on the cost of a Bluetooth Headset."

Plantronics contends that if an insurer wrongfully denies a defense, the insured is free to negotiate the best possible settlement consistent with his or her

interests. But at best, such a settlement only raises an evidentiary presumption in favor of the insured with respect to the existence and amount of the insured's liability. *Pruyn v. Agricultural Excess*, 36 Cal.App.4th 500 (1995).

More importantly, the court in *Hogan v. Midland*, 3 Cal.3d 553 (1970), held that an insurer who declines to defend an action on the ground that a claim is not within coverage is only bound as to material findings of fact essential to the resulting judgment – the insurer is not bound as to issues not necessarily adjudicated in the prior action, and can still present any coverage defenses not inconsistent with the judgment against the insured. *Id.* at 564-565. Other cases also agree that an insurer's refusal to defend an action is no bar to its raising coverage defenses to indemnity. *Schaefer/Karpf Productions v. CNA Ins. Cos.*, 64 Cal.App.4th 1306, 1313 (1998); *Ceresino v. Fire Ins. Exch.*, 215 Cal.App.3d 814, 822 (1989); *DeWitt v. Monterey Ins. Co.*, 204 Cal.App.4th 233, 246 (2012). Thus, the insurer Defendants are still entitled to dispute coverage for any part of the settlement not coming within their insurance policies.

In fact, none of the settlement was covered by the policies. Cy pres is a doctrine that permits a court to award any unallocated, unclaimed, or undeliverable funds from a class action settlement or judgment to a non-profit organization. A nonprofit organization is deemed an appropriate recipient of cy pres funding if distribution to the organization would "benefit the class or similarly situated persons." Cal. Code Civ. Proc., § 384(b). An incentive award to a class representative compensates for time, effort and the financial and reputational risks of the litigation, but does not otherwise change the character of the overall award; it merely represents a bigger share as compensation for the trouble of being the named plaintiff. *Rodriguez v. West Pub. Corp.*, 563 F.3d 948 (9th Cir. 2009). Those designations do not change the fundamental character of the payment. The settlement payments were for economic harm, restitution and equitable relief, and

specifically excluded "claims, causes of action, lawsuits, actions, administrative proceedings, and/or demands for personal injury, including any available remedies."

The law is well-settled in California that "strictly economic losses like lost profits, loss of goodwill, loss of the anticipated benefit of a bargain, and loss of an investment, do not constitute damage or injury to tangible property covered by a comprehensive general liability policy." *Giddings v. Industrial Indem. Co.,* 112 Cal.App.3d 213, 219 (1980). Thus, "[n]o coverage and no duty to defend exists[s] if the [underlying action] potentially s[eeks] recovery only for damage to intangible economic interests and property rights." *Id.*

To the extent that the settlement involved the agreement to perform certain actions, such as setting up a website or adding warnings to packaging, those would not come within the requirement for "damages." *Cutler-Orosi Unified v. Tulare County*, 31 Cal.App.4th 617, 629-630 (1994). Nor would the agreement to pay a portion of the notice of settlement to class members. A plaintiff must pay for cost of notice to class as part of ordinary burden of financing his own lawsuit suit, and those were additional economic costs voluntarily assumed by Plantronics under the settlement agreement. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-178 (1974). Plantronics' voluntary assumption of an obligation to pay the notice costs did not transform that payment into an item of covered damages.

CGL policies obligate the insurer to indemnify for sums the insured becomes legally obligated to pay to a third party as "damages." However, "damages" is interpreted in its "ordinary and popular sense." *AIU Ins. Co. v. Superior Court,* 51 Cal.3d 807, 825 (1990). "Damages" means compensation in money recovered by a party for loss or detriment suffered through acts of another. *Id.* at 834. Making restitution, complying with injunctions or other forms of nonmonetary relief are not damages within the meaning of liability insurance. *Bank of the West v. Superior Court*, 2 Cal.4th 1254, 1268 (1992). Nor were the fee award or the agreement to pay costs of notice to the class members regarding settlement covered damages;

there was no component of the settlement constituting "damages because of bodily injury or property damage."

