LEWIS & LLEWELLYN LLP
    Paul T. Llewellyn (Bar No. 216887)
    Marc R. Lewis (Bar No. 233306)
    Matthew Dickman (Bar No. 268108)
505 Montgomery Street, Suite 1300
San Francisco, California 94111
Telephone: (415) 800-0590
Facsimile: (415) 390-2127
Email: pllewellyn@lewisllewellyn.com
          mlewis@lewisllewellyn.com
          mdickman@lewisllewellyn.com

REED SMITH LLP
    Raymond A. Cardozo (Bar No. 173263)
101 Second Street, Suite 1800
San Francisco, California 94105
Telephone: (415) 543-8700
Facsimile: (415) 391-8269
Email: rcardozo@reedsmith.com

Attorneys for Plaintiff
Plantronics, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PLANTRONICS, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> AMERICAN HOME ASSURANCE COMPANY, a New York corporation; THE INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, a Pennsylvania corporation, <br><br> Defendants. | CASE NO. 5:07-CV-06038-PSG <br><br> **PLAINTIFF PLANTRONICS, INC.'S TRIAL BRIEF** <br><br> Trial Date: July 28, 2014 <br> Time: 9:30 a.m. <br> Place: Courtroom 5 |

# TABLE OF CONTENTS

I.       INTRODUCTION...................................................................................... 1

II.      STATEMENT OF FACTS ....................................................................... 2

III.     PLANTRONICS' DAMAGES ................................................................. 4

    A.   AIG Must Pay The Attorneys' Fees And Costs Incurred By
        Plantronics In Defense Of The Underlying Actions ............................... 5

    B.   AIG Must Indemnify Plantronics For The Payments It Made To
        Settle The Underlying Actions............................................................... 8

    C.   Plantronics Is Entitled To Prejudgment Interest On The Fees And
        Costs It Incurred To Defend And Settle The Underlying Actions...................... 10

IV.      AIG'S PURPORTED DEFENSES ................................................................ 11

    A.   AIG's Purported Defense Is Not Ripe For Judicial Determination ..................... 12

    B.   This Court Has Already Rejected AIG's Singular Defense, And
        That Ruling Is Law Of The Case. ......................................................... 13

    C.   AIG's Position Is Not Supported By The Language Of The
        Insurance Policies. ............................................................................... 14

IV.      CONCLUSION ........................................................................................ 17

i

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Amato v. Mercury Casualty Co.*, 53 Cal. App. 4th 825 (1997) .................................................. 5

*Barratt Am., Inc. v. Transcon. Ins. Co.*, 102 Cal. App. 4th 848 (2002) .................................... 5

*Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal. App. 3d 442 (1990) ........................................................................................................................................ 5

*Earth Elements, Inc. v. Nat'l Am. Ins. Co.*, 41 Cal. App. 4th 110 (1995) .................................. 9

*Eigner v. Worthington*, 57 Cal. App. 4th 188 (1997) ................................................................. 7

*Employers Mut. Cas. Co. v. Philadelphia Indem. Ins. Co.*, 169 Cal. App. 4th 340 (2008) ...................................................................................................................................... 16

*Enyart v. National Conference of Bar Examiners, Inc.*, 823 F. Supp. 2d 995 (N.D. Cal. 2011) ............................................................................................................................... 8

*Fireman's Fund Ins. Companies v. Ex-Cell-O Corp.*, 790 F. Supp. 1339 (E.D. Mich. 1992) ............................................................................................................................ 8

*Forecast Homes, Inc. v. Steadfast Ins. Co.*, 181 Cal. App. 4th 1466 (2010) ........................... 16

*Ingle v. Circuit City*, 408 F.3d 592 (9th Cir. 2005) ................................................................. 13

*Isaacson v. California Ins. Guarantee Assn.*, 44 Cal. 3d 775 (1988) ........................................ 9

*Liberty Mutual Ins. Co. v. EEOC*, 691 F.2d 438 (9th Cir. 1982) ............................................. 13

*Marie Y. v. General Star Indem. Co.*, 110 Cal. App. 4th 928 (2003) ................................... 5, 16

*Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703 (9th Cir. 1990) ........................ 13

*Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645 (1995) ....................................... 16

*Oil Base, Inc. v. Transp. Indem. Co.*, 148 Cal. App. 2d 490 (1957) ........................................ 10

*Plotnik v. Meihaus*, 208 Cal. App. 4th 1590 (2012) ................................................................ 15

*See Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38 (1997) ...................................... 6

*See Kla-Tencor Corp. v. Travelers Indem. Co. of Illinois*, 2004 WL 1737297 (N.D. Cal. Aug. 4, 2004) .................................................................................................... 6

*Stalberg v. W. Title Ins. Co.*, 230 Cal. App. 3d 1223 (1991) .................................................... 7

*State of California v. Pacific Indemnity Co.*, 63 Cal. App. 4th 1535 (1998) ............................. 7

*Texas v. United States*, 523 U.S. 296 (1998) .......................................................................... 13

*Thomas v. Bible*, 983 F.2d 152 (9th Cir. 1993) ...................................................................... 13

*United States v. Lummi Indian Tribe*, 235 F.3d 443 (9th Cir. 2000) .......................................... 13

*Wisper Corp. v. California Commerce Bank*, 49 Cal. App. 4th 948 (1996) .............................. 10

**STATUTES**

Cal. Civ. Code § 3289(b) ...................................................................................................... 10

Cal. Civ. Code § 3300 .............................................................................................................. 5

**TREATISES**

The Rutter Group, Cal. Prac. Guide Ins. Lit. .................................................................... 10, 16

## I.   INTRODUCTION

The upcoming trial presents a single issue:  the amount of Plantronics' damages resulting from AIG's breach of its insurance coverage obligations.  AIG's liability has already been established, as this Court has now twice found—via its October 20, 2008 and May 30, 2014 orders—that AIG breached its duty to defend Plantronics in the underlying actions.  In light of this breach, it is well-established that Plantronics is entitled to recover the attorneys' fees and costs it expended to defend the underlying actions.  Additionally, because the damages paid by Plantronics to settle the underlying actions were covered damages, and pursuant to this Court's ruling that those damages were paid "because of" bodily injury, Plantronics is also entitled to recover the amount it paid to settle the underlying actions.  Finally, California law mandates that Plantronics receive prejudgment interest on all defense and settlement expenses.