Plantronics' contention to the contrary reads the terms "damages" "bodily injury" and "property damage" out of the contracts, rendering them mere surplusage. But it is a fundamental rule of construction that a contract is to be construed as a whole, with each part to be given meaning. Cal. Civ. Code, § 1641. And a policy may not be interpreted in a manner that renders a policy provision "meaningless." *AIU Ins. Co. v. Superior Court*, 51 Cal.3d 807, 827-828 (1990) (see also *Helfand v. National Union Fire Ins. Co.*, 10 Cal.App.4th 869, 891-892 (1992) (no construction that would render policy provisions "meaningless and redundant")).

None of the components of the settlement flowing out of the Bluetooth litigation were within liability insurance coverages for damages because of bodily injury, property damage (or personal and advertising injury). Consequently, the insurer Defendants have no obligation to indemnify Plantronics for those amounts.

Plantronics has admitted as much. In its motion to dismiss in the underlying Bluetooth litigation, Plantronics and its co-defendants repeatedly asserted that the plaintiffs were not alleging any actual bodily injury or physical injury, but were instead alleging a "risk" of future hearing loss. They asserted and argued that the "risk" of future hearing loss "is based on nothing more than a hypothetical economic injury." Plantronics and its co-defendants also asserted that the underlying plaintiffs did not allege the necessary cognizable "injury" or "damages."

American Home and ICSOP contend the statements made in Plantronics' motion to dismiss (Exhibit 121) and Plantronics' reply brief (Exhibit 122) constitute judicial admissions barring Plantronics from claiming that the ultimate settlement in the Bluetooth case was covered by the insurance policies in this coverage litigation.

Plantronics stated: "Plaintiffs claim that Bluetooth headsets may pose a 'risk' of hearing loss, and are therefore less valuable than plaintiffs thought they were at the time of their purchases. For obvious tactical reasons, plaintiffs disclaim any

damages for any actual hearing loss and they do not assert any tort or warranty claims." (Exhibit 121, p. DTX00579) Plantronics also asserted: "instead, plaintiffs seek to recover for amorphous potential future injuries under the guise of state consumer protection statutes." (Exhibit 121, p. DTX00579)

In its motion to dismiss, Plantronics challenged the underlying plaintiffs' Article III standing to bring their lawsuit "because plaintiffs' damages claim – that defendants failed to disclose the Bluetooth headsets may possibly cause noise – induced hearing loss in some people at some time in the future – is based on nothing more than a hypothetical economic injury." (Exhibit 121, p. DTX00579)

Plantronics further argued that "even if plaintiffs are deemed to have Article III standing, they do not allege the requisite cognizable 'injury' or 'damages' under the California and Illinois statutes upon which their claims are based." Further, "plaintiffs do not seek damages for any cognizable physical injury. Instead, for tactical reasons, plaintiffs purport to base their claims on alleged 'monetary injury'." (Exhibit 121, p. DTX00580)

Plantronics charged that "because plaintiffs here have failed to adequately allege injury in fact, they lack standing." (Exhibit 121, p. DTX00587) Plantronics further alleged that "an injury in fact is an invasion of a legally protected interest that is 'concrete and particularized' and 'actual or imminent' not conjectural or hypothetical.' Here, plaintiffs allege that there is a purported 'risk' of hearing loss, that they are aware of this risk, and that they have either thus stopped using or limited their use of the Bluetooth headsets. Such hypothetical, nebulous economic 'injuries' are insufficient to confer Article III standing." (Exhibit 121, p. DTX00587)