With AIG's defense obligation now twice confirmed by this Court, and given the straightforward and unambiguous nature of the damages to which Plantronics is entitled, Plantronics hopes that this matter can be resolved short of trial.  But in the period since this Court's May 30, 2014 order granting Plantronics' motion for summary judgment, AIG has repeatedly refused Plantronics' demands for reimbursement.  AIG's refusals come despite Plantronics having served discovery responses, produced documents, and provided unrebutted deposition testimony that extensively and explicitly document Plantronics' damages.

AIG has no justifiable basis or defense for its continued noncompliance with its court-ordered duty to defend—indeed, that continuing refusal arguably converts any prior good faith basis for denying its defense duty into tortious bad faith for persisting in that position after this Court has twice rejected that position.  When pressed on its rationale for contravening the Court's order during deposition, AIG's 30(b)(6) corporate representative advanced two meritless arguments:  (1) that this Court was "wrong" when it ruled that AIG had a duty to defend; and (2) that AIG intends to continue to rely on its deductible endorsement defense, even though this Court rejected the validity of that defense through its May 30, 2014 order.  Indeed, even AIG's corporate representative conceded that this defense "does not presently apply."  AIG's repeated and self-admitted defiance of this Court's order cannot be squared with applicable law.

1

1   Regardless of whether it had a good faith basis to dispute its defense obligations earlier, once this

2   Court ruled, Plantronics should not have had to bear the defense costs any longer. That

3   Plantronics has had to do so after not just one, but two rulings of this Court, makes AIG's

4   stonewall all the more egregious. Even if AIG intends to challenge this Court's ruling, it should

5   have done so without further delaying reimbursement to Plantronics.

6       This Court should therefore grant Plantronics the damages to which it is entitled; namely,

7   the costs and attorneys' fees it incurred defending and resolving the underlying actions following

8   AIG's breach, as well as statutory prejudgment interest on those expenses. After nearly seven

9   years of litigation, it is finally time for AIG to comply with its policy obligations and to provide

10  Plantronics with the coverage for which it paid hundreds of thousands of dollars in premiums.

11  **II.    STATEMENT OF FACTS**

12      AIG issued Commercial General Liability ("CGL") policies to Plantronics that provided

13  coverage between 2003 and 2007. Those polices provided, *inter alia*, that in the event that

14  Plantronics was sued for damages because of bodily injury, AIG would be obligated to defend

15  and indemnify Plantronics. Specifically, the policies obligated AIG to (1) "pay those sums that

16  [Plantronics] becomes legally obligated to pay as damages because of bodily injury or property

17  damage to which this insurance applies[,]" and (2) provided that "[AIG] will have the right and

18  duty to defend [Plantronics] against any suit seeking those damages." *See, e.g.,* AIG Policy No.

19  GL 382-89-16, p. 1 of 23 (attached as Ex. B to the Declaration of Peggy Fawcett ("Fawcett

20  Decl."); Dkt. No. 108-2). In exchange for this broad coverage, Plantronics paid AIG premiums

21  of between approximately $115,000 and $175,000 each year, *i.e.* a total of nearly $600,000 in

22  premiums for the four years the policies were in effect. Fawcett Decl., ¶ 8; Dkt. No. 108.

23      Between October 2006 and February 2007, *i.e.* during the period in which AIG insured

24  Plantronics, Plantronics was named as a defendant in six putative class action lawsuits. The

25  Judicial Panel on Multidistrict Litigation consolidated these six actions into a seventh action, and

26  the consolidated action, captioned *In re: Bluetooth Headset Products Liability Litigation*, filed

27  on July 9, 2007, proceeded before the Hon. Dale S. Fischer in the U.S. District Court for the

28  Central District of California. *See* Fawcett Decl., Exs. E-K; Dkt. Nos. 108-5 to 108-11. In

2

addition to Plantronics, the consolidated class action complaint also named Motorola, Inc. and GN Netcom, Inc., companies that also manufacture and distribute Bluetooth headsets, as defendants. *Id.*, Ex. K; Dkt. No. 108-11.

The plaintiffs in the underlying putative class actions alleged that they suffered "bodily injury" in the form of noise induced hearing loss caused by excess noise exposure from the use of Bluetooth headsets. Each of the underlying actions was replete with allegations which made crystal clear that the claimants sought damages *because of* this alleged "bodily injury." Since the underlying actions sought damages within the coverage of the policy, Plantronics tendered the underlying actions to AIG for defense and indemnity between October 2006 and August 2007. By letters dated January 3, 2007, April 5, 2007 and August 30, 2007, AIG declined Plantronics' tender of the actions. *Id.*, Exs. L-N; Dkt. Nos. 108-12 to 108-14.