Again in reply (Exhibit 122), Plantronics charged that "notwithstanding their efforts to recast their alleged 'damage,' plaintiffs have not suffered a present economic injury, and a theoretical economic injury based on a hypothetical risk of personal injury is insufficient to create standing under Article III or the state's

statutes under which plaintiffs sue." And "plaintiffs' alleged 'economic injury' is based *solely* on their fear that they cannot safely use any Bluetooth headset without a potential risk of NIHL [noise induced hearing lose]." (Exhibit 122, p. DTX00617)

The foregoing verbatim quotes from Plantronics' pleadings in the underlying action establish that the settlement of the action did not involve damages covered by the Defendants' insurance policies. Further, Plantronics' statements demonstrate the disingenuous nature of Plantronics' legal arguments in this case. While Plantronics argued to American Home and ICSOP that the underlying plaintiffs' class-action complaints affirmatively alleged "bodily injury" sufficient to trigger the defendants' duty to defend, Plantronics was simultaneously asserting and arguing in the consolidated MDL litigation that the plaintiffs lacked standing because they did not allege any bodily injury or physical injury. This was also recognized by the Ninth Circuit when it said: "The complaint did not state a claim for personal injury but asserted economic injury, alleging plaintiffs would not have purchased their Bluetooth headsets but for defendants' willful false advertising. Plaintiffs sought actual damages in the amount paid for the product, which they claimed to be between $70.00 and $150.00 per headset, along with injunctive relief, restitution, punitive damages, attorneys' fees and costs." *Jones v. GN Netcom*, 654 F.3d 935, 939 (9th Cir. 2011).

Judicial estoppel prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase. *New Hampshire v. Maine*, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001) quoting *Pegram v. Hergrich*, 530 U.S. 211, 227 N. 8, 120 S. Ct. 2143, 147 L. Ed. 2d 164 (2000). Plantronics has taken inconsistent positions on the issue of whether the underlying plaintiffs' complaints alleged bodily injury or physical injury, and the bottom line is that none of the components of the Bluetooth settlement constituted covered damages under the insurers' policies.

5.

**THE POLICIES' ALAE ENDORSEMENTS OBLIGATE PLANTRNONICS TO REIMBURSE DEFENSE COSTS**

The fact that there was no coverage for the settlement leads to the next logical step, which is to consider the policies' SIR and deductible endorsements. Plantronics initially ignored the endorsements attached to each of the policies that allocate the burden of the defense costs onto Plantronics where, as here, the ultimate result is that there is no covered loss. Even if there were a duty to defend, any uncovered judgment or settlement obligated Plantronics to reimburse all of the defense expense back to the insurers.

The first of the four policies at issue had a self-insured retention ("SIR") endorsement. The other three attached deductible endorsements. Each of the endorsements changed the parties' duties with respect to "Allocated Loss Adjustment Expenses," ("ALAE") defined as: "[A]ll fees for service of process and court costs ... attorneys' fees.... and any similar fee, cost or expense reasonably chargeable to the investigation, negotiation, settlement or defense of a loss or a claim or 'suit' against you...." In other words, defense expense.

The first policy's SIR endorsement expressly amended that policy by replacing the insuring language to state, *inter alia*, "We will have the right but not duty to defend...." Thus, there literally was no duty to defend under the first policy at all. In fact, the SIR endorsement stated that: "You [Plantronics] are responsible for all 'Allocated Loss Adjustment Expenses' we pay as Supplementary Payments according to the election indicated by an 'X' below." The chosen option said that Plantronics would be responsible for "part" of the ALAE in the ratio of the SIR to the damages. However, "If we pay no damages, benefits or medical expenses, you are responsible for all 'Allocated Loss Adjustment Expenses' up to the applicable Retained limit and <u>100.0%</u> of all remaining 'Allocated Loss Adjustment Expenses'."

Thus, if there were no covered damages, Plantronics would be responsible for 100% of the defense costs.