Although Plantronics paid for insurance so that it would be defended against litigation, AIG's abandonment of Plantronics left Plantronics with no option but to defend itself, pay to resolve the underlying cases and, in parallel, file this action to enforce its insurance policy rights. On November 29, 2007, Plantronics filed its compliant, alleging claims for declaratory relief and breach of contract. Declaration of Paul T. Llewellyn ("Llewellyn Decl."), Ex. A; Dkt. No. 109-1. AIG answered the complaint on February 20, 2008.

On February 4, 2008, Atlantic Mutual, which was also named as a defendant in this action and which issued a policy of insurance to Plantronics that was substantively identical to the AIG-issued policies, moved to dismiss Plantronics' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Id.* ¶ 4; Dkt. No. 109. On October 20, 2008, following briefing and oral argument, this Court (through Chief Magistrate Judge Trumbull) denied Atlantic Mutual's motion. *Id.*, Ex. B; Dkt. No. 109-2. The Court held that the underlying policy triggered the duty to defend on two independent coverage grounds, finding that (1) "any damages [Plantronics] becomes obligated to pay are at least arguably 'because of' bodily injury" and (2) "[a]ny of the plaintiffs in the Underlying Actions could amend his or her complaint at any time to … include covered claims." *Id.* at p. 4. Ultimately, the court held that "[b]ecause, at a minimum, the Underlying Actions *potentially* seek damages within the coverage of the policy,

3

dismissal is not warranted." *Id.* at p. 5 (emphasis in original).

Despite Judge Trumbull's ruling that the policies gave rise to a duty to defend the underlying actions, AIG remained steadfast in its refusal to defend Plantronics. Accordingly, this litigation continued, and the parties brought cross-motions for summary judgment on the dispositive issue of the duty to defend earlier this year.[1] *See* Dkt. Nos. 103 and 107. On May 30, 2014, following extensive briefing and oral argument, this Court affirmed Judge Trumbull's ruling, holding that the October 20, 2008 order denying Atlantic Mutual's motion to dismiss was law of the case, and that AIG accordingly had a duty to defend the underlying actions. The Court further acknowledged that "[e]ven if the law of the case did not bind the court, the court concludes that Judge Trumbull's initial decision that Plantronics was owed a duty to defend was substantively correct." Order re: Cross-Motions for Summary Judgment ("May 30, 2014 Order") at p. 7; Dkt. No. 126. Indeed, the Court found that AIG's duty to defend the underlying actions was not even "a close call." *Id.* at p. 11, fn. 41. While finding that AIG had a duty to defend the underlying actions, the Court also found that AIG's denial of its defense duty did not, up to that point in this litigation, constitute bad faith. *Id.* at p. 11.

Following the Court's order granting Plantronics' motion for summary judgment, Plantronics demanded that AIG comply with its judicially-confirmed duty to defend by reimbursing Plantronics for the expenses it incurred in the underlying lawsuits. To date, and in the face of the Court's order granting Plantronics' motion for summary judgment, AIG has still refused to comply with its defense obligations and reimburse Plantronics, thus necessitating the upcoming trial.

## III. PLANTRONICS' DAMAGES

AIG, having breached its contracts of insurance with Plantronics, is obligated to pay contract damages that would put Plantronics in as good a position as it would have been had AIG fulfilled its contractual obligations. As elucidated below, those damages are well-established and

---

[1] On January 9, 2014, prior to bringing its motion for summary judgment, Plantronics filed the operative first amended complaint, which includes claims for relief for declaratory relief, breach of contract and breach of the implied covenant of good faith and fair dealing.

unambiguous, and include: (1) the attorneys' fees and costs Plantronics expended defending the underlying actions, (2) the payments Plantronics made to settle the underlying actions, and (3) statutory prejudgment interest.

### A. AIG Must Pay The Attorneys' Fees And Costs Incurred By Plantronics In Defense Of The Underlying Actions

Where an insurer breaches its duty to defend, it is well-established that "the proper measure of damages is the reasonable attorneys' fees and costs incurred by the insured in defense of the claim." *Marie Y. v. General Star Indem. Co.*, 110 Cal. App. 4th 928, 961 (2003); *see also Barratt Am., Inc. v. Transcon. Ins. Co.*, 102 Cal. App. 4th 848, 857 (2002) ("It has long been held that when an insurer breaches a duty to defend, the damages the insured is entitled to recover may include the reasonable costs of defending the underlying action."); *Amato v. Mercury Casualty Co.*, 53 Cal. App. 4th 825, 831 (1997) ("Where an insured mounts a defense at the insured's own expense following the insurer's refusal to defend, the usual contract damages are the costs of the defense."). In other words, this Court has found that AIG breached its contractual duty to Plantronics, and Plantronics is correspondingly entitled to recover contract damages that would put it in as good a position as it would have been had performance been rendered as promised. *See Brandon & Tibbs v. George Kevorkian Accountancy Corp.*, 226 Cal. App. 3d 442, 455 (1990); *see also* Cal. Civ. Code § 3300.

Here, as a direct result of AIG's breach, Plantronics was forced to retain legal counsel at its own expense to defend the underlying actions. In light of the seriousness of the allegations, and the potential exposure faced by Plantronics should plaintiffs prevail, Plantronics retained Kirkland & Ellis LLP, an international, highly-regarded law firm with significant class action defense expertise, to defend it in the underlying actions. In addition to the attorneys' fees paid to Kirkland & Ellis LLP, Plantronics incurred certain other costs that were reasonable and necessary to the defense of the underlying class actions, including forensic document collections costs (paid to Guidance Software), electronic discovery and hosting costs (paid to Stratify), expert costs (paid to Dobie Associates and Wyatt Partners), and costs associated with providing and tracking class action notice pursuant to Rule 23 of the Federal Rules of Civil Procedure (paid

5

to Kinsella Media and Wyatt Partners). Each of these costs was essential to Plantronics' defense, and Plantronics has produced—and will introduce at trial—extensive documentation detailing these costs, Plantronics' corresponding payment, and the necessity of these expenses to the defense of the underlying actions. Furthermore, Richard R. Pickard, Plantronics' General Counsel, has provided unrebutted deposition testimony confirming that each of these costs was reasonable and necessary to Plantronics' defense of the underlying actions. Mr. Pickard will reiterate such testimony at trial.