The deductible endorsements on the other three policies did not do away with the duty to defend potentially covered claims entirely, but likewise provided that if there were ultimately no covered damages, Plantronics would be responsible for 100% of the ALAE. The difference being that Plantronics would have had to reimburse the insurers. The deductible endorsements stated that:

> "You must reimburse us up to the Deductible Limits shown in the Schedule for any amounts we have so paid as damages....
>
> * * *
>
> In addition, you must reimburse us for all Allocated Loss Adjustment Expense we pay as Supplementary Payments, according to the election indicated by an "X" below....
>
> * * *
>
> X iii. A part of Allocated Loss Adjustment Expense. That part will be calculated by dividing the smaller of the Deductible or the damages we pay by the damages we pay. If we pay no damages, you must reimburse us for all Allocated Loss Adjustment Expense up to the applicable Deductible amount and 100% of all remaining Allocated Loss Adjustment Expense." (FAC Ex. "B", "C", "D", Case 5:07-cv-06038-PSG Document 94-2, p.54 of 59; Document 94-3, p.48 of 56; Document 94-4, p.120 of 129.)

In other words, under the deductible endorsements the insurers still had a duty to defend potentially covered claims, but if, as here, there ultimately were no covered damages payable, Plantronics would be obligated to reimburse the insurers

for all defense expense. Thus, even if Plantronics established that ICSOP and American Home had a duty to defend the underlying Bluetooth lawsuits, there ultimately are no covered damages and Plantronics would be obligated to reimburse the insurers for the defense.[1]

6.

**AMERICAN HOME AND ICSOP DID NOT WAIVE AND ARE NOT ESTOPPED TO RELY ON THE ALAE ENDORSEMENTS**

In opposing Plantronics' motion for partial summary judgment, American Home and ICSOP made the above argument – that even were the court to find a duty to defend, the result would not materially differ because the policies' endorsements obligated Plantronics to reimburse defense expense for cases in which there ultimately was no coverage. Plantronics had specifically contracted to assume the risk of some or all of the costs of defending itself, depending on the outcome of the particular claim.

When faced with the argument, Plantronics argued waiver or estoppel:

> "As a threshold matter, since AIG paid no defense costs, and no "Allocated Loss Adjustment Expense ... as Supplementary Payments," AIG has forfeited its right to rely on this clause and it has no right to reimbursement.... But having abandoned its insured and breached its duty to defend, AIG excused any further performance on Plantronics part, including any obligation to reimburse AIG. See, e.g., *Plotnik v. Meihaus*, 208 Cal.App.4th 1590, 1603 (2012) ("in contract law a material breach excuses further performance by the innocent party.") (citation

---

[1] Defendants' rights under the ALAE endorsements have not yet accrued and Defendants cannot have waived a right that has not yet accrued. Defendants reserve all rights to rely upon the endorsements in this, or any other matter.

> omitted). AIG is not entitled to speculate that it would have achieved the same result that Plantronics achieved in defending itself because that would render the duty to defend illusory and would violate the first material breach rule."

There is no first material breach rule in California; the correct legal principles are waiver and estoppel. But as a preliminary matter, it must be noted that Plantronics did not plead waiver or estoppel in its first amended complaint. Those concepts must be specifically pleaded in order to utilize them. *Goorberg v. Western Assurance Company*, 50 Cal. 510, 519 (1907). Indeed, the failure to plead waiver and estoppel is, in and of itself, a waiver of the right to assert those theories. *California Teachers Assoc. v. Governing Board*, 145 Cal.App.3d 735, 746 (1983); *Green v. Travelers Indemnity*, 185 Cal.App.3d 544, 555 (1986). And pleading the existence of a contract and its breach is not the equivalent of pleading waiver or estoppel:

> "The law is settled that an insured may not rely upon a waiver of a provision of an insurance policy, unless such waiver is pleaded, and that evidence of waiver is not admissible under an allegation of performance of the conditions of the contract. ...
>
> It is the law of California that estoppel as to any defense which would otherwise be available to the defendant (respondent) under the facts stated in the complaint may not be relied upon unless the estoppel is pleaded...."
>
> *Cohen v. Metropolitan Life Ins. Co.*, 32 Cal.App.2d 337, 347 (1939).