For the Court's convenience, the chart below details the costs incurred by Plantronics in defending the underlying actions:

| Vendor | Purpose | Total Plantronics Paid |
|---|---|---|
| Kirkland & Ellis LLP | Attorneys' Fees and Costs | $1,137,739.30 |
| Guidance Software | Forensic Document Collection | $19,519.84 |
| Stratify | Electronic Discovery and Hosting | $30,057.03 |
| Kinsella Media | Publication Of Class Action Notice | $333,063.00 |
| Rust Consulting | Tracking Responses To Class Action Notice | $46,129.05 |
| Wyatt Partners | Expert Fees In Evaluating Class Plaintiffs' Attorneys Fees | $5,000.00 |
| Dobie Associates | Expert Fees | $10,000.00 |
| | | |
| **TOTAL** | | **$1,581,508.22** |

Through its discovery responses, document production, and deposition testimony, Plantronics has already met its minimal burden of demonstrating the existence of the fees and costs it incurred defending the underlying actions. *See Kla-Tencor Corp. v. Travelers Indem. Co. of Illinois*, 2004 WL 1737297 (N.D. Cal. Aug. 4, 2004) ("Where the insurer breaches its duty to defend … the insured must only carry the burden of proof on the existence and amount of the expenses."). Indeed, since AIG breached its duty to defend, the fees and costs incurred by Plantronics are *presumed reasonable and necessary*, and the burden shifts to AIG to rebut that presumption. *See Aerojet-Gen. Corp. v. Transp. Indem. Co.*, 17 Cal. 4th 38, 64 (1997) ("wherein the insurer has breached its duty to defend, it is the insured that must carry the burden of proof on the existence and amount of the … expenses, which are then presumed to be reasonable and

necessary as defense costs, and it is the insurer that must carry the burden of proof that they are in fact unreasonable or unnecessary."). This is a burden that AIG cannot meet. As Plantronics' General Counsel has already testified to—and will corroborate at trial—AIG's breach of its duty to defend forced Plantronics to defend the underlying actions *at its own cost*. With no assurance that it would ever be reimbursed for its expenses, Plantronics diligently reviewed and scrutinized every bill it received in connection with the underlying actions, and only incurred, and agreed to pay, expenses that were essential to its defense.

To the extent that AIG contends that the fees incurred by Kirkland & Ellis LLP were not "reasonable," such argument is without merit, as California courts have affirmed that insureds are entitled to recoup the normal hourly rates charged by major law firms following an insurer's breach. For example, in *State of California v. Pacific Indemnity Co.*, 63 Cal. App. 4th 1535 (1998) ("*Pacific Indemnity*"), the insurer breached its defense obligation, forcing the insured to retain defense counsel at its own expense. In that case, the insured retained Irell & Manella, a highly-regarded, California-based law firm, to represent it. *Id.* at 1540. In the subsequent insurance coverage action, the court held that because the insurer repudiated its defense obligation, the insured was entitled to recover the costs of the defense, including the fees the insured paid to the law firm of Irell & Manella as reflected in its standard hourly rate. *Id.* at 1556. This was so, the court explained, because "[w]here an insured mounts a defense at the insured's own expense following the insurer's refusal to defend, the usual contract damages are the costs of the defense," and the purpose of contract damages is "to put the party in as good a position as it would have been had performance been rendered as promised." *Id.* at 1551. This holding comports with the general principal that where an insurer wrongfully rejects a tender of defense, it is "subject[ed] [] to liability for the insureds' full attorney's fees and costs incurred thereafter with other counsel." *Stalberg v. W. Title Ins. Co.,* 230 Cal. App. 3d 1223, 1233 (1991); *see also Eigner v. Worthington*, 57 Cal. App. 4th 188, 196 (1997) ("When an insurer wrongfully refuses to defend, the insured is relieved of his or her obligation to allow the insurer to manage the litigation and may proceed in whatever manner is deemed appropriate"). Indeed, AIG, having breached its duty to defend and after abandoning its insured in its hour of need,

1  cannot now second-guess the decisions made by Plantronics in its defense of the underlying

2  actions. *See Fireman's Fund Ins. Companies v. Ex-Cell-O Corp.*, 790 F. Supp. 1339, 1345 (E.D.

3  Mich. 1992), *as cited in Pacific Indemnity,* 63 Cal. App. 4th at 1549 ("If insurer accepted the

4  tender of defense and retained or appointed counsel to represent the policyholders, we would not

5  today be struggling with a determination over which attorneys' fees were reasonable and

6  necessary defense costs, and in such circumstances, insurer bears burden of showing costs were

7  unreasonable.") (quotations and brackets omitted).[2]

8  **B. AIG Must Indemnify Plantronics For The Payments It Made To Settle The**

9  **Underlying Actions**

10  In addition to imposing a duty to defend Plantronics, the applicable insurance policies

11  also require AIG to indemnify Plantronics by "pay[ing] those sums that [Plantronics] becomes

12  legally obligated to pay as damages because of bodily injury or property damage to which this

13  insurance applies." *See, e.g.,* AIG Policy No. GL 382-89-16, p. 1 of 23 (attached as Ex. B to the

14  Fawcett Decl.; Dkt. No. 108-2). Here, in addition to finding that AIG had a duty to defend the

15  underlying actions, the Court has also indicated that AIG had a duty to indemnify Plantronics.