Where the insured claims the insurer has waived or is estopped from asserting a policy provision, such matters must be affirmatively alleged by the insured.

*Fujimoto v. Western Pioneer Ins. Co.*, 86 Cal.App.3d 305, 310, fn. 3 (1978); *Insurance Co. of the West v. Haralambos Beverage Co.*, 195 Cal.App.3d 1308, 1320 (1987) (disapproved on other grounds in *Buss v. Superior Court*, 16 Cal.4th 35, 50, fn. 12 (1997).

In other words, waiver and estoppel as regards terms of an insurance policy must be pleaded with specificity. According to the *Cohen* court, that rule applies to a plaintiff's complaint as well as a defendant's affirmative defenses. But Plantronics did not plead theories of waiver or estoppel with respect to the ALAE endorsements and, having failed to do so, cannot suddenly raise the issues for the first time at trial of its case.

Further, the specific argument made by Plantronics does not accurately reflect the California law of contracts. Plantronics argued that "having abandoned its insured and breached its duty to defend, AIG excused any further performance on Plantronics part, including any obligation to reimburse AIG...." In other words, Plantronics argued the defense of "excuse" to its contractual obligation to reimburse defense costs. In essence, Plantronics argues that American Home and ICSOP must now comply with their own contractual obligations, while Plantronics' reciprocal obligations are entirely excused.

Under California Civil Code section 1511, a party's own contractual obligations are only excused where they have been prevented either by an act of the other party or law; intervening causes; or inducement by the other party. Impossibility or impracticability are also excuses. Cal. Civ. Code, § 1598. Frustration of purpose is another ground for excuse, but requires a fortuitous event that destroys the value of the consideration to be rendered. *Glendale Fed. Sav. & Loan v. Marina View Heights*, 66 Cal.App.3d 101 (1977). The fact is, however, that nothing prevents Plantronics from performing its obligation once the insurers have performed their own. It is a straight business transaction.

Waiver or forfeiture of a contractual right is not favored in the law. Therefore, a higher standard of proof applies to these doctrines: *i.e.*, the insured must establish waiver or forfeiture by "clear and convincing evidence." *Chase v. Blue Cross of Calif.*, 42 Cal.App.4th 1142, 1157 (1996). By extension, the same evidentiary standard applies to claims of estoppel. Plantronics' sole evidence of waiver and/or estoppel is that American Home and ICSOP denied the claim on the ground that there was no bodily injury alleged in the underlying Bluetooth litigation. However, that does not automatically waive any reliance on the SIR and deductible endorsements.

Waiver is a voluntary and intentional relinquishment of a known right. *Loughan v. Harger-Haldeman*, 184 Cal.App.2d 495 (1916). But California does not apply a rule of automatic waiver to insurance contracts. The fact that the insurer denied the claim on grounds that turned out to be unsupportable does not impliedly waive other valid defenses not relied on in denying the claim:

> "(A) denial of coverage on one ground does not, absent clear and convincing evidence to suggest otherwise, impliedly waive grounds not stated in the denial." (*Waller v. Truck Ins. Exch., Inc.,* 11 Cal.4th 1, 31 (1995) (rejecting "automatic waiver rule" recognized in some earlier cases).

Here, the insurer defendants denied coverage on the ground that the Bluetooth lawsuits did not plead actual bodily injury, but only a risk of bodily injury. In doing so, the insurers expressly reserved all rights under their contracts. Moreover, when Plantronics sued the insurers for declaratory relief, and later when Plantronics amended its complaint to add a cause of action for bad faith, the insurers answered the complaint and first amended complaint by denying all liability and raising affirmative defenses, including noncoverage under the terms and conditions of the policies.