16  As initially noted in Judge Trumbull's October 20, 2008 order, and as confirmed through this

17  Court's May 30, 2014 order granting Plantronics' motion for summary judgment, "any damages

18  Plantronics was obligated to pay are at least arguably 'because of' bodily injury."[3] May 30, 2014

19  Order at p. 6; Dkt. No. 126. While this analysis shows AIG had a duty to indemnify Plantronics

20  [2]  At trial, AIG apparently intends to rely on expert testimony to challenge the reasonableness of the
21  attorneys' fees incurred by Kirkland & Ellis LLP. As a threshold matter, it is unclear why AIG
   believes the Court will require the assistance of its purported expert in order to assess the
22  reasonableness of the underlying invoices. *See, e.g., Enyart v. National Conference of Bar
   Examiners, Inc.*, 823 F. Supp. 2d 995, 1001 (N.D. Cal. 2011) ("Under Fed. R. Evid. 702, expert
23  testimony may be admitted only if it will assist the trier of fact to understand the evidence or to
   determine a fact in issue."). After abandoning its insured, and even in the face of this Court's two
24  rulings finding a duty to defend, AIG will apparently go to any length to avoid its policy obligations.
   If the Court does permit AIG's expert to testify, then Plantronics intends to offer its own rebuttal
25  expert who will conclusively establish the reasonableness of the attorneys' fees incurred.
   [3]  As reasoned by Judge Trumbull in her October 20, 2008 order, and as reaffirmed in this Court's May
26  30, 2014 order: "because, but for the potential for bodily injury caused by the Bluetooth Headsets,
   there would be no viable claims for defective design, unfair marketing or breach of warranty. Thus,
27  any damages Plaintiff becomes obligated to pay are at least arguably "because of" bodily injury."
   May 30, 2014 Order at p. 6; Dkt. No. 126.

28

for damages paid "because of bodily injury," AIG has remained steadfast in its refusal to indemnify Plantronics.

A judgment against Plantronics is not necessary to trigger the indemnity provision of the insurance policies. Rather, where "an insurer erroneously denies coverage and/or improperly refuses to defend the insured in violation of its contractual duties, the insured is entitled to make a reasonable settlement of the claim in good faith and may then maintain an action against the insurer to recover the amount of the settlement." *Earth Elements, Inc. v. Nat'l Am. Ins. Co.*, 41 Cal. App. 4th 110, 114-15 (1995) (quotations omitted). That is precisely what has transpired here—following AIG's breach of its duty to defend, Plantronics' counsel, Kirkland & Ellis LLP, negotiated an extremely favorable, good faith settlement with the underlying class action plaintiffs, and Plantronics now seeks to recover the cost of that settlement. Plantronics' share of the settlement, which was divided among the co-defendants in the underlying actions, was limited to *cy pres* payments totaling $23,863.64 to the Greater Los Angeles Agency on Deafness, Inc., the American Speech-Language Hearing Foundation, the University of Tennessee Foundation, Inc., and the National Hearing Conservation Association.[4] While such a limited settlement is facially reasonable (particularly where plaintiffs purported to represent a class of millions of consumers and sought millions of dollars in damages), Plantronics is also entitled to an evidentiary presumption of the reasonableness of the settlement. *See Isaacson v. California Ins. Guarantee Assn.*, 44 Cal. 3d 775, 791 (1988) ("if an insurer wrongfully fails to provide coverage or a defense, and the insured then settles the claim, the insured is given the benefit of an evidentiary presumption. In a later action against the insurer for reimbursement based on a breach of its contractual duty to defend the action, a reasonable settlement made by the insured to terminate the underlying claim against him may be used as presumptive evidence of the insured's liability on the underlying claim, and the amount of such liability.").

Moreover, a similar presumption applies that Plantronics paid these sums "because of"

---

[4] The settlement agreement resolving the underlying actions also called for incentive payments to the nine class representatives and an attorney fee award to plaintiffs' counsel, but those costs were covered by Plantronics' co-defendants in the underlying actions.

9

bodily injury. As this Court has twice found, but for the potential of bodily injury, none of the claims against Plantronics would have been viable. Abandoned by AIG, Plantronics reasonably terminated its exposure by settlement. To the extent the settlement makes it more difficult to trace the payment obligation directly to the underlying allegations of bodily injury, AIG caused that difficulty by abandoning its insured, and the presumptions thus run in favor of Plantronics.

As with its defense costs, Plantronics has produced documentation and unrebutted deposition testimony detailing its settlement expenses, and AIG cannot demonstrate that those expenses were unreasonable. Plantronics is therefore entitled to full indemnification from AIG.

### C. Plantronics Is Entitled To Prejudgment Interest On The Fees And Costs It Incurred To Defend And Settle The Underlying Actions.