Waiver requires intentional relinquishment of a known contractual right. There is nothing in the facts to indicate that the insurer Defendants ever intended to waive reliance on their contract provisions. And there is certainly none under the higher clear and convincing standard required for proof of waiver. Indeed, the express reservations of all rights, and answers pleading a denial of liability on the grounds that the policies did not cover the loss, evidence precisely the opposite intent – an intent to stand on the contracts and enforce all terms as written.

Nor does anything in the facts establish estoppel. Estoppel bars the assertion of a right when the other party has detrimentally relied on the first party's conduct. *Miller v. Elite Ins. Co.*, 100 Cal.App.3d 739 (1980). The burden of proof requires the asserting party to establish there was some damage suffered as a result of reliance upon the conduct of the party estopped. *Southern California Acoustics v. Holden*, 71 Cal.2d 719 (1969). But mere silence will not create estoppel unless there is a duty to speak. *Sandrez v. Superior Court*, 203 Cal.App.3d 1391 (1988). And, like waiver, no such intent can be inferred from failure to mention a particular coverage defense when a claim is denied on other grounds; the insurer's failure to mention valid defenses in a denial letter does not estop it from raising them later where no prejudice to the insured is shown. *Waller v. Truck Ins. Exch., Inc., supra*, 11 Cal.4th at 35.

Examples of conduct supporting estoppel include misrepresenting policy terms (*Prudential-LMI v. Superior Court*, 51 Cal.3d 674, 689-690 (1990)), engaging in settlement negotiations after expiration of the a time limitation (*Elliano v. Assurance Co. of America*, 3 Cal.App.3d 446, 450-451 (1970)), or otherwise misleading insured such that he fails to retain an attorney, fails to negotiate a settlement, or fails to deal directly with the opposing party or counsel (*Michaelian v. State Comp. Ins. Fund*, 50 Cal.App.4th 1093, 1111-1112 (1996)). It is akin to fraud.

There is none of that here. Plantronics was not misled in any way. Nor did Plantronics suffer any recognized form of detrimental reliance. Indeed, Plantronics

was fully defended, fully participated in the negotiations and negotiated a settlement of its own choosing with the Bluetooth plaintiffs. Plantronics is a sophisticated manufacturer having revenues in excess of $700 million in 2012-2013. Plantronics suffered no damages due to detrimental reliance as a result of the insurers' declination of coverage.

Not only would finding waiver or estoppel work a forfeiture on the insurers, it would result in unjust enrichment for Plantronics. The California Supreme Court has made clear that even without a reimbursement provision, an insurer has an implied-in-law right to reimbursement of defense costs that are not owed under the terms of the contract, because forcing the insurer to bear costs outside the scope of its contractual obligation results in unjust enrichment to the insured. *Buss v. Superior Court*, 16 Cal.4th 35, 50-51 (1997). That same result would follow here, if the insurers are compelled to pay the costs of defense and deemed to lose the policy's express contractual right to reimbursement.

This Court has already ruled that there was no bad faith, as a matter of law. Under the Court's ruling, this is simply a case of an honest mistake leading to a breach of contract. However, Plantronics is incorrect that excuses all performance under the policies on its own part, while the insurers must pay. Indeed, Plantronics' contention is that the insurers are obligated to perform, but Plantronics is not. But there is no evidence of waiver by the insurers or suggestion of detrimental reliance by Plantronics. The insurers stood on their contracts at all time, and Plantronics suffered no detriment. Indeed, given its choice of counsel, Plantronics probably would have objected to any defense counsel assigned by the insurers. In any case, in the absence of bad faith denying the insurers a right to rely on the SIR and deductible endorsements amounts to imposing a forfeiture on the insurers, conferring unjust enrichment on Plantronics.