Under California law, Plantronics is entitled to recover prejudgment interest on all expenses it incurred to defend and settle the underlying actions. Such prejudgment interest is mandatory, and it is well-settled that it applies in the context of an insurer's breach: "Where an insurer wrongfully refuses to defend a third party suit against its insured, and the insured is compelled to pay its own defense costs or a reasonable amount to settle the third party suit, the insured is entitled to interest on such amounts from the date paid." The Rutter Group, Cal. Prac. Guide Ins. Lit. Ch. 13-A; *see also Oil Base, Inc. v. Transp. Indem. Co.*, 148 Cal. App. 2d 490, 492 (1957) ("[Insured] was entitled as a matter of law to interest from the date it paid the obligation which [the insurer] was obligated to pay ..."). The fact that AIG took the position that it did not have a duty to defend Plantronics does not relieve it of its statutory obligation to pay prejudgment interest on Plantronics' damages. *See Oil Base, Inc.*, 148 Cal. App. 2d at 492 ("The fact that [the insurer] misconceived and put an erroneous construction upon this contract in no way affected its liability to pay … and, the amount being certain, interest commenced to run from that date."). The rate of prejudgment interest is set by statute at 10 percent per annum, and "is intended to make the plaintiff whole for the accrual of wealth which could have been produced during the period of loss." Cal. Civ. Code § 3289(b); *Wisper Corp. v. California Commerce Bank*, 49 Cal. App. 4th 948, 958 (1996). AIG must therefore pay such prejudgment

interest to Plantronics on all expenses it incurred in defending and settling the underlying actions.

## IV.    AIG'S PURPORTED DEFENSES

In the face of this Court's ruling that AIG had a duty to defend the underlying actions—and despite Plantronics' explicit demands—AIG has continued to refuse to reimburse Plantronics for the expenses it incurred to defend the underlying actions. While AIG has not provided a clear narrative regarding its rationale for defying this Court's order, in a recent deposition, AIG's corporate representative asserted two reasons for its purported refusal to assume its judicially-mandated duty to defend: (1) that this Court was "wrong" when it ruled that AIG had a duty to defend the underlying actions;[5] and (2) that the so-called "deductible coverage endorsements" appended to the end of the insurance policies render the duty to defend and indemnify Plantronics illusory, thus negating Plantronics' damages. Both of these purported defenses flout this Court's order and the clear language of the policies.

As an initial matter, with respect to AIG's assertion that this Court was "wrong" when it granted Plantronics' motion for summary judgment, a party cannot refuse to comply with a Court order simply because it "disagrees" with that order. To avoid converting its contractual breach into tortious bad faith, AIG needs to reimburse Plantronics promptly while AIG pursues any further AIG "disagreement" in the courts, so that Plantronics does not suffer further damage on account of AIG's disagreement.

Moreover, AIG has explicitly conceded that its second purported defense—that the deductible coverage endorsements absolve it of its obligation to reimburse Plantronics—"does not presently apply," and is thus not applicable to the present action nor ripe for judicial determination. Sweeney Dep. 71:2. Furthermore, AIG put forth this identical argument in its summary judgment briefing, and its position was rejected by this Court through its May 30, 2014

---

[5]    In response to the question, "Is it your testimony that Judge Grewal got it wrong?", AIG's corporate representative replied: "Yes." In response to the question, "Is it your testimony that Judge Trumball [sic] got it wrong?", AIG's corporate representative replied: "Yes." Deposition of Patrick Sweeney ("Sweeney Dep.") 70:4-70:6; 70:11-70:13.

order granting summary judgment in favor of Plantronics, a ruling which is law of the case.

Finally, AIG's argument is simply not supported by the underlying insurance policies.

### A. AIG's Purported Defense Is Not Ripe For Judicial Determination

Despite AIG's insistence that it intends to rely on the deductible coverage endorsement at trial, it has already conceded that this defense is not currently applicable. Accordingly, even if AIG's defense had any merit whatsoever—which it does not—this Court need not reach a decision on the issue at this time. AIG has indicated that it intends to rely on the following policy language to contend that Plantronics has suffered no damages as a result of AIG's breach: "[Plantronics] must reimburse [AIG] for all Allocated Loss Adjustment Expense *[AIG] pay[s]* as Supplementary Payments." AIG Policy No. GL 382-89-16 (attached as Ex. B to the Fawcett Decl., Dkt. No. 108-2) (emphasis added).[6] However, AIG, having paid no sums—let alone any "Supplementary Payments"—in connection with this action, cannot rely on a contractual provision, which, if it is applicable at all, does not become applicable until "[AIG] pay[s]." *Id.*

Indeed, even AIG has conceded that it has no present basis for asserting this endorsement as a defense. As AIG's corporate representative admitted during his deposition: "[The endorsement] does not presently apply because we haven't paid." Sweeney Dep. 71:2. Moreover, AIG's representative, acknowledging the inapplicability of this defense and AIG's obligation to pay Plantronics' damages, testified that AIG will not rely on this defense at trial.[7] Notwithstanding these affirmative representations from AIG that (1) this defense does not presently apply and (2) that AIG does not intend to rely on this defense to refute its obligation to reimburse Plantronics, AIG's attorneys have nevertheless stated that they intend to espouse this argument at trial. But AIG, having paid nothing, cannot in good faith rely on this self-admittedly

---

[6]   An analysis of the complete policy provision and the reasons it is inapplicable to this case is provided *infra* at pp. 14-17.

[7]   Specifically, in response to the question: "Does AIG intend to rely on this provision as an argument why it should not pay Plantronics for the costs and expenses incurred in defending the underlying lawsuit?", AIG's corporate representative testified: "No – if after our assessment of our appellate options and bringing those to conclusion, if we have an obligation to reimburse for defense, we will reimburse for defense, and then this payment provision will become operative." Sweeney Dep. 91:11-91:20.

inapplicable provision. Ultimately, given that this defense is not presently applicable, it is not ripe for judicial determination, and this Court need not reach a decision on the issue. *See Texas v. United States*, 523 U.S. 296, 300 (1998) ("A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.") (citing references and quotations omitted).