As noted above, the Court's ruling of May 30, 2014 on the parties' cross-motions for summary judgment effectively reduced this case to what it is: A

contract dispute between two sophisticated business entities over money. As also noted above, contract damages seek to proximate the agreed-upon performance, placing the plaintiffs, as far as possible, in the same position they would have been in had the contract been performed, but not giving them more than they would have received had the promisor performed. *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503 (1994); *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101. To make that calculation here, the Court must apply all of the terms of the contract.

In California, a Court is supposed to ascertain a contract's terms or substance, without inserting what has been omitted, or to omitting what has been inserted, arriving at a construction that gives effect to all parts. (Cal. Code Civ. Pro., § 1858.) Any finding that obligates the Defendant insurers to pay for costs of defense or indemnity, without also applying the ALAE endorsements, would not accurately reflect the terms of the contracts or proximate the proper measure of contract damages.

The Defendant insurers did not waive, and are not estopped to rely on, the policies' ALAE endorsements.

**7.**

## CONCLUSION

Plantronics' defense fee claim is patently unreasonable. There was simply no justification for paying in excess of $1.13 million, at rates exceeding $1000 per hour, to reach a settlement for virtually no money except attorneys fees, in a case that involved an answer to a complaint and joining a motion to dismiss that was never heard. Judge Fisher found the plaintiffs' fee claim excessive and unreasonable, and the evidence will demonstrate that Plantronics' claim suffers the same problems.

The amounts paid by Plantronics in settlement, costs of notice, cy pres awards to charitable organizations and incentive awards to class representatives, were not

covered damages because of bodily injury or property damage. The Defendant insurers' declination of coverage does not change the scope of coverage under the policies.

Plantronics is incorrect in arguing that it is excused from the policy terms while the insurers are not. The evidence will establish that there was no waiver of the policies' SIR and deductible provisions, and Plantronics suffered no cognizable detriment to estop the insurers from relying on their policy provisions. California does not recognize automatic waiver or estoppel as regards policy provisions where an insurer mistakenly denies coverage on another grounds.

Dated: July 3, 2014

HAIGHT BROWN & BONESTEEL LLP

By: /s/ Denis J. Moriarty

Denis J. Moriarty
Christopher Kendrick
Attorneys for Defendants
AMERICAN HOME ASSURANCE COMPANY and THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA

# PROOF OF SERVICE

STATE OF CALIFORNIA )
) ss.:
COUNTY OF LOS ANGELES )

*PLANTRONICS vs. AMERICAN HOME ASSURANCE COMPANY*
*5:07-cv-06038-PSG*

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 555 South Flower Street, Forty-Fifth Floor, Los Angeles, California 90071.

On July 3, 2014, I served the within document(s) described as:

DEFENDANTS AMERICAN HOME ASSURANCE COMPANY'S AND THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA'S TRIAL BRIEF

on the interested parties in this action as stated below:

Paul T. Llewellyn, Esq.
Marc R. Lewis, Esq.
LEWIS & LLEWELLYN
505 Montgomery Street, Suite 1300
San Francisco, California 94111

Phone: (415) 800-0590
Fax: (415) 390-2127
email: pllewellyn@lewisllewellyn.com
mlewis@lewisllewellyn.com
*[Attorneys for Plaintiff]*

Raymond A. Cardozo, Esq.
REED SMITH LLP
101 Second Street, Suite 1800
San Francisco, California 94105

Telephone: (415) 543-8700
Facsimile: (415) 391-8269
Email: rcardozo@reedsmith.com
*[Attorneys for Plaintiff]*

[X] (CM/ECF) Pursuant to the United States District Court Procedural Rules for Electronic Case Filing and the Case Management/Electronic Case Filing Rules, I electronically served the above-listed documents on the parties shown above for the above-entitled case, as listed above.

Executed on July 3, 2014, at Los Angeles, California.

I declare under penalty of perjury that I am employed in the office of a member of the bar of this Court at whose direction the service was made and that the foregoing is true and correct.

| Keisha Stevens | /s/ Keisha Stevens |
|---|---|
| (Type or print name) | (Signature) |