### B. This Court Has Already Rejected AIG's Singular Defense, And That Ruling Is Law Of The Case.

Should the Court decide that a ruling on AIG's deductible coverage endorsement defense is appropriate, it need not look past its May 30, 2014 order granting Plantronics' motion for summary judgment, a ruling which is law of the case. As this Court is abundantly familiar, the doctrine of law of the case, "generally preclude[s] [the court] from reconsidering an issue previously decided by the same court, or a higher court in the identical case." *United States v. Lummi Indian Tribe*, 235 F.3d 443, 452 (9th Cir. 2000); *see also Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993). The law of the case doctrine "has developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit." *Ingle v. Circuit City*, 408 F.3d 592, 594 (9th Cir. 2005) (citations and quotations omitted); *see also Milgard Tempering, Inc. v. Selas Corp. of Am.*, 902 F.2d 703, 715 (9th Cir. 1990) ("The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs."). For the doctrine to apply, the issue in question may have been decided either "explicitly or by necessary implication in [the] court's previous disposition." *Liberty Mutual Ins. Co. v. EEOC*, 691 F.2d 438, 441 (9th Cir. 1982).

Here, AIG's singular defense—that the deductible coverage endorsement negates Plantronics' damages—was already put to the Court, and was rejected by necessary implication through the Court's May 30, 2014 order. In its summary judgment briefing, AIG spent pages asserting that the Court should deny Plantronics' motion on the grounds that the "endorsements attached to each of the [insurance] policies allocated the burden of the defense costs onto Plantronics, where, as here, the ultimate result is that there is no covered loss." AIG's Opposition to Plantronics' Motion for Summary Judgment ("AIG's Opp.") at pp. 16-19; Dkt.

13

No. 112.  Plantronics, of course, vigorously refuted that contention in its reply brief, and the Court rejected AIG's argument by necessary implication through its May 30, 2014 ruling that AIG had a duty to defend the underlying actions.  The doctrine of law of the case thus attaches, and there is no reason the Court should deviate from its prior invalidation of this defense.

**C.  AIG's Position Is Not Supported By The Language Of The Insurance Policies.**

The Court's rationale for rejecting AIG's deductible endorsement defense is clear—it is simply not supported by the language of the insurance policies.  AIG, too, appears to recognize the deficiency of its argument, asserting it only as a last-ditch, Hail Mary, after failing to raise it as a defense during the first seven years of the pendency of this action.  As highlighted in Plantronics' summary judgment reply brief, and as recapitulated below, the endorsements on which AIG is attempting to rely do not stand for the absurd proposition which AIG now asserts, and certainly do not relieve AIG of its judicially-confirmed duty to defend Plantronics.

Though AIG's deductible coverage endorsement defense is difficult to decipher—indeed, even AIG's own corporate representative was unable to articulate the meaning of the policy provisions—its basis is founded in a series of endorsements appended to the end of the policies.  The endorsements read as follows:

> You must reimburse us for all Allocated Loss Adjustment Expense we pay as Supplementary Payments, according to the elections indicated by an "X" below
>
> ***
>
> X iii. A part of Allocated Loss Adjustment Expense.  That part will be calculated by dividing the smaller of the Deductible or the damages we pay by the damages we pay.  If we pay no damages, you must reimburse us for all Allocated Loss Adjustment Expense up to the applicable Deductible amount and 100% of all remaining Allocated Loss Adjustment Expense.

AIG Policy No. GL 382-89-16 (attached as Ex. B to the Fawcett Decl., Dkt. No. 108-2).

The position that AIG took in its summary judgment briefing—and which it has indicated an intention to reassert—is that while page one of the underlying policies obligate AIG to defend and indemnify Plantronics, these unsigned endorsements appended to the end of the policies render those duties illusory, requiring Plantronics to reimburse AIG for any expenditures it incurs in connection with defending Plantronics.  Of course, AIG did not defend Plantronics—

14

1  and correspondingly did not (and has not) incurred any expenses—in connection with the

2  underlying actions.  Accordingly, as a threshold matter, since AIG paid no defense costs, and no

3  "Allocated Loss Adjustment Expense … as Supplementary Payments," AIG has forfeited its

4  right to rely on this clause.  Indeed, even if one contorted the deductible endorsements in the

5  direction that AIG does, it still could not show a lack of damages because the contracts provided

6  at most that AIG would have a right to reimbursement if it stepped in and defended Plantronics

7  and achieved a no loss result.  But having abandoned its insured and breached its duty to defend,

8  AIG excused any further performance on Plantronics part, including any obligation to reimburse

9  AIG.  *See*, *e.g.*, *Plotnik v. Meihaus*, 208 Cal. App. 4th 1590, 1603 (2012) ("in contract law a

10  material breach excuses further performance by the innocent party.") (citation omitted).  AIG is

11  not entitled to speculate that it would have achieved the same result that Plantronics achieved in

12  defending itself because that would render the duty to defend illusory and would violate the first

13  material breach rule.

14          Furthermore, even if AIG could rely on this defense, the plain language of the deductible

15  coverage endorsements renders them inapplicable to this action.  Pursuant to the endorsements,

16  Plantronics "must reimburse [AIG] for all Allocated Loss Adjustment Expense … *[i]f [AIG]*

17  *pay[s] no damages*."  AIG Policy No. GL 382-89-16 (attached as Ex. B to the Fawcett Decl.,

18  Dkt. No. 108-2) (emphasis added).  But it is undisputed in this case that Plantronics *did pay*

19  *damages*, including *cy pres* awards,[8] to resolve the underlying actions, rendering this provision

20  facially inapplicable.[9]  The Court thus need not look past the plain language of the policies and

21  the undisputed facts to strike down AIG's argument.

---

[8]  As a result of an agreement among the co-defendants in the underlying actions allocating settlement
costs, Plantronics was ultimately only responsible for paying the *cy pres* award portion of the
settlement.

[9]  In its summary judgment briefing, AIG contended that the deductible endorsement actually applies
not where—as the policy states—AIG pays "no damages," but rather where AIG pays no "*covered*
damages."  *See* AIG's Opp. at 18; Dkt. No. 112.  AIG's basis for imputing the word "covered" into
this provision is unclear (and was not explained in AIG's briefing), as the endorsement contains no
such language.  Nevertheless, even if we accept AIG's flawed interpretation of the provision, AIG's
argument still fails, as this Court has repeatedly held that "any damages Plantronics was obligated to
pay are at least arguably 'because of' bodily injury," and are thus "covered damages."  May 30, 2014
Order at p. 6; Dkt. No. 126.

While this provision is clearly inapplicable here, it is important to note that under no circumstance would this provision require Plantronics to reimburse AIG for costs and attorneys' fees expended pursuant to AIG's duty to defend. AIG's assertion to the contrary fundamentally misstates the policy. By the terms set forth in the endorsement, the reimbursement provision applies only to the "Allocated Loss Adjustment Expense" that AIG "pay[s] as Supplementary Payments." *See e.g.*, AIG Policy No. GL 382-89-16, p. 1 of 23 (attached as Ex. B to the Fawcett Decl., Dkt. No. 108-2). "Supplementary Payments," however, do not include litigation expenses or attorneys' fees paid pursuant to the defense obligation of the subject policy. *See e.g.,* The Rutter Group, Cal. Prac. Guide Ins. Lit. Ch. 7A-D ("A CGL policy obligates the insurer to pay, *in addition to damages and defense costs,* various supplemental payments[.]") (emphasis added). This comports with the well-settled principle that "[a] deductible relates only to the damages for which the insured is indemnified, *not to defense costs*," and definitively resolves that the deductible endorsement does not obligate Plantronics to reimburse AIG for the hypothetical defense costs expended by AIG pursuant to the duty to defend. *Forecast Homes, Inc. v. Steadfast Ins. Co.*, 181 Cal. App. 4th 1466, 1474 (2010) (emphasis in original) (quotations and citing reference omitted). Indeed, even AIG's corporate representative conceded that (1) "Supplementary Payments" are not defined in the policy and (2) only included those payments made "in addition to the limits provided on the policy." Sweeney Dep. 75:13-75:20; 99:11-12

In short, the endorsement provision cited by AIG is inapplicable here, and—even if it did apply—would not obligate Plantronics to reimburse AIG for defense costs.[10] As discussed at length *supra*, "[w]here an insured is able to and does retain counsel to defend a claim, the damages for the insurer's failure to defend the insured … are the reasonable attorneys' fees and costs incurred by the insured in defense of the claim." *Marie Y.*, 110 Cal. App. 4th at 960-961

---

[10] At an absolute minimum, the endorsements are ambiguous as to whether they apply here or would obligate Plantronics to reimburse AIG for defense costs. Where, as here, there are "[a]mbiguities or uncertainties" in an insurance policy, they must be "resolved against the insurance company." *Employers Mut. Cas. Co. v. Philadelphia Indem. Ins. Co.,* 169 Cal. App. 4th 340, 348 (2008). Indeed, "[b]ecause the insurer writes the policy, it is held 'responsible' for ambiguous policy language, which is therefore construed in favor of coverage." *Montrose Chem. Corp. v. Admiral Ins. Co.*, 10 Cal. 4th 645, 667 (1995)

(2003). That is precisely the scenario that applies here: AIG breached its duty to defend,
Plantronics was forced to retain counsel to defend the underlying actions, and Plantronics now
seeks the reasonable attorneys' fees and costs it incurred in defending those actions. Nothing in
the endorsements changes these facts or AIG's duty to defend Plantronics.

**IV.  CONCLUSION**

This Court has already ruled that AIG breached its contract of insurance with Plantronics
by failing to assume its duty to defend the underlying actions. The damages for this breach
include the attorneys' fees and costs Plantronics' expended to defend and resolve the underlying
actions—which Plantronics has documented in detail and will prove at trial—and prejudgment
interest on those expenses. AIG's only defense to these damages is inapplicable, untimely, and
not ripe for judicial determination. Accordingly, Plantronics hereby requests that the Court order
AIG to finally comply with its duty to defend and reimburse Plantronics for the expenses it
incurred defending and settling the underlying actions, including prejudgment interest on those
expenses.


Dated: July 3, 2014                     Respectfully submitted,

                                        LEWIS & LLEWELLYN LLP
                                             Paul T. Llewellyn
                                             Marc R. Lewis
                                             Matthew Dickman

                                        REED SMITH LLP
                                             Raymond A. Cardozo


                                        By:  /s/ Paul T. Llewellyn
                                             Paul T. Llewellyn
                                             Attorneys for Plaintiff
                                             Plantronics, Inc.

17

1

**<u>CERTIFICATE OF SERVICE</u>**

2   The undersigned hereby certifies that on this 3rd day of July 2014, all counsel of record

3 who are deemed to have consented to electronic service are being served with a copy of this

4 document via the Court's CM/ECF system.

5        <u>/s/ Paul T. Llewellyn</u>
          Paul T. Llewellyn

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